## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS, INC. | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  1:06cv00319(ESH) |
| | ) |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al. | ) ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, the United States Department of Health and Human Services and its

Secretary, Hon. Michael O. Leavitt, respectfully move this Court pursuant to Federal Rule of

Civil Procedure 12(c) to enter judgment on their behalf for the reasons set forth in their

accompanying Memorandum of Law.

//

//

//

//

//

//

//

//

//

//

Dated: June 23, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

  /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN<br>  PHYSICIANS AND SURGEONS, INC. | )<br>)<br>) |
|   Plaintiff, | )<br>) |
|       v. | )  Civil Action No.  1:06cv00319(ESH)<br>) |
| U.S. DEPARTMENT OF HEALTH AND<br>  HUMAN SERVICES, et al. | )<br>)<br>) |
|   Defendants. | )<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS**

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov

Attorneys for Defendants

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................ 2

    I.      The Federal Advisory Committee Act ................................... 2

    II.     Factual Background ...................................................... 4

ARGUMENT .............................................................................. 5

    III.    Standards of Review ..................................................... 5

    IV.    Plaintiffs Lack Standing to Raise Their Claims in This Court ........... 6

        A.     Plaintiffs' Interest in the Subject Matters on Which the
             Challenged AHIC and Subcommittees Advise Does Not
             Confer Standing. ...................................................... 8

        B.     Plaintiffs' Allegations of Possible Future Policies that May
             Impact Plaintiffs' Work Are Too Speculative to Confer
             Standing. ............................................................. 9

        C.     Plaintiff's Claimed Injury Is Not "Fairly Traceable" To
             The Alleged FACA Violation. ......................................... 12

        D.     Plaintiff's Alleged "Fair Balance" Injury Cannot Be
             Redressed By Judicial Relief.. ....................................... 13

    V.     Plaintiffs' Fair Balance Claim Is Not Justiciable. ...................... 13

    VI.    Neither the Private Contractor-Established Panels Nor the Workgroups
         Subordinate to AHIC Subcommittees are Subject to FACA. ............ 21

    VII.   The Private Contractor-Established Panels Are Not "Preempted"
         By FACA or Otherwise Ultra Vires ..................................... 26

    VIII.  The Secretary Satisfied FACA Section 9 In Chartering AHIC .......... 27

    IX.    Counts V and VI of Plaintiff's Complaint Lack Foundation in Fact,
         By Reference to Materials in the Scope of the Pleadings ................. 30

A.    AHIC Includes At Least One Member Who Is an Expert
On Matters Pertaining to Privacy and Security Protections
of Individually Identifiable Health Information ....................................... 31

B.    The National Committee on Vital and Health Statistics is
Subject to a Valid Charter ....................................................................... 32

CONCLUSION ......................................................................................................... 33

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(s)**

Advanced Mgmt. Tech., Inc. v. FAA,
    211 F.3d 633, 637 (D.C. Cir. 2000)  ............................................................................. 10

Animal Legal Def. Fund v. Shalala,
    104 F.3d 424 (D.C. Cir. 1997) ................................................................................... 23, 25

Association of American Physicians & Surgeons, Inc. v. Clinton,
    997 F.2d 898 (D.C. Cir. 1993) ........................................................................... 14, 18, 25

Association of American Physicians & Surgeons, Inc. v. HHS,
    224 F. Supp. 2d 1115, 1123 (S.D. Tx. 2002) ................................................................ 12

Baltimore Gas & Electric Co. v. Federal Energy Regulatory Comm'n,
    252 F.3d 456 (D.C. Cir. 2001) ...................................................................................... 14

Bowen v. First Family Fin. Servs., Inc.,
    233 F.3d 1331 (11th Cir. 2000)  ............................................................................... 7, 10

Byrd v. EPA,
    174 F.3d 239 (D.C. Cir. 1999) ............................................................................... passim

CC Distributors, Inc. v. United States,
    883 F.2d 146 (D.C. Cir. 1989) ...................................................................................... 29

Cargill, Inc. v. United States,
    173 F.3d 323 (5th Cir. 1999)  ....................................................................................... 15

Center For Law and Educ. v.  U.S. Dept. of Educ.,
    209 F.Supp.2d 102 (D.D.C. 2002) ............................................................................... 18

In re Cheney,
    406 F.3d 723 (D.C. Cir. 2005) ...................................................................................... 25

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971) ....................................................................................................... 14

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) ........................................................................................................... 9

Claybrook v. Slater,
    111 F.3d 904 (D.C. Cir. 1997) ...................................................................... 29

Del Raine v. Carlson,
    826 F.2d 698 (7th Cir. 1987) ...................................................................... 33

Diamond v. Charles,
    476 U.S. 54 (1986) ...................................................................................... 9

Doe v. Shalala,
    862 F. Supp. 1421 (D. Md. 1994) ................................................... 14, 15, 20

Drake v. F.A.A.,
    291 F.3d 59 (D.C. Cir. 2002) ...................................................................... 30

Falkowski v. EEOC,
    783 F.2d 252 (D.C. Cir.), cert. denied, 478 U.S. 1014 (1986) ...................... 29

Federal Election Comm'n v. Nat'l. Rifle Ass'n,
    553 F. Supp. 1331 (D.D.C. 1983) ................................................................ 6

Fertilizer Institute v. EPA,
    938 F. Supp. 52 (D.D.C. 1996) ....................................................... 13, 15, 20

Florida Audubon Soc. v. Bentsen,
    94 F.3d 658 (D.C. Cir. 1996) ....................................................................... 7

Food Chemical News v. Young,
    900 F.2d 328 (D.D.C. 1990) ....................................................................... 24

Haynesworth v. Miller,
    820 F.2d 1245 (D.C. Cir. 1987) ................................................................... 5

Heckler v. Chaney,
    470 U.S. 821 (1985) ............................................................................ 14, 30

Hines v. Davidowitz,
    312 U.S. 52 (1941) ..................................................................................... 26

Holy Cross Neighborhood Ass'n v. Julich,
    106 F. Supp. 2d 876 (E.D. La. 2000) .......................................................... 24

Hunt v. Wash. State Apple Advertising Comm'n,
    432 U.S. 333 (1977) ..................................................................................... 7

Jung v. Association of American Medical Colleges,
         339 F. Supp.2d 26 (D.D.C. 2004) ................................................................... 5

Kowal v. MCI Communications Corp.,
         16 F.3d 1271 (D.C. Cir. 1994)) ...................................................................... 5

Land v. Dollar,
         330 U.S. 731 (1947) ....................................................................................... 6

Lombardo v. Handler,
         397 F. Supp. 792 (D.D.C. 1975), aff'd without opinion,
         546 F.2d 1043 (D.C. Cir. 1976), cert. denied, 431 U.S. 932 (1977) .............. 26

Lujan v. Defenders of Wildlife,
         504 U.S. 555 (1992) .................................................................................... 6, 7

Metcalf v. Nat'l Petroleum Council,
         553 F.2d 176 (D.C. Cir. 1977) .............................................................. passim

Mulqueeny v. National Comm'n on the Observance of Int'l Women's Year,
         549 F.2d 1115 (7th Cir. 1977) ...................................................................... 13

NRDC v. Abraham,
         223 F. Supp. 2d 162 (D.D.C. 2002) ................................................... 22, 23, 24

NRDC v. EPA,
         806 F. Supp. 275 (D.D.C. 1992) ....................................................... 21, 22, 26

NRDC v. Pena,
         147 F.3d 1012 (D.C. Cir. 1998) ................................................................ 8, 12

National Anti-Hunger Coalition v. Executive Committee of President's Private
         Sector Survey on Cost Control,
         557 F. Supp. 524 (D.D.C. 1983) ................................................. 16, 17, 25, 26

National Anti-Hunger Coalition v. Executive Committee of the President's Private Sector
         Survey on Cost Control,
         711 F.2d 1071 (D.C. Cir. 1983) .................................................................... 19

Natural Resources Defense Council v. Herrington,
         637 F. Supp. 116 (D.D.C. 1986) ..................................................................... 1

Nestor v. Hershey,
         425 F. 2d 504 (D.C. Cir. 1969) ...................................................................... 6

Newdow v. Bush,
        355 F. Supp. 2d 265, 279 (D.D.C. 2005) ........................................................ 14

Physicians' Educ. Network, Inc. v. Dep't of Health, Educ. and Welfare,
        653 F.2d 621 (D.C. Cir. 1981) ...................................................................... 11

Public  Citizen v. Department of Health & Human Servs.,
        795 F. Supp. 1212 (D.D.C. 1992) ........................................................... passim

Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods,
        886 F.2d 419 (D.C. Cir. 1988) ................................................................ passim

Public Citizen v. U.S. Department of Justice,
        491 U.S. 438 (1989) ............................................................................... passim

Raines v. Byrd,
        521 U.S. 811 (1997) ...................................................................................... 6

Rice v. Santa Fe Elevator Company,
        331 U.S. 218 (1947) .................................................................................... 26

Sanchez v. Pena,
        17 F. Supp. 2d 1235 (D.N.M.  1998) ....................................................... 9, 20

Schlesinger v. Reservists Comm. to Stop the War,
        418 U.S. 208 (1974) ...................................................................................... 7

Scott v. Pasadena Unified School Dist.,
        306 F.3d 646 (9th Cir. 2002) ................................................................ 10, 11

Sierra Club v. Morton,
        405 U.S. 727 (1972) ...................................................................................... 8

Simmat v. United States Bureau of Prisons,
        413 F.3d 1225 (10th Cir. 2005) .................................................................. 33

Simon v. Eastern Ky. Welfare Rights Org.,
        426 U.S. 26 [1976] ..................................................................................... 6, 7

Sofamor Danek Group v. Gaus,
        61 F.3d 929 (D.C. Cir. 1995) .................................................................. 23, 24

Steel Co. v. Citizens for a Better Env't,
        523 U.S. 83 (1998) ...................................................................................... 7, 8

Tozzi v. HHS,
    271 F.3d 301, 307 (D.C. Cir. 2001) .............................................. 11

Tucson Rod and Gun Club v. McGee,
    25 F. Supp. 2d 1025 (D. Ariz. 1998) ........................................... 24

United States v. Verdugo-Urquidez,
    494 U.S. 259 (1990) .................................................................. 18

Varicon Intern. v. Office of Personnel Management,
    934 F.Supp. 440 (D.D.C. 1996) ................................................. 30

Vt. Agency of Natural Res. v. United States ex. rel Stevens,
    529 U.S. 765 (2000) .................................................................... 7

Washington Legal Foundation v. United States Sentencing Commission,
    17 F.3d 1446 (D.C. Cir. 1994) ................................................... 23

Webster v. Doe,
    486 U.S. 592 (1988) ........................................................ 14, 29, 30

Whitmore v. Arkansas,
    495 U.S. 149 (1990) .................................................................. 7, 8

Wyoming Sawmills v. Forest Serv.,
    179 F. Supp. 2d 1279 (D. Wyo. 2001), aff'd, 383 F.3d 1241 (10th Cir. 2004),
    cert. denied, 126 S.Ct. 330 (2005) ............................................ 22

## FEDERAL STATUTES

5 U.S.C. App. 2 § 2(b) ...................................................... 3, 21, 22

5 U.S.C. App. 2 § 3(2) ........................................................... 3, 25

5 U.S.C. App. 2 § 9(c) ................................................................ 3

5 U.S.C. App. 2 § 9(a)(2) ................................................... 4, 28, 29

5 U.S.C. App. 2 § 5(b)(1) ........................................................... 14

5 U.S.C. App. 2 § 9 ................................................................... 28

5 U.S.C. App. 2 .............................................................. passim

5 U.S.C. §§ 551, et seq ............................................................... 13

5 U.S.C. § 552, <u>id.</u> § 10(b) ................................................................................. 4

5 U.S.C. § 552b(c), <u>id.</u> §§ 10(a)(1) ..................................................................... 3, 4

5 U.S.C. 701(a)(2) ................................................................................... 2, 13, 30

42 U.S.C. § 217a .......................................................................................... 4, 27

42 U.S.C. § 241(a)(7) ........................................................................................ 27

42 U.S.C. §299b-3 ............................................................................................ 27

## REGULATIONS

41 C.F.R. § 102-3.25 .................................................................................. 23, 25

41 C.F.R. § 102-3.30(a) ..................................................................................... 28

69 Fed. Reg. 24059 (April 27, 2004) .................................................................... 4

70 Fed. Reg. 40703 (July 14, 2005) ..................................................................... 4

## RULES

Fed. R. Civ. P. 10(c) ...................................................................................... 5, 30

Fed. R. Civ. P. 12(c) ................................................................................... 5, 6, 30

## PUBLIC LAWS

Consolidated Appropriations Act, 2004, Pub. L. 108-199 ........................................ 27

Consolidated Appropriations Act, 2005, Pub. L. 108-447 ........................................ 27

## MISCELLANEOUS

H.R. Conf. Rep. No. 1403, 92d Cong., 2d Sess. 2, reprinted in 1972 U.S.C.C.A.N. 3508,
    3509 .................................................................................................. 24

H.R. Rep. No. 1017, 92d Cong., 2d Sess. 6 (1972), <u>reprinted in</u> 1972 U.S.C.C.A.N. 3491,
    3496 .................................................................................................... 1

S. 1637, 92d Cong. 1st Sess. 11 (1971), <u>reprinted in</u> 117 Cong. Rec. 11,444 (1971) ............... 14

S. 2064, 92d Cong. 1st Sess. 16 (1971), <u>reprinted in</u> 117 Cong. Rec. 19,805 (1971) ............... 14

S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945) ........................................................ 15

## INTRODUCTION

With the Federal Advisory Committee Act, 5 U.S.C. App. 2 ("FACA"), Congress sought to prevent federal advisory committees from being dominated by "special interest groups [that] use their membership on such bodies to promote their private concerns."[1]  In this case, a special interest, plaintiff the Association of American Physicians and Surgeons, Inc., asks the Court to turn the statute on its head and halt the work of the advisory committee in question, the American Health Information Community ("AHIC").

Without reaching the merits of its claims, this Court should rule for defendants, the U.S. Department of Health and Human Services ("HHS") and its Secretary, Hon. Michael O. Leavitt ("the Secretary"), on jurisdictional grounds.  Plaintiff lacks standing to bring its claims because it has not alleged sufficient injury in fact.  Instead, it speculates that future actions which AHIC might recommend potentially could undermine plaintiff's interests.  That alleged injury, however, is far too speculative to confer standing.

As to plaintiff's individual claims, with Count I it first seeks to alter the composition of AHIC (which was established by the Secretary to provide advice, recommend actions, and serve as a forum concerning the interoperability of health information technology), on the ground that the committee, as presently constituted, is not "fairly balanced."  Plaintiff cannot establish that this claim is either justiciable in or redressable by this Court.  The composition of AHIC is committed to the discretion of the Secretary and HHS and thus is unreviewable under the Administrative Procedure Act.  See 5 U.S.C. § 701(a)(2).

---

[1]    Natural Resources Defense Council v. Herrington, 637 F. Supp. 116, 120 (D.D.C. 1986) (quoting H.R. Rep. No. 1017, 92d Cong., 2d Sess. 6 (1972), reprinted in 1972 U.S.C.C.A.N. 3491, 3496).

Plaintiff's assorted other claims, which similarly seek to commandeer the Secretary's efforts to collect information and advice concerning health information technology, are also without merit.  In Counts II and III, plaintiff seeks to apply FACA to halt the work of federal contractors as well as workgroups subordinate to AHIC, but under the restrictive reading applied to the statute by the Supreme Court and this Circuit, FACA does not apply to those entities.  Nor does the statute somehow preempt the Secretary's ability to employ contractors or AHIC's ability to utilize subordinate groups or staff, as plaintiff appears to argue in Count II.

Count IV of plaintiff's Complaint challenges the Secretary's formal determination that establishment of AHIC was in the public interest, but the Secretary has done precisely what the statute requires of him given the broad deference provided by FACA as to his determination.

Finally, the allegations underlying Counts V and VI of plaintiff's Complaint are belied by facts evident from the pleadings and materials referenced therein.  Contrary to plaintiff's assertions in Count V, HHS has identifed members of AHIC who are expert on the privacy and security of individually identifiable health information.  Similarly, another FACA group, the National Committee on Vital and Health Statistics, continues to operate under a valid charter despite plaintiff's erroneous, contrary allegation in Count VI.

The Court should enter judgment for defendants because plaintiff lacks standing to bring its claims, some of which are not justiciable in any event, and none of which have merit.

## BACKGROUND

## I.    The Federal Advisory Committee Act

Congress enacted FACA in 1972 to reduce the mushrooming cost of unnecessary blue ribbon commissions, advisory panels, and honorary boards set up by the government to advise

the President and federal agencies.  The statute seeks to eliminate committees that have outgrown

their usefulness and impose uniform procedures on those that are indispensable.  <u>See</u> 5 U.S.C.

App. 2 § 2(b).  FACA defines an "advisory committee" as "any committee, board, commission,

council, conference, panel, task force, or other similar group, or any subcommittee or other

subgroup thereof" that is "established" by statute, or "established or utilized" by the President or

by one or more agency, "in the interest of obtaining advice or recommendations for the President

or one or more agencies or officers of the Federal Government."  <u>Id.</u> § 3(2).  Accordingly, in

order for FACA to apply, an "advisory committee" must be "established or utilized by one or

more agencies, in the interest of obtaining advice or recommendations for . . . one or more

agencies or officers of the Federal Government, . . ." within the meaning of FACA.  5 U.S.C.

App. 2 § 3(2)(C).  <u>See generally</u> <u>Public Citizen v. U.S. Dep't of Justice</u>, 491 U.S. 440 (1989).

 FACA imposes procedural requirements on the creation and operation of "advisory

committees." An "advisory committee" cannot meet or take any action until a detailed charter is

filed with the head of the agency to which it reports and with the House and Senate committees

having legislative jurisdiction over the agency.  5 U.S.C. App. 2 § 9(c).[2]  Every "advisory

committee" must give advance notice in the Federal Register of any meetings, <u>id.</u> § 10(a)(2), hold

all meetings open to the public in accordance with the Government in the Sunshine Act, 5 U.S.C.

---

 [2] The charter must contain such information as "the committee's official designation," <u>id.</u>
§ 9(c)(A), the period of time necessary for the committee to carry out its purposes," <u>id.</u> § 9(c)(C),
"a description of the duties for which the committee is responsible, and, if such duties are not
solely advisory, a specification of the authority for such functions," <u>id.</u> § 9(c)(F), "the estimated
annual operating costs in dollars and man-years for such committee," <u>id.</u> § 9(c)(G), "the
estimated number and frequency of committee meetings," <u>id.</u> § 9(c)(H), and "the committee's
termination date, if less than two years from the date of the committee's establishment."  <u>Id.</u>
§ 9(c)(I).

§ 552b(c), <u>id.</u> §§ 10(a)(1) & (d), keep detailed minutes of each meeting and copies of all reports

received, issued, or approved by the advisory committee, <u>id.</u> § 10(c), make its records available

to the public for inspection and copying at a single location in accordance with the Freedom of

Information Act, 5 U.S.C. § 552, <u>id.</u> § 10(b), be "fairly balanced in terms of the points of view

represented and functions to be performed," <u>id.</u> § 5(b)(2), and "not be inappropriately influenced

by the appointing authority or by any special interest." <u>Id.</u> § 5(b)(3).

## II.    Factual Background

Pursuant to his statutory authority and a Presidential directive, Executive Order 13335, 69

Fed. Reg. 24059 (April 27, 2004), the Secretary is engaged in various activities to research and

develop policies that will "provide leadership for the development and nationwide

implementation of an interoperable health information technology infrastructure to improve the

quality and efficiency of health care." <u>See</u> <u>id.</u>

The Executive Order required appointment of a National Health Information Technology

("Health IT") Coordinator, and certain reports to be made within 90 days.  <u>Id.</u>  One report

proposed a Health IT Leadership Panel, which was established by a private entity under contract

with HHS.  Compl. ¶¶ 43-4, Answer ¶¶ 43-4.

Pursuant to his authority under E.O. 13335 and 42 U.S.C. § 217a, the Secretary chartered

AHIC in July 2005.  <u>See</u> Compl. ¶ 45; 70 Fed. Reg. 40703 (July 14, 2005); AHIC Charter,

available at <u>http://www.hhs.gov/healthit/ahiccharter.pdf</u>. (<u>cited in</u> Declaration of Lawrence J.

Joseph, attached to Compl. ("Joseph Decl."), at ¶ 7).  At that time, the Secretary determined, as

required by 5 U.S.C. App. 2 § 9(a)(2), that formation of AHIC "is in the public interest in

connection with the performance of duties imposed on [HHS] by law, and that such duties can

-4-

best be performed through the advice and counsel of" AHIC. Compl. ¶ 46, Answer ¶ 46. Shortly thereafter, the Secretary appointed AHIC members, including members with expertise in the privacy and security protections of individually identifiable health care information. See http://www.hhs.gov/healthit/, "Frequently Asked Questions," question one ("Who on the Community has the requisite expertise to address matters pertaining to privacy and security?") (last visited June 21, 2006). Another FACA advisory group, the National Committee on Vital and Health Statistics, has also been chartered and now operates under a charter signed January 11, 2006, and valid through January 16, 2008. See http://www.ncvhs.hhs.gov/charter07.pdf (NCVHS charter); see also generally http://www.ncvhs.hhs.gov/ (cited in Joseph Decl. ¶ 13).

AHIC has created and convened subordinate working groups to address issues of consumer empowerment, chronic care, electronic health records, and biosurveillance. See Compl. ¶ 57, Answer ¶ 57. In addition, various private entities under contract with HHS have created panels to examine Health IT-related issues. Compl. ¶¶ 44, 63-64, Answer ¶¶ 44, 63-64.

## ARGUMENT

### III.    Standard of Review

The standard for awarding judgment on the pleadings under Rule 12(c) is "virtually identical" to the standards for dismissal under rule 12(b). See Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). Thus, "[o]n either motion, the Court may not rely on facts outside the pleadings and must construe the complaint in the light most favorable to the non-moving party." Jung v. Association of American Medical Colleges, 339 F. Supp. 2d 26, 36 (D.D.C. 2004) (citing Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Pursuant to Rule 10(c), however, the Court may consider exhibits attached to and materials referenced by the pleadings without converting a Rule 12(c) motion to a Rule 56 motion for summary judgment.  See Fed. R. Civ. P. 10(c); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2006).  Similarly, "when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist."  Land v. Dollar, 330 U.S. 731, 735 n.4 (1947).  The Court "always [has] jurisdiction to determine [its] jurisdiction."  Nestor v. Hershey, 425 F. 2d 504, 511 (D.C. Cir. 1969).  Cf. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-94 (1998) (federal court may not decide merits before determining whether it has jurisdiction over a case) (citing Ex parte McCardle, 7 Wall. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")); Federal Election Comm'n v. Nat'l. Rifle Ass'n, 553 F. Supp. 1331 (D.D.C. 1983) (dismissing action for lack of jurisdiction after making factual determinations).

## IV.    Plaintiffs Lack Standing to Raise Their Claims in This Court.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 [1976]).  A core element of Article III's case-or-controversy requirement is that a plaintiff must establish that he or she has standing to sue.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  To establish standing, a plaintiff must make a three-part showing.  Vt. Agency of Natural Res. v. United States ex. rel Stevens,

-6-

529 U.S. 765, 771 (2000); Lujan, 504 U.S. at 560-61.  *First*, the plaintiff must "demonstrate

'injury in fact' -- a harm that is both 'concrete' and 'actual or imminent, not conjectural or

hypothetical.'"  Vt. Agency, 529 U.S. at 771 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155

(1990)).  "Until a judicially cognizable injury is shown no other inquiry is relevant to

consideration of [] standing."  Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208,

227 n.16 (1974).  *Second*, the plaintiff must establish "a causal connection between the injury

and the conduct complained of."  Lujan, 504 U.S. at 561; see Vt. Agency, 529 U.S. at 771.  To

do so, the plaintiff must show that the injury is "'fairly . . . trace[able] to the challenged action of

the defendant, and not . . . the result [of] the independent action of some third party not before the

court.'"  Lujan, 504 U.S. at 560 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-

42 (1976)); accord Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 106 n.7 (1998).  *Third*,

the plaintiff must "demonstrate redressability – a 'substantial likelihood' that the requested relief

will remedy the alleged injury in fact."  Vt. Agency, 529 U.S. at 771 (quoting Simon, 426 U.S. at

45); see Lujan, 504 U.S. at 561.[3]  "The party invoking federal jurisdiction bears the burden of

establishing these elements."  Florida Audubon Soc. v. Bentsen, 94 F.3d 658, 661-62 (D.C. Cir.

1996) (en banc).

These requirements apply to cases alleging violations of FACA.  See, e.g., Byrd v. EPA,

174 F.3d 239, 243 (D.C. Cir. 1999); Metcalf v. Nat'l Petroleum Council, 553 F.2d 176, 186-87

(D.C. Cir. 1977).  Indeed, the requirements are so indispensable that they must be met in FACA

---

[3]    An association may have standing to bring suit on behalf of its members, but only if the members "would otherwise have standing to sue in their own right."  Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).  Plaintiff's allegations of standing on behalf of its members suffer from the same fatal flaws as its allegations in its own right.

cases even if their application "renders a FACA violation irremediable." <u>NRDC v. Pena</u>, 147 F.3d 1012, 1020 (D.C. Cir. 1998).

Plaintiff lacks standing because it has failed to establish any of the requisite elements. First, plaintiff makes only vague, speculative and hypothetical allegations of injury, unconnected to any specific actions by the defendants. <u>See</u>, <u>e.g.</u>, Compl. ¶¶ 23-25 (suggesting alleged advisory committees will render "biased workproduct," without explaining how this will harm plaintiff), 32 (the government's "market power" will somehow impose financial burdens). Plaintiff's allegations at best establish a mere interest in the subject matters that concern AHIC or speculate about possible injury to Plaintiffs' work. <u>See</u>, <u>e.g.</u>, ¶ 28 (plaintiff "intends to challenge and/or to advocate against efforts to mandate or coerce adoption of Defendants' [unspecified] Health IT policies . . ."). Neither type of allegation, however, is sufficient to confer standing. Accordingly, the Court should enter judgment as a matter of law for defendants as to all of plaintiff's claims.

> **A.    Plaintiffs' Interest in the Subject Matters on Which the Challenged AHIC and Subcommittees Advise Does Not Confer Standing.**

Plaintiffs' allegations of interest in the matters on which the challenged AHIC, contractors and subcommittees may provide advice do not satisfy the requirements of standing. The Supreme Court has admonished that a "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved." <u>Sierra Club v. Morton</u>, 405 U.S. 727, 739 (1972); <u>see also</u> <u>Diamond v. Charles</u>, 476 U.S. 54, 66-

67 (1986) (dismissing claim on standing grounds because plaintiff had only mere interest in problem not direct stake in outcome).

Under this well-settled precedent, the Court should conclude that plaintiff's interest in certain matters on which AHIC and subordinate groups allegedly provide advice is insufficient by itself to confer standing to challenge their composition.  Plaintiff's Complaint is replete with allegations establishing no more than its interest in such matters.  See, e.g., Compl. ¶¶ 23-25, 29, 32-33.  Since such allegations of mere interest do not satisfy the requirements of standing, the Court should enter judgment as a matter of law for defendants.

**B.    Plaintiffs' Allegations of Possible Future Policies that May Impact Plaintiffs' Work Are Too Speculative to Confer Standing.**

Plaintiffs' suggestion that policies harmful to their work might be implemented is appointed is too speculative to establish standing.  See Compl. ¶ 32.  Speculation and conjecture about "possible future injury do not satisfy the requirements of Article III."  Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).  Rather, the alleged injury "must be certainly impending," id. (internal quotation marks and citations omitted), both "real and immediate."  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).  Courts previously have held that the type of tenuous chain of events that allegedly will harm plaintiff here is insufficient to meet this standard.  See, e.g., Metcalf v. National Petroleum Council, 553 F.2d 176, 187 (D.C. Cir. 1977) (FACA plaintiffs lacked standing to challenge fair balance of National Petroleum Council based on "claims that biased Council advice causes risks related to petroleum storage and the increased possibility of conflict between nations"); Sanchez v. Pena, 17 F. Supp. 2d 1235, 1237 (D.N.M. 1998) (holding alleged injury from failure to appoint advisory committee member to raise

particular issues insufficient to confer standing for FACA challenge because "the occurrence of the asserted harm [was] speculative and conjectural in the purest sense"). Such allegations are "purely 'speculative – the ultimate label for injuries too implausible to support standing." <u>See</u> <u>Tozzi v. HHS</u>, 271 F.3d 301, 307 (D.C. Cir. 2001) (<u>quoting</u> <u>Advanced Mgmt. Tech., Inc. v.</u> <u>FAA</u>, 211 F.3d 633, 637 (D.C. Cir. 2000) . As plaintiffs has not alleged that defendants are about to use an AHIC recommendation to take any final agency action injurious to plaintiff, any alleged injury lacks the requisite imminence. "The central perception [of the justiciability doctrines] is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance." <u>See</u> <u>Bowen v. First Family Fin. Servs., Inc.</u>, 233 F.3d 1331, 1340 (11th Cir. 2000), <u>quoting</u> 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3521.1, at 114 (2d ed. 1984)). Because plaintiffs lack actual injury, they lack standing to bring a FACA claim against the federal defendants.

Thus, in <u>Metcalf</u>, 553 F.2d 176, the Court of Appeals rejected the standing of consumer and citizen plaintiffs to challenge under FACA the composition of the National Petroleum Council ("NPC"), a committee established to render advice on oil and gas matters. Plaintiffs claimed injury on the ground that "the challenged structure of the NPC causes it to make certain biased recommendations, which in turn cause government agencies to adopt policies favoring the petroleum industry, which in turn cause [plaintiffs] to be injured as consumers and citizens." 553 F.2d at 185. In rejecting these claims, the Court of Appeals held that "the basic constitutional threshold of injury in fact has not been satisfied" because the "occurrence of the asserted harm is speculative and conjectural in the *purest* sense." <u>Id</u>. at 186 (emphasis in original). <u>See</u> <u>Public</u>

-10-

Citizen v. Department of Health & Human Servs., 795 F. Supp. 1212, 1214 (D.D.C. 1992).

Plaintiff's allegations do no more to establish imminent injury than did the insufficient claims of

the Metcalf plaintiff.  Cf. AAPS, et al. v. HHS, 224 F. Supp. 2d 1115, 1123 (S.D. Tx. 2002),

aff'd 67 Fed. Appx. 253 (5th Cir. 2003) (finding plaintiffs, including plaintiff here, had no

standing where "[a] number of unlikely events must occur in order for plaintiffs to sustain an

injury. . . . Because these [actions] have not yet occurred and plaintiffs hae suffered no actual

injury . . . plaintiffs lack standing to pursue [their] claim, and the claim is not ripe for review.").

 Even assuming an injury, plaintiffs have failed to allege a causal connection between the

injuries they claim and defendants' allegedly improper conduct, nor have they alleged facts

demonstrating how such injuries could be redressed by the Court.  Plaintiffs do not, for example,

allege that they sought and were denied participation in theACHIC's meetings, or that they

sought or were denied representation in the committees that they allege violate FACA.  See, e.g.,

Physicians' Educ. Network, Inc. v. Dep't of Health, Educ. and Welfare, 653 F.2d 621, 623 (D.C.

Cir. 1981) (no standing in FACA case where plaintiff  "does not allege that it sought and was

denied participation in the panel's meetings, or that it sought and was denied representation

. . .").  Nor have plaintiffs alleged that they sought and were denied information from the

committee meetings.  Accord Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 449 (1989)

(finding standing in FACA case where "[a]ppellant . . . has specifically requested, and been

refused, the names of candidates under consideration by the ABA Committee, reports and

minutes of the Committee's meetings, and advance notice of future meetings"); Byrd, 174 F.3d at

243.  Plaintiff's allegations, in substance, are their speculation about possible future policies that,

if implemented, would injure Plaintiffs' work.  See, e.g., Compl. ¶ 32.  Indeed, plaintiff's

-11-

recurring use of conditional language in their allegations of harm is "tacit acknowledgment" that they are insufficient to satisfy Article III.  See Scott, 306 F.3d at 658 (noting that the "court's use of conditional language is a tacit acknowledgment that the injury alleged here is far too speculative to satisfy the injury-in-fact requirement of Article III standing").  Such bare speculation about future hypothetical injuries does not show the requisite causal connection between the alleged injury (adoption of a rule of some sort) and the allegedly improper conduct (failure to adhere to FACA).  Cf. NRDC v. Pena, 147 F.3d at 1020 (elements of standing are essential to a claim, even where their absence "renders a FACA violation irremediable").

### C.    Plaintiff's Claimed Injury Is Not "Fairly Traceable" To The Alleged FACA Violation.

Plaintiff fails to explain how the alleged FACA violations have anything to do with its potential injury – future agency action that plaintiff will dislike.  Necessarily implicit in plaintiff's claim is the assumption that such "harm" would not have occurred, and would be less likely to re-occur, if only AHIC were properly "balanced" and unable to utilize subordinate workgroups.  In other words, had there been several more physician representatives on AHIC during its meetings, then it would have proposed, and would be more likely to propose, agency action favorable to plaintiff's economic interest and views of patient privacy.   Plaintiff simply cannot establish a causal connection, however remote, between AHIC's activities and the alleged FACA violations.  See Winpisinger v. Watson, 628 F.2d 133, 139 (D.C. Cir. 1980) (no standing where the Court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with" the challenged conduct).

**D.    Plaintiff's Alleged "Fair Balance" Injury Cannot Be Redressed
By Judicial Relief.**

Plaintiff's claim against the Committee's "balance" is also not redressable.   "An injury is

redressable by the court if it is likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision. " Newdow v. Bush, 355 F. Supp. 2d 265, 279 (D.D.C. 2005)

(quoting Lujan, 504 U.S. at 561) (internal quotation marks omitted). While the Court could order

the Secretary to place a specified number of, e.g., physician representatives on AHIC, and could

also engage in its own review of their qualifications, it is no more than conjecture that this would

prevent the injury plaintiff speculates it will suffer by altering any final agency action.[4]

**V.    Plaintiff's Fair Balance Claim Is Not Justiciable.**

FACA contains no provision for judicial review.  Thus, the availability of judicial review

(if any) for plaintiff's FACA claims derives from the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 551, et seq.  See Mulqueeny v. National Comm'n on the Observance of Int'l Women's

Year, 549 F.2d 1115, 1120 & n.15 (7th Cir. 1977);  Public Citizen v. National Advisory

Committee on Microbiological Criteria for Foods, 886 F.2d 419, 426, 432 (D.C. Cir. 1988)

---

[4]     Moreover, the Court could not even offer such relief without usurping the Secretary's
statutory authority under FACA to appoint the Committee members.  The D.C. Circuit in Metcalf
expressed precisely this concern about intruding upon the affairs of the Executive Branch:

> If we were to accept appellants' speculative, conjectural,
> generalized injuries in this case as sufficient to confer standing we
> would be called upon to supervise the membership and funding of
> federal advisory committees on a continual basis and to alter the
> composition of these committees according to our subjective
> determinations as to "fair balance."  Such a role as the "continuing
> monitors of the wisdom and soundness of Executive action" is
> clearly inappropriate for the courts.

553 F.2d at 187.

(Silberman, J., concurring in judgment; Edwards, J., concurring in part, dissenting in part); Fertilizer Institute v. EPA, 938 F. Supp. 52, 54 (D.D.C. 1996); Public Citizen v. Department Health & Human Serv., 795 F. Supp. 1212, 1220 (D.D.C. 1992).[5]

The APA empowers the courts to review agency action unless (1) a statute precludes judicial review, or (2) "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The second exception is applicable here and renders plaintiff's "fairly balanced" claim nonjusticiable.

The "committed to agency discretion by law" exception precludes judicial review if a statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830 (1985). See also Webster v. Doe, 486 U.S. 592, 599-600 (1988). That is, judicial review is not available under the APA if a statute is "'drawn in such broad terms that in a given case there is no law to apply.'" Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)).[6]

FACA's "fairly balanced" provision is such a statute. Congress did not define "fairly balanced," nor did it specify how a "fairly balanced" membership on an advisory committee is to be achieved, in terms of either the type of representatives or their number. Although FACA

---

[5]    Congress considered, but declined to include in FACA, an express private right of action or provision for judicial review. See S. 2064, 92d Cong. 1st Sess. 16 (1971), reprinted in 117 Cong. Rec. 19,805 (1971); S. 1637, 92d Cong. 1st Sess. 11 (1971), reprinted in 117 Cong. Rec. 11,444 (1971).

[6]    This ban on judicial review of actions committed to agency discretion by law is jurisdictional. Baltimore Gas & Electric Co. v. Federal Energy Regulatory Comm'n, 252 F.3d 456, 458 (D.C. Cir. 2001).

requires that the "membership of the advisory committee [] be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee," 5 U.S.C. App. 2 § 5(b)(1), this Court has no meaningful standard by which to measure whether that requirement has been met.  See Association of American Physicians & Surgeons, Inc. v. Clinton, 997 F.2d 898, 903 n.2 (D.C. Cir. 1993) (noting that "FACA's 'balanced viewpoint' requirement may not be justiciable [] because it does not provide a standard that is susceptible of *judicial* application"); Doe v. Shalala, 862 F. Supp. 1421, 1430 (D. Md. 1994) ("The balance of judicial opinion holds that, by reason of the lack of judicial standards to address alleged 'imbalances' of membership on such committees, Courts will not decide the issue; it is nonjusticiable.").  As an initial matter, "even before the points of view on an advisory committee can be balanced at all – 'fairly' or otherwise – it must first be determined *which* points of view should be balanced." Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods, 886 F.2d 419, 426 (D.C. Cir. 1989) (Silberman, J., concurring).  And there is no "principled basis for a federal court to determine which among the myriad points of view deserve representation on particular advisory committees."  Id.  The "relevant points of view on issues to be considered by an advisory committee are virtually infinite."  Id.

Even assuming *which* points of views could be determined with certainty, there is similarly no means to determine whether those views are fairly balanced.  As the courts that have held the fair-balance inquiry nonjusticiable have recognized, "[f]or the Court to become entangled in determining which viewpoints must be represented is for the Court to arbitrarily

-15-

substitute its judgment for that of the agency."[7] <u>Doe</u>, 862 F. Supp. at 1430; <u>see also</u> <u>Fertilizer Institute v. EPA</u>, 938 F. Supp. 52, 54 (D.D.C. 1996) (same);  <u>Public Citizen v. Department of Health & Human Servs.</u>, 795 F. Supp. 1212, 1221 (D.D.C. 1992) (same).

Judge Silberman reached this conclusion in his concurring opinion in <u>Microbiological Criteria</u>, 886 F.2d at 426.  At issue in that case was the composition of an advisory committee chartered by the Department of Agriculture to advise it on the development of microbiological criteria for foods.  The plaintiff claimed that the committee was not "fairly balanced" within the meaning of FACA, because it lacked consumer representation, and that the committee was also "inappropriately influenced" by a "special interest," because too many food industry executives were on the committee.[8]  The district court dismissed the action, finding that the plaintiff had failed to prove that the committee was not fairly balanced or that it was inappropriately influenced.  <u>See</u> 708 F. Supp. 359 (D.D.C. 1988).  A divided panel of the Court of Appeals affirmed that dismissal, with Federal Circuit Judge Friedman (sitting by designation) concurring

---

[7]    Some courts outside this Circuit have held that the FACA fair-balance inquiry is justiciable.  <u>See</u>, <u>e.g.</u>, <u>Cargill, Inc. v. United States,</u> 173 F.3d 323 (5th Cir. 1999).  The authority on which these decisions relied, however, is Judge Edwards' concurrence in part, dissent in part in <u>Microbiological Criteria</u>, 886 F.2d at 433.  As discussed <u>infra</u>, this Court should join other courts in this Circuit following Judge Silberman's <u>Microbiological Criteria</u> concurrence (and the weight of subsequent authority) that the inquiry is not justiciable.  <u>Cf.</u> <u>id.</u> at 424 (Friedman, J., concurring on the merits and noting that "[t]he determination of how the 'fairly balanced' membership of an advisory committee, in terms of the points of view represented and the functions the committee is to perform, is to be achieved, necessarily lies largely within the discretion of the official who appoints the committee.").

[8]  The committee had 19 members, including two university professors, one state agriculture department official, one state agriculture department and consumer services official, two persons employed by food research firms, six persons employed by federal government agencies, six persons employed by private food companies, and one person employed by a food processors' organization.  <u>See</u> 886 F.2d at 420.

on the merits, see 886 F.2d at 420-26, and Judge Silberman finding that the claims were not justiciable under the APA and that the plaintiffs lacked standing, id. at 426-31.[9]

With respect to the "fairly balanced" claim, Judge Silberman concluded that the FACA does not provide courts with "any principled basis" to determine whether a particular advisory committee is "fairly balanced" and, thus, that an agency's attempt to strike a "fair balance" among the members of an advisory committee is an activity "committed to agency discretion by law" and not reviewable in federal court.[10] Id. at 426-30. Judge Silberman noted that, even if Congress intended that there be judicial review of agency compliance with the "fairly balanced" requirement, such review would be constitutionally suspect since Congress may not constitutionally confer on the judiciary the power to make policy choices unguided by statutory standards. Id. at 430 n.6.

In explaining his decision, Judge Silberman captured the precise difficulties of applying the "fairly balanced" provision of the FACA:

> The relevant points of view on issues to be considered by an advisory committee are virtually infinite and, therefore, the judgment as to what constitutes an appropriate or "fair" balance of these views must be a political one. . . . I can conceive of no principled basis for a federal court to determine which among the myriad points of view deserve representation on particular advisory committees. . . Perhaps if one could hypothesize a situation in which only two or three points of view were relevant to a particular advisory committee, and if we could define

---

[9] The third judge, Judge Edwards, concluded that the plaintiff had standing, that the claims were justiciable, and that the committee was not fairly balanced. See 886 F.2d at 431-38.

[10] See also National Anti-Hunger Coalition, 557 F. Supp. at 530 (FACA, although well-intentioned, is "another example of unimpressive legislative drafting. It is obscure, imprecise, and open to interpretations so broad that in the present context . . . it would threaten to impinge unduly upon prerogatives preserved by the separation of powers doctrine . . . The Act leaves a myriad of questions unanswered, especially concerning the extent to which Congress intended to interfere with the President's formulation of policy.").

those points of view with the requisite clarity, the question whether they were
"fairly balanced" might be judicially reviewable -- although I have my doubts
about that.  Would the inclusion of one representative of a particular viewpoint be
"fair" or would an even split between opposing viewpoints be required?  Would a
single representative of a viewpoint be enough if he were particularly persuasive?
But surely, given the possible range of points of view on virtually any subject, an
effort to reduce points of view to a few categories -- as if they were political
parties -- is quite artificial and arbitrary.  And once one recognizes that, it follows
that judicial review of the application of this phrase is not available.

Id. at 426-27 (footnote omitted).

Judge Silberman concluded that the decision regarding which groups ought to be

represented in a particular advisory committee is "a quintessentially political decision" and one

"not properly undertaken by life-tenured, unelected federal judges."  Id. at 427-28.  Cf. Metcalf,

553 F.2d at 190 ("to supervise the membership . . . of federal advisory committees on a continual

basis and to alter the composition of these committees according to our subjective determinations

as to 'fair balance'" would place the court in the "[inappropriate] role as the 'continuing monitors

of the wisdom and soundness of Executive action.'").[11]

Judge Silberman rejected as unworkable, 886 F.2d at 428, the construction of "fairly

balanced" suggested in National Anti-Hunger Coalition v. Executive Committee of the

----

[11]  Judge Edwards reached a conclusion directly opposite to that of Judge Silberman.  886
F.2d at 434.  In doing so, he noted that the Supreme Court did not "express[ ] even the slightest
doubt over the justiciability" of the FACA claim which it confronted in Public Citizen v. United
States Dep't of Justice, 491 U.S. 440 (1989).  886 F.2d at 433.
    In response to this reasoning, Judge Silberman correctly pointed out that Public Citizen
involved significantly different, concrete provisions of the FACA, namely the sections providing
for open meetings and public access to records.  Id. at 428 and n.2.  See also Association of Am.
Physicians and Surgeons v. Clinton, 997 F.2d at 903 n. 2 ("FACA's 'balanced viewpoint'
requirement may not be justiciable").  And, as the Supreme Court has recognized, "[t]he Court
often grants certiorari to decide particular legal issues while assuming without deciding the
validity of antecedent propositions . . . and such assumptions – even on jurisdictional issues – are
not binding in future cases that directly raise the questions."  United States v. Verdugo-Urquidez,
494 U.S. 259, 272 (1990) (citations omitted).

President's Private Sector Survey on Cost Control, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983).  In dicta, the court there interpreted the "fairly balanced" requirement to mean that persons or groups "directly affected" by the work of a particular advisory committee must have "some representation" on the committee.  Id. at 1074 n.2.  See also  Public Citizen, 795 F. Supp. at 1220-22 (concluding National Anti-Hunger Coalition is not binding precedent on the justiciability question).

Subsequent cases in this Circuit, as well as the weight of authority elsewhere, have held that courts "lack[] jurisdiction to hear challenges to the 'fairly balanced' requirement[,]" and that contrary decisions are, accordingly, "of questionable authority."  Center For Law and Educ. v. U.S. Dept. of Educ., 209 F.Supp.2d 102, 113 (D.D.C. 2002) (non-FACA case; also collecting cases).  See, e.g., Fertilizer Institute v. EPA, 938 F. Supp. 52 (D.D.C. 1996) (following Judge Silberman's Microbiological Criteria concurrence to hold fair balance question nonjusticiable); Public Citizen v. Department of Health and Human Servs., 795 F. Supp. 1212 (D.D.C. 1992) (same).  Cf. Sanchez v. Pena, 17 F. Supp. 2d 1235, 1238 (D.N.M. 1998) ("[T]he task of creating a "fair balance" in a board created pursuant to the FACA is a political one left to the discretion of the agency by statute and, under the alleged facts of this case, is not a justiciable issue.") (citing Fertilizer Inst., 938 F.Supp. at 54; Public Citizen, 795 F.Supp. at 1218); Doe v. Shalala, 862 F. Supp. 1421, 1430 (D. Md. 1994) ("The balance of judicial opinion holds that, by reason of the lack of judicial standards to address alleged 'imbalances' of membership on such committees, Courts will not decide the issue; it is nonjusticiable.").

For example, this Court in Fertilizer Institute, 938 F. Supp. 52, held that "the judgment regarding what constitutes a 'fair balance' of views 'must be a political one.'" Id. at 54, quoting

-19-

Microbiological Criteria, 886 F.2d at 426 (Silberman, J., concurring).  "For the Court to become entangled in determining what represents a 'fair balance' would require the Court to arbitrarily substitute its judgment for that of the agency.   No meaningful standards are available to assist the Court in making such determinations.   In short, courts should not involve themselves in what is really an executive branch function."  Id. 54-55.

Similarly, in Public Citizen v. HHS, 795 F. Supp. 1212, Judge Hogan also dismissed a balance challenge to the composition of an advisory committee established to advise the Secretary of Health and Human Services on ways to strengthen the Food and Drug Administration.  After an exhaustive review of the case law on the FACA "fairly balanced" requirement, see id. at 1213-20, the court concluded that the interpretive problems posed by Judge Silberman render the "fairly balanced" requirement unenforceable.  Id. at 1220-22.  In Judge Hogan's words,

> For the Court to become entangled in determining which viewpoints must be represented is for the Court to arbitrarily substitute its judgment for that of the agency.  No meaningful standards are available to assist the Court in making such political and ideological determinations.

Id. at 1220-21.

Questions concerning the appropriate "balance" of AHIC are easy to ask and impossible to answer definitively:  there are no standards here for the Court to apply, no principled way to address and resolve these issues.  Accordingly, they are not justiciable.  The Court should, accordingly, enter judgment as a matter of law for defendants as to Count I of plaintiff's Complaint.

-20-

**VI.    Neither the Private Contractor-Established Panels Nor the Workgroups Subordinate to AHIC Subcommittees are Subject to FACA.**

An advisory committee is defined by FACA as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . established or utilized by one or more agencies . . . in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government."  FACA § 3(2).  In Public Citizen v. U.S. Department of Justice, 491 U.S. 438 (1989), the Court construed the term "utilized" as used in this definition.  Characterizing "utilized" as a "wooly verb, its contours left undefined by the statute itself," the Court held that an "unqualified[]" reading of "utilized" would violate the intention of Congress by "extend[ing] the requirements of FACA to any group of two or more persons, or at least any formal organization, from which the President or an Executive agency seeks advice."  491 U.S. at 452.  Accordingly, the Court held that FACA does not apply to "every formal and informal consultation between the President or an Executive agency and a group rendering advice."  491 U.S. at 453.  "Recognizing the Pandora's Box that could erupt if FACA were construed broadly," the interpretation of FACA that the Court adopted in Public Citizen is a "restrictive" one.  NRDC v. EPA, 806 F. Supp. 275, 277 (D.D.C. 1992).  In view of Public Citizen, FACA is not to be given "a literal application."  Wyo. Sawmills v. Forest Serv., 179 F. Supp. 2d 1279, 1304 (D. Wyo. 2001), aff'd, 383 F.3d 1241 (10th Cir. 2004), cert. denied, 126 S.Ct. 330 (2005).

In this case, the AHIC subgroups and contractual panels are not advisory committees within the meaning of FACA for three reasons.  First, they were not "established" by HHS and have not been "utilized" by HHS.  Second, they have not provided "advice or recommendations"

to HHS; instead, they have provided "advice or recommendations" to AHIC. Third, as to the contractual panels, FACA does not apply to government contractors performing the work required in their contracts. For all of these reasons, the allegations under FACA that plaintiffs make as to these panels should be rejected even assuming, arguendo, that plaintiff has standing to raise them.

In order to be subject to FACA, an advisory committee must be "established or utilized" by an agency. FACA § 3(2). "[T]o prevent FACA from sweeping more broadly than Congress intended," these terms are read narrowly. Byrd, 174 F.3d at 245 (citing Pub. Citizen, 491 U.S. at 452). Accordingly, an advisory committee is not "established" by an agency unless it is "actually formed by the agency." Byrd, 174 F.3d at 245; accord NRDC v. Abraham, 223 F. Supp. 2d 162, 185 (D.D.C. 2002), set aside in part, remanded, 353 F.3d 40 (D.C. Cir. 2004). Under this standard, an agency "establishes" a committee if it "exercise[s] control over the committee's structure, membership and work." Abraham, 223 F. Supp. 2d at 185. However, an agency does not "establish" a committee if it does not select its non-government members or pay for their participation. See Byrd, 174 F.3d at 246, 247. The fact that the agency proposes the establishment of a committee is not dispositive. See NRDC v. EPA, 806 F. Supp. at 278. Neither is the fact that the agency gives the committee a "work assignment" that "define[s] the objective, method and scope of studies to be performed." Abraham, 223 F. Supp. 2d at 185.

In the same way, an agency "utilizes" an advisory committee for purposes of FACA only if the committee "is 'amenable to . . . strict management by agency officials.'" Byrd, 174 F.3d at 245 (quoting Pub. Citizen, 491 U.S. at 457-58); accord Abraham, 223 F. Supp. 2d at 185. "'[T]he utilized test is a stringent standard, denoting 'something along the lines of actual

management or control of the advisory committee.'" Byrd, 174 F.3d at 247 (quoting Animal

Legal Def. Fund v. Shalala, 104 F.3d 424, 430 (D.C. Cir. 1997)) (internal quotation marks and

emphasis omitted); see Sofamor Danek Group v. Gaus, 61 F.3d 929, 936 (D.C. Cir. 1995)

(similarly); 41 C.F.R. § 102-3.25 (regulation of the General Services Administration providing

that a committee is "utilized" within the meaning of FACA only if "the President or a Federal

office or agency exercises actual management or control over its operations"); Washington Legal

Foundation v. United States Sentencing Commission, 17 F.3d 1446, 1450 (D.C. Cir. 1994).

(utilized test a "stringent standard").  Accordingly, "participation by an agency or even an

agency's 'significant influence' over a committee's deliberations does not qualify as management

and control such that the committee is utilized by the agency under FACA."  Byrd, 174 F.3d at

246 (quoting Wash. Legal Found., 17 F.3d at 1451).  In addition, the "mere subsequent and

optional use of the work product of a committee by a federal entity does not involve utilization

under FACA."  Sofamor Danek, 61 F.3d at 933.

    In this case, the subcommittees and contractual panels were not "actually formed" by

HHS, i.e., were not "established" by HHS.  See Byrd, 174 F.3d at 145.  They did not come into

existence because HHS created them, or because HHS issued an order or directive mandating

their creation.  Instead, they came into existence because private contractors, in consultation with

HHS (in the case of the "contractual panels"), or AHIC itself (in the case of the subordinate

workgroups), recognized that such subordinate panels would be useful to address particular

issues.  See Compl. ¶¶ 44, 57, 63-64.[12]

---

    [12]    Moreover, there is no allegation that HHS exercised the type of control over the structure,
membership, or work of the subgroups that would cause them to have been "established" by

(continued...)

-23-

Even according to plaintiff, the "contractual panels" of which plaintiff complains, see Compl. ¶¶ 44, 63-64, 67, were established by non-governmental contractors. Id. There is, accordingly, no allegation that they were "established" by, and are "utilized" by, the government; FACA plainly does not apply. See Byrd, 174 F.3d at 245-58; Food Chemical News v. Young, 900 F.2d 328, 332-33 (D.D.C. 1990) (plaintiff could not show that the panel was a "Government-formed advisory committee" subject to FACA because a contractor firm, not the government, selected the panel's membership); Holy Cross Neighborhood Ass'n v. Julich, 106 F. Supp. 2d 876, 881-85 (E.D. La. 2000); Tucson Rod and Gun Club v. McGee, 25 F. Supp. 2d 1025, 1030 (D. Ariz. 1998); see also H.R. Conf. Rep. No. 1403, 92d Cong., 2d Sess. 2, reprinted in 1972 U.S.C.C.A.N. 3508, 3509 (FACA "does not apply to persons or organizations which have contractual relationships with Federal agencies or to advisory committees not directly established by or for such agencies.").

Similarly, just as the subordinate panels were not "established" by HHS, they were not "utilized" by HHS. "Utilization" for purposes of FACA "does not have its ordinary meaning." 41 C.F.R. § 102-3.25. See Byrd, 174 F.3d at 247; Animal Legal Def. Fund, 104 F.3d at 430. As discussed above, HHS did not, as a matter of law, manage or control the structure, membership, or work of the subgroups. Accordingly, it did not "utilize" them for purposes of FACA.

Plaintiff also complains that AHIC has created subordinate working groups without filing a FACA charter and publishing a Federal Register notice. Compl. ¶¶ 57, 90. It is true that "FACA defines 'advisory committee' to include not only committees and other such groups, but

---

[12](...continued)
HHS. See Abraham, 223 F. Supp. 2d at 185.

also 'any subcommittee or other subgroup thereof.'" In re Cheney, 406 F.3d 723, 730 (D.C. Cir.

2005) (quoting 5 U.S.C. App. § 3(2)). By plaintiff's own admission, however, AHIC's

subordinate working groups report not to the government, but to AHIC. Compl. ¶¶ 58-61.

Accordingly, "[t]here is no allegation . . . that any supposed subgroup made an official

decision[.]" In re Cheney, 406 F.3d at 730. Thus, "[t]he task forces at issue do not provide

advice directly to the President or any agency, but rather are utilized by and provide advice to

only the [FACA] Committee, which then provides advice to the" government. National

Anti-Hunger Coalition v. Executive Committee of President's Private Sector Survey on Cost

Control, 557 F. Supp. 524, 529 (D.D.C. 1983), aff'd 711 F.2d 1071 (D.C. Cir. 1983). The

subordinate workgroups are, therefore, not subject to FACA. See In re Cheney, 406 F.3d at 730;

AAPS v. Clinton, 997 F.2d 898, 912-913 (D.C. Cir. 1993) (construing Anti-Hunger with

approval in pertinent part; noting that where workgroup reports not to the government but to a

FACA committee, "there is less reason to focus on subordinate advisers or consultants who are

presumably under the control of the superior groups. It is the superior groups, after all, that will

give the advice to the government . . ."); Lombardo v. Handler, 397 F. Supp. 792, 800 (D.D.C.

1975), aff'd without opinion, 546 F.2d 1043 (D.C. Cir. 1976), cert. denied, 431 U.S. 932 (1977)

(committee subordinate to National Academy of Sciences held not to be subject to FACA in part

because "it appears that the [government] is 'utilizing' the Academy itself, and not the"

subordinate committee) (cited in Anti-Hunger, 557 F. Supp. at 529 n.7).

     The Court should, accordingly, enter judgment as a matter of law for defendants as to

Counts II and III of plaintiff's Complaint.

**VII.    The Private Contractor-Established Panels Are Not "Preempted" By FACA or Otherwise <u>Ultra</u> <u>Vires</u>**

Plaintiff claims that "[e]ven if a court held FACA not to apply to a contracted-for consensus panel" (as explained <u>supra</u>, many courts have already so held), "such an entity nonetheless is <u>ultra</u> <u>vires</u> Defendants' authority because Congress intended FACA to occupy the field of agencies' creation of consensus panels . . . ." <u>See</u> Compl. ¶ 87. This assertion is meritless; FACA does not "occupy the field."

In analyzing whether federal law preempts state law, the Supreme Court has held that Congress can field preempt state action by occupying a regulatory field so pervasively that there is no room for state action, <u>Rice v. Santa Fe Elevator Company</u>, 331 U.S. 218, 230 (1947), or by otherwise dominating the field, <u>Hines v. Davidowitz</u>, 312 U.S. 52, 66 (1941). Plaintiff appears to import this Supremacy Clause jurisprudence to an analysis of the Executive's authority to get advice, urging upon the Court a reading of FACA so broad that it would "occupy the field." Compl. ¶ 87. But in <u>Public Citizen</u>, as discussed <u>supra</u>, the Supreme Court explicitly declined to "extend the requirements of FACA to any group of two or more persons, or at least any formal organization, from which the President or an Executive agency seeks advice." 491 U.S. at 452. Moreover, FACA does not apply to "every formal and informal consultation between the President or an Executive agency and a group rendering advice." <u>Id.</u> at 453. It certainly does not apply here, as plaintiff would have it, to formal and informal consultation between a group rendering advice to the Secretary (AHIC) and other groups established by private contractors. <u>See</u>, <u>e.g.</u>, <u>Byrd</u>, 174 F.3d 239. Given this "restrictive" view of FACA's reach, <u>NRDC v. EPA</u>, 806 F. Supp. at 277, plaintiff's argument is plainly spurious.

-26-

Moreover, the Secretary's contracts with the private contractors that established consensus panels are authorized by statute. The Secretary enjoys a broad grant of authority from Congress to "enter into contracts, including contracts for research[,]" and to "adopt, upon recommendations of the advisory councils to the appropriate entities of the Department . . . such additional means as the Secretary considers necessary or appropriate to," inter alia, promote public health research. See 42 U.S.C. § 241(a)(7)-(8); see also 42 U.S.C. §299b-3 ("Information systems for health care improvement") at (c) (HHS "shall work with appropriate public and private sector entities to facilitate public access to information regarding the quality of and consumer satisfaction with health care.").[13] Cf. 42 U.S.C. § 217a (broadly authorizing HHS advisory committees; providing that "[t]he Secretary may . . ., from time to time, appoint such advisory councils or committees . . ., for such periods of time, as he deems desirable . . . for the purpose of advising him in connection with any of his functions.").

The Court should, accordingly, enter judgment as a matter of law for defendants as to Count II of plaintiff's Complaint.

## VIII.  The Secretary Satisfied FACA Section 9 In Chartering AHIC

Plaintiff claims the Secretary's determinations with regard to AHIC, made in accordance with section 9 of FACA, 5 U.S.C. App. 2 § 9, are "too conclusory." Compl. ¶ 93. Plaintiff is, again, mistaken.

---

[13]    Accord Consolidated Appropriations Act, 2005, Pub. L. 108-447 at Division F, Title II, 118 Stat 2809, 3136 (December 8, 2004) (broadly authorizing appropriations); Consolidated Appropriations Act, 2004, Pub. L. 108-199 at Division E, Title II, 118 Stat 3, 249 (January 23, 2004) (same).

Upon establishment of a FACA advisory committee, FACA requires the Secretary to "determine[] as a matter of formal record" that creation of the committee is "in the public interest in connection with the performance of duties imposed on that agency by law." 5 U.S.C. App. 2 § 9(a)(2); see also 41 C.F.R. § 102-3.30(a) (including non-exclusive list of reasons advisory committees may be needed). Here, plaintiff admits the Secretary made and recorded the following formal determination:

> I determine, after appropriate consultation between this Department and General Services Administration, that formation of the American Health Information Community is in the public interest in connection with the performance of duties imposed on the Department by law, and that such duties can best be performed through the advice and counsel of such a group.
> I deem that it is not feasible for the Department or any of its existing committees to perform these duties, and that a satisfactory plan for appropriate balance of committee membership has been submitted.

Compl. ¶ 46 (quoting the Secretary's Formal Determination of July 5, 2005); see also Answer ¶ 46. The Secretary has, accordingly, done precisely what FACA requires. See Metcalf, 553 F.2d 176, 178 (FACA committee properly created where "the Secretary . . . made the required determination that the Council was necessary for the proper functioning" of the agency, i.e., "in the public interest"); 5 U.S.C. App. 2 § 9(a)(2) (requiring a determination that a FACA committee is "in the public interest in connection with the performance" of the agency's duties, but not requiring identification of those duties). Indeed, FACA's broad delegation of authority to the Secretary to establish advisory committees does not even require that an advisory committee actually be in the public interest; it merely requires that the responsible federal official formally determines it is in the public interest. 5 U.S.C. App. 2 § 9(a)(2). Beyond the requirement that the Secretary *make* this determination, there is no judicially manageable

-28-

standard to judge whether he made the *correct* determination.  See, e.g., Claybrook v. Slater, 111 F.3d 904, 908-09 (D.C. Cir. 1997) (under FACA, decision of agency representative to adjourn a meeting whenever "he determines it to be in the public interest" was committed to agency discretion by law).  As in Claybrook, the FACA language at issue here is not meaningfully distinguishable from that construed by the Supreme Court in Webster, 486 U.S. at 599-600. See Claybrook, 111 F.3d at 908-09, citing id.  There, the relevant statute allowed the Director of Central Intelligence to terminate an employee whenever the Director "shall deem such termination necessary or advisable."  The Supreme Court held that this language was not properly construed to permit termination only when the "dismissal is necessary or advisable. . . ," but rather whenever the Director deemed that to be the case.  Id. Thus, as the Court observed, this standard "fairly exude[d] deference to the Director," and foreclosed "the application of any meaningful judicial standard of review."  Id. at 600.  See also CC Distributors, Inc. v. United States, 883 F.2d 146 (D.C. Cir. 1989) (holding similar statutory language also provided no meaningful way to review decisions left to an agency's discretion).[14]  Similarly, in Varicon Intern. v. Office of Personnel Management, 934 F.Supp. 440 (D.D.C. 1996), this Court considered a statute allowing the Director of OPM to award a contract on a non-competitive basis if he "determines that it is necessary in the public interest."  Id. at 444.  Following Webster, the

---

[14]    Nor would the statutory reference to "the public interest" provide any meaningful standard for review of the Secretary's exercise of discretion in any event. Such statutory language, standing alone, provides no judicially manageable standards for review of agency action. See, e.g., Falkowski v. EEOC, 783 F.2d 252, 254 (D.C. Cir.), cert. denied, 478 U.S. 1014 (1986) (action authorized by law to be taken where it served "the interest of justice" held unreviewable because the correctness of executive assessment of that vaguely defined interest was inherently discretionary and not subject to judicial measurement by any statutorily established standard).

court held "[t]he statute provides no objective criteria by which the court can asses whether the

awarding of sole source contract is in the public's interest; instead it leaves this decision to the

Director's discretion." Id.  In particular, the Court held that "[t]he statutory language contained

in the public interest exception is almost identical to the language found to be unreviewable by

the [Supreme] Court in Webster. Accordingly, the language of the public interest exception

strongly suggests that the decision . . . was 'committed to agency discretion by law.'" Id.,

quoting 5 U.S.C. § 701(a)(2).

The determination of whether a FACA committee will be in the public interest in

connection with an agency's duties, like the question of such a committee's balance, is

committed, by law, to the Secretary's discretion.  See Webster, 486 U.S. at 599-600; Heckler,

470 U.S. at 830; Drake v. F.A.A., 291 F.3d 59, 71-2 (D.C. Cir. 2002).  Count IV of plaintiff's

Complaint is, accordingly, unreviewable.[15]

## IX.    Counts V and VI of Plaintiff's Complaint Lack Foundation in Fact, By Reference to Materials in the Scope of the Pleadings

As discussed supra, when considering a Rule 12(c) motion for judgment on the pleadings,

a Court may consider exhibits attached to and materials referenced by the pleadings.  See Fed. R.

Civ. P. 10(c); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1371 (3d ed. 2006).  Even if the Court determines plaintiff has standing to raise

---

[15]    If in Count IV of its Complaint plaintiff also argues that the AHIC charter is inadequate because it does not describe AHIC's subordinate workgroups, that claim fails because, as explained supra, those workgroups are subordinate to – not a part of – a FACA committee, AHIC.  See 5 U.S.C. App. 2 § 9(c) (listing things a FACA committee charter must describe concerning that FACA committee itself); see also supra Part VI (discussing relationship of AHIC workgroups to AHIC).  Cf. AHIC Charter, available at http://www.hhs.gov/healthit/ahiccharter.pdf.

Counts V and VI of its Complaint, materials attached to and referenced by the pleadings establish that those counts are without merit.

      **A.**      **AHIC Includes At Least One Member Who Is an Expert On Matters Pertaining to Privacy and Security Protections of Individually Identifiable Health Information**

Plaintiff correctly states that AHIC is required by its charter to include "at least one member [who] shall be an expert on matters pertaining to privacy and security protections of individually identifiable health information." See Compl. ¶¶ 79, 96; AHIC Charter ¶ 4. Because plaintiff alleges one of its employees asked who this representative is, but was not answered to her satisfaction, Compl. ¶ 52, plaintiff claims "Defendants . . . have declined to identify such a member," id. ¶ 79, and therefore, they allege, there is no such member, id. ¶ 96. But plaintiff is incorrect; defendants have identified such a member on the AHIC website (which plaintiff cites to in its pleading and attached declaration) in response to such a question. See http://www.hhs.gov/healthit/, "Frequently Asked Questions," question one ("Who on the Community has the requisite expertise to address matters pertaining to privacy and security?") (last visited June 21, 2006).[16] Even if plaintiff has standing to raise Count V of its Complaint, that count is, accordingly, meritless.

---

[16] As the website shows, AHIC member Nancy Davenport-Ennis, CEO of the nonprofit National Patient Advocate Foundation, has expertise concerning privacy of health information. AHIC member Robert Cresanti, the Under Secretary of Commerce for Technology, has expertise in the security of health information. See id.

**B.     The National Committee on Vital and Health Statistics is Subject to a Valid Charter**

Plaintiff relies on the National Committee on Vital and Health Statistics ("NCVHS") website (www.ncvhs.hhs.gov) to allege that that committee's FACA charter has expired.  See Compl. ¶ 62, citing Joseph Decl. ¶ 13 (filed as an attachment to plaintiff's Complaint).  That is not what the NCVHS website shows, however.  See http://www.ncvhs.hhs.gov/charter07.pdf (NCVHS charter signed January 11, 2006, and valid through January 16, 2008).  Even if plaintiff has standing to raise Count VI of its Complaint, that count is, accordingly, meritless.

**CONCLUSION**

For all of the foregoing reasons, the Court should grant defendants' Rule 12(c) motion and enter judgment on the pleadings in their favor.[17]

Dated: June 23, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

  /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov

Attorneys for Defendants

---

[17]    Plaintiff purports to sue Secretary Leavitt in his individual capacity, although plaintiff admits it seeks only equitable relief.  See Compl. ¶¶ 6, 101.  But "form follows function," and therefore a suit that seeks relief "that only officials and not private individuals[] can provide is a suit against the United States."  Del Raine v. Carlson, 826 F.2d 698, 703 (7th Cir. 1987) (Posner, J.) (citing Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)); see also Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1231 (10th Cir. 2005); RESTATEMENT (SECOND) JUDGMENTS § 36 (cmt. e) (1982) ("A public official sued as an individual nevertheless participates in the action in his official capacity if the remedy sought is that of compelling, restraining or making declarations concerning performance of acts in the course of his official duties . . . .").  Plaintiff's claims are, accordingly, raised against the Secretary only in his official capacity.

-33-