UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF AMERICAN PHYSICANS &  )
SURGEONS, INC.,                      )
                                     )
    Plaintiff,                       )
                                     )    Civil Action No. 06-0611-ESH
    v.                               )
                                     )
DEP'T OF HEALTH & HUMAN SERVICES, *et al.,*  )
                                     )
    Defendants.                      )

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, plaintiff Association of American Physicians and Surgeons, Inc. ("AAPS") respectfully moves this Court for summary judgment on Counts II and III of its Complaint against defendants U.S. Department of Health and Human Services and its Secretary, Michael O. Leavitt, in his official capacity and his individual capacity under color of legal authority.[1] Counts II and III allege that the defendants violated the Federal Advisory Committee Act, 5 U.S.C. App. 2, §§1-16 ("FACA") and the Administrative Procedure Act, 5 U.S.C. §551-706 ("APA"), exceeded their authority, and acted *ultra vires* in convening "subcommittees" of the American Health Information Community ("AHIC") that include private-sector AHIC nonmembers and by contracting for several consensus panels, all without complying with FACA's requirements, including *inter alia* chartering.

In support of this Motion, AAPS relies on the accompanying Statement of Undisputed Material Facts, the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment, the declarations and exhibits in support thereof, and the pleadings. A proposed order is attached.

---

[1] AAPS requires jurisdictional discovery and/or jurisdictional before moving for summary judgment on Counts I, VI, V, and VI.

Dated: July 14, 2006                    Respectfully submitted,


                                         /signed/ Lawrence J. Joseph
                                        Lawrence J. Joseph, D.C. Bar No. 464777

                                        2121 K Street, NW, Suite 800
                                        Washington, DC 20037
                                        Telephone: (202) 669-5135
                                        Telecopier: (202) 318-2254

                                        *Counsel for Association of American
                                        Physicians and Surgeons, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF AMERICAN PHYSCIANS &      )
SURGEONS, INC.,                          )
                                         )
      Plaintiff,                          )
                                         )          Civil Action No. 06-0611-ESH
      v.                                  )
                                         )
DEP'T OF HEALTH & HUMAN SERVICES, *et al.,*  )
                                         )
      Defendants.                         )

### [Proposed] Order

On considering plaintiff's motion for partial summary judgment on Counts II and III of
the Complaint in this action, the memoranda in support thereof and in opposition thereto, and the
record herein, the Court holds that it has subject-matter jurisdiction over Counts II and III, which
state a claim for which this Court can grant relief. The Court further holds that there are no genu-
ine issues of material fact, and that plaintiff is entitled to summary judgment on Counts II and III
of the Complaint. For the foregoing reasons, it is hereby

**ORDERED** that plaintiff's motion for partial summary judgment is granted with respect
to Counts II and III; and it is

**FURTHER ORDERED** that the declaratory relief requested in ¶101(A)(i), (iii), (iv),
(vii), and (viii) of the Complaint is granted; and it is

**FURTHER ORDERED** that, with respect to subcommittees and to the "Contractual
Panels" as defined in ¶¶3(a), 67 of the Complaint, the declaratory relief requested in ¶101(A)(vi)
of the Complaint is granted; and it is

**FURTHER ORDERED** that the injunctive relief requested in ¶101(B)(ii), (iii), (vii),
and (viii) of the Complaint is granted; and it is

**FURTHER ORDERED** that, with respect to subcommittees and to the "Contractual Panels" as defined in ¶¶3(a), 67 of the Complaint, the injunctive relief requested in ¶101(B)(iv) and (vi) of the Complaint is granted.

Dated: _____, 2006

_____
**UNITED STATES DISTRICT JUDGE**

**Copy to:**

LAWRENCE J. JOSEPH                    SCOTT Y. BRESSLER
2121 K Street, NW, Suite 800          U.S. Department of Justice, Civil Division
Washington, DC 20037                  20 Massachusetts Avenue, N.W., Room 7300
*Counsel for Plaintiff*               Washington, D.C. 20530
                                      *Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS,       )<br>     Plaintiff,                         )<br>                                  )<br>               v.                     )<br>                                  )<br>U.S. DEPARTMENT OF HEALTH &     )<br>HUMAN SERVICES, *et al.,*          )<br>     Defendants.              )           | Civil Action No. 06-0319-ESH |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to LCvR 7(h), plaintiff Association of American Physicians and Surgeons, Inc. ("AAPS") hereby submits this separate Statement of Undisputed Material Facts in support of Plaintiff's Motion for Partial Summary Judgment. As to these facts, plaintiff avers that there is no genuine issue. Citations are to those portions of the record filed herewith.

1.    As originally established, the American Health Information Community ("AHIC") included the following members from outside the U.S. government: Scott P. Serota, President and Chief Executive Officer ("CEO"), Blue Cross Blue Shield Association; Douglas E. Henley, M.D., Executive Vice President, American Academy of Family Physicians; Lillee Smith Gelinas, R.N., Chief Nursing Officer, VHA Inc.; Charles N. Kahn III, President, Federation of American Hospitals; Nancy Davenport-Ennis, CEO, National Patient Advocate Foundation; Steven S Reinemund, CEO and Chairman, PepsiCo; Kevin D. Hutchinson, CEO, SureScripts; Craig R. Barrett, Ph.D., Chairman, Intel Corporation; E. Mitchell Roob, Secretary, Indiana Family and Social Services Administration. *See generally* Transcript, AHIC meeting (Oct. 7, 2005), available at http://www.hhs.gov/healthit/documents/October29thTranscript.pdf (last visited July 14, 2006).

2.    At or about the close of the first AHIC meeting, the foregoing members signed an appointment affidavit and took an oath in which they swore to "well and faithfully discharge the

duties of the office I am about to enter" (or words to that effect) and not to engage in certain activities "while an employee of the United States or any agency thereof" (or words to that effect). The swearing-in is on the video of the first AHIC meeting at minutes 3:50 to 3:53 of 3:53. The video is available at http://www.hhs.gov/healthit/documents/October72005.ram (last visited July 14, 2006).

3.      Notwithstanding that they entered the foregoing federal office and employment, the foregoing members maintain the employment relationships identified in paragraph 1, and they are neither full-time nor permanent part-time officers or employees of the U.S. government or any agency thereof.

4.      The Statement of Work for the Request for Proposal number AHRQ-05-0015 (as amended) expressly contemplates "engag[ing] public and private sector health care entities that are involved in interoperable health information technology adoption [, including] but not be limited to: clinicians, physician groups (primary and specialty care) and other providers, Federal health facilities (*i.e.,* Department of Defense, Indian Health Service, Department of Veterans Affairs), hospitals, payers, public health agencies," and others. The "Special Contract Requirements" specifically provide that "FAR 52.227-17 Rights in Data – Special Works is hereby incorporated by reference." REQUEST FOR PROPOSAL AHRQ-05-0015, AMENDMENT NO. 2 TO RFP, at 3-4. The RFP further requires the contractor to "Convene as necessary a statewide or regional workshop to finalize and reach consensus on the assessment and potential solutions" and to "Develop and execute a convening strategy and plan to hold one national meeting" the purpose of which "shall be to discuss and finalize a nationwide summary and synthesis of variation assessments and proposed solutions among all states to inform policy making at the Federal, State and local levels, and NHIN prototype solutions for supporting health

2

information exchange across the nation." Request for Proposal No. AHRQ-05-0015, at C.4.d, C.6. The foregoing documents, and Amendment No. 1, are attached to the Declaration of Lawrence J. Joseph (July 14, 2006) as Exhibit 1.

5.      On or about May 17, 2006, the Department of Health & Human Services issued a press release announcing various unanimous AHIC recommendations to Secretary Leavitt and announcing that Robert Cresanti, Under Secretary of Technology at the Department of Commerce, had replaced Michelle O'Neill, former Acting Under Secretary, as an AHIC member. The foregoing document is attached to the Declaration of Lawrence J. Joseph (July 14, 2006) as Exhibit 2.

6.       "The federal AHIC members are federal officers within the meaning of FACA." Compl. ¶56; Answer ¶56 (Admit to the extent an answer is required).

7.      "Defendants… admit that they announced an intent to create AHIC subcommittees chaired by AHIC members, and that DHHS has convened four such subcommittees, comprised of both AHIC members and AHIC non-members." Answer ¶57.

8.      "According to the agenda circulated at its inaugural January 30, 2006, meeting, the Consumer Empowerment subcommittee plans to meet throughout 2006, to make recommendations to AHIC during that period, and to present a final report to AHIC members at AHIC's December 5, 2006 meeting. Ex. 1, 9." Compl. ¶58; Answer ¶58 (Admit).

9.      "According to the agenda circulated at its inaugural January 31, 2006, meeting, the Electronic Health Records subcommittee plans to meet throughout 2006, to make recommendations to AHIC during that period, and to present a final report to AHIC members at AHIC's December 5, 2006 meeting. Ex. 1, 10." Compl. ¶59; Answer ¶59 (Admit).

10.     "According to the agenda circulated at its inaugural February 1, 2006, meeting, the Chronic Care subcommittee plans to meet throughout 2006, to make recommendations to AHIC during that period, and to present a final report to AHIC members at AHIC's December 5, 2006 meeting. Ex. 1, 11." Compl. ¶60; Answer ¶60 (Admit).

11.     "According to the agenda circulated at its inaugural February 2, 2006, meeting, the Biosurveillance subcommittee plans to meet throughout 2006, to make recommendations to AHIC during that period, and to present a final report to AHIC members at AHIC's December 5, 2006 meeting. Ex. 1, 12." Compl. ¶61; Answer ¶61 (Admit).

Dated: July 14, 2006                     Respectfully submitted,


 /signed/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar No. 464777

2121 K Street, NW, Suite 800
Washington, DC 20037
Telephone: (202) 669-5135
Telecopier: (202) 318-2254

*Counsel for Association of American
Physicians and Surgeons, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF AMERICAN PHYSCIANS &amp; )
SURGEONS, INC., )
       Plaintiff, )
       v. )
        )
DEP'T OF HEALTH &amp; HUMAN SERVICES, *et al.,* )
       Defendants. )
        )

Civil Action No. 06-0611-ESH

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Lawrence J. Joseph, D.C. Bar No. 464777

2121 K Street, NW, Suite 800
Washington, DC 20037
Telephone: (202) 669-5135
Telecopier: (202) 318-2254

*Counsel for Association of American
Physicians and Surgeons, Inc.*

Dated: July 14, 2006

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ i

Preliminary Statement ............................................................................................... 1

Standard of Review .................................................................................................... 1

Summary of Argument .............................................................................................. 2

Argument .................................................................................................................... 2

I.      Subject-Matter Jurisdiction ............................................................................. 2

     A.     Standing .................................................................................................. 2

     B.     Sovereign Immunity and Judicial Review ............................................. 4

           1.     This Court's Equity Jurisdiction .................................................. 4

           2.     Officers Not Sovereign ................................................................ 5

           3.     APA Waiver of Sovereign Immunity ......................................... 5

II.     Dispositive Relief on Specific Counts ............................................................ 6

     A.     Count II: Unlawful Contractual Panels ................................................. 7

     B.     Count III: Unlawful Subcommittees ..................................................... 9

Conclusion ................................................................................................................ 11

## PRELIMINARY STATEMENT

Pursuant to FED. R. CIV. P. 56, plaintiff Association of American Physicians and Surgeons, Inc. ("AAPS") respectfully seeks partial summary judgment in its challenge to various agency action and inaction under the Federal Advisory Committee Act ("FACA") by defendants U.S. Department of Health and Human Services and its Secretary, Michael O. Leavitt, in his official capacity and his individual capacity under color of legal authority (collectively, hereinafter "HHS"). Pursuant to FED. R. CIV. P. 12(c), the parties already have set forth their principle positions, and AAPS will not re-summarize or repeat that here. *See* Pl.'s Opp'n at 1-2.

Although AAPS requires jurisdictional discovery and/or a certified administrative record to proceed to summary judgment on Counts I, IV, and V, which relate to the American Health Information Community ("AHIC"), and on Count VI, which relates to the National Committee on Vital Health Statistics, AAPS has enough information already to move for summary judgment on Counts II and III. AAPS hereby incorporates the accompanying Statement of Undisputed Material Facts (hereinafter, "Statement of Facts").

Counts II and III relate to HHS's convening consensus panels – either as subgroups of FACA advisory committees or by contract – without following FACA. For the reasons set forth below, and in AAPS's opposition to HHS's Rule 12(c) motion, this Court should reject HHS's end run around the accountability that Congress intended FACA to provide. *Pub. Citizen v. U.S. Dep't of Justice,* 491 U.S. 440, 453, 459 (1989) ("*Pub. Citizen v. DOJ*").

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact. FED. R. CIV. P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 251-52 (1986). To defeat summary judgment, the nonmoving party must show some basis upon which the Court reasonably could find for it. *See id.* Without such evidence "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## SUMMARY OF ARGUMENT

With the exception of a higher factual burden to establish its standing (Section I.A, *infra*) on summary judgment and the need to address sovereign immunity issues not raised by HHS's Rule 12(c) motion (Sections I.B-I.B.3, *infra*), the legal issues here mirror those under HHS's Rule 12(c) motion. In the case of both Count II (Section II.A, *infra*) and Count III (Section II.B, *infra*), if HHS is not entitled to dismissal as a matter of law, AAPS is entitled to summary judgment.

## ARGUMENT

## I.  SUBJECT-MATTER JURISDICTION

**A.  <u>Standing</u>**. AAPS's opposition to HHS's Rule 12(c) motion sets forth the standards for Article III and prudential standing. *See* Pl.'s Opp'n at 12-23. Under those standards, the Complaint itself establishes AAPS's standing for Counts II and III. Specifically, a sworn statement alleges that AAPS sought information (namely, the charters for the AHIC subcommittees and the "Contractual Panels," *see* Compl. ¶¶3(a), 67) that FACA requires HHS to provide and make publicly available. *See* Compl. ¶¶30, 31 & Ex. 1, ¶3; FACA §§9(c), 10(b). By its inaction (namely, failing to prepare and file such charters), HHS denied AAPS that information, which is enough to provide standing. *Pub. Citizen v. DOJ,* 491 U.S. at 449-51; *Akins,* 524 U.S. at 21 (cognizable injury to deprive voters of statutorily required information); *Sargeant v. Dixon,* 130 F.3d 1067,

1070 (D.C. Cir. 1997) ("receipt of information is a tangible benefit the denial of which constitutes an injury"). The sought-for charters represent an integral procedural step in the accountability that Congress intended FACA to provide. FACA §9; *cf. Pub. Citizen v. DOJ,* 491 U.S. at 459. FACA confers statutory rights that enable the public and Congress to monitor advisory committees and hold agencies accountable, *id.,* which HHS's noncompliance impairs and makes more expensive. Orient Decl. ¶19-20. In particular, by using the federal contracts in place of FACA, HHS erected a significantly higher hurdle to AAPS's obtaining relevant documents and drafts. See Statement of Facts ¶4 (incorporating Federal Acquisition Regulation data controls); *compare* FACA §10(b) (FACA "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents" available for public inspection) *with* 48 C.F.R. §52.227-17(d) (restricting contractors' release of data produced under contract). AAPS has procedural, programmatic, and economic standing to assert these injuries. *See* Pl.'s Opp'n at 14-15, 15-17, and 19.

By failing to charter the AHIC subcommittees and Contractual Panels as new advisory committees, HHS also failed to provide the public (and thus AAPS) the notice that a new charter would provide, thereby causing participation injuries. *See* Declaration of Jane M. Orient, M.D., ¶¶17-18 (Ex. 1). Given its ongoing monitoring of HHS advisory committees, to say nothing of its involvement in the *AAPS v. Clinton* litigation and this litigation, AAPS obviously has a stake and interest in "the 'real world' of Washington policy making," *Cummock v. Gore,* 180 F.3d 282, 291 (D.C. Cir. 1999), as Dr. Orient alleges. Orient Decl. ¶18-20. Moreover, HHS's regulation and procurement policies directly affect AAPS members' livelihood. Orient Decl. ¶¶14-16. AAPS has programmatic and economic standing to assert these injuries. *See* Pl.'s Opp'n at 15-19 and 19-21.

In addition to its standing to challenge the discrete instances of FACA noncompliance alleged in Counts II and III, AAPS's ongoing interest in monitoring HHS also provides standing to the challenge HHS's general policy to circumvent FACA through its perceived contracts and subcommittee exceptions. *See Better Gov't Ass'n v. Dep't of State,* 780 F.2d 86, 92-93 (D.C. Cir., 1986) (challenge to government policies ripe for review, even after government moots an as-applied challenge by ceasing the illegal conduct); *cf. DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.,* 887 F.2d 275, 297 (D.C. Cir. 1989) ( "the constitutional requirement for ripeness is injury in fact").

**B.** **Sovereign Immunity and Judicial Review**. In Section I.B. of its opposition to HHS's motion to dismiss, AAPS identifies the availability of judicial review (*i.e.,* a cause of action) for each of the counts in its complaint. *See* Pl.'s Opp'n at 23-35. For several independent reasons, sovereign immunity cannot and does not protect HHS (*i.e.,* this Court has subject-matter jurisdiction for the various forms of judicial review and relief relevant to Counts II and III).[2]

**1.** **This Court's Equity Jurisdiction**. As indicated in Section I.B.1.a. of AAPS's Opposition, Pls.' Opp'n at 26-27, this Court has equitable jurisdiction over federal officers headquartered here, which derives from the Court's enabling legislation, *id.,* and Maryland courts' jurisdiction over state officers: "[t]he law is unchanged, but the parties are changed." *Kendall v. U.S. ex rel. Stokes,* 37 U.S. (12 Pet.) 524, 580-81 (1838). Essentially, this Court has common-law powers over its federal officers because its Maryland predecessor had common-law powers over

---

[2] Neither HHS's Answer nor its Motion to Dismiss specifically raise a sovereign-immunity defense. Nonetheless, sovereign immunity would constitute an affirmative barrier to this Court's subject-matter jurisdiction and thus constitutes an affirmative part of AAPS's showing to support the requested relief.

state officers, before Maryland ceded the territory to the federal government. *Id; see* Pls.' Opp'n at 26-27 (citing cases).

    **2.    Officers Not Sovereign**. For federal officers acting *ultra vires,* it is well settled that sovereign immunity does not shield the officer from injunctive or declaratory relief because the "officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden." *Washington Legal Found. v. U.S. Sentencing Comm'n,* 89 F.3d 897, 901 (D.C. Cir. 1996). Thus, defendant Leavitt cannot claim sovereign immunity. *Id.; Clark v. Library of Congress,* 750 F.2d 89, 102 (D.C. Cir. 1984); *Chamber of Commerce v. Reich,* 74 F.3d 1322, 1328 (D.C. Cir. 1996); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689 (1949) ("where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions"); *Stafford v. Briggs,* 444 U.S. 527, 539 (1980) ("[naming] the officer or employee, both in his official capacity and acting under color of legal authority, [includes] also those cases where the action is nominally brought against the officer in his individual capacity even though he was acting within the apparent scope of his authority and not as a private citizen. *Such actions are also in essence against the United States but are brought against the officer or employee as an individual only to circumvent what remains of the doctrine of sovereign immunity.*") (*quoting* H.R. Rep. No. 1936, 86th Cong., 2d Sess., 3-4 (1960)) (Court's emphasis).

    **3.    APA Waiver of Sovereign Immunity**. In the 1976 amendments to the Administrative Procedure Act ("APA"), Congress "*eliminat[ed]* the sovereign immunity defense in *all equitable actions* for specific relief against a Federal agency or officer acting in an official capacity." *Sea-Land Serv., Inc. v. Alaska R.R.,* 659 F.2d 243, 244 (D.C. Cir. 1982) (*quoting* S. Rep. No. 94-996, 8 (1976)) (emphasis added); *Reich,* 74 F.3d at 1328 (1976 "waiver of sovereign immunity

applies to any suit *whether under the APA or not*") (emphasis added); *Transohio Savings Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 607 (D.C. Cir. 1992).

## II.  DISPOSITIVE RELIEF ON SPECIFIC COUNTS

For the reasons set forth in the following two sections, both the Contractual Panels (Count II) and the AHIC subcommittees (Count III) represent clear violations of FACA and exceed HHS's authority in the sphere of convening consensus panels. Faced with such violations, courts appropriately grant injunctive and declaratory relief. *See, e.g., Public Citizen v. National Economic Commission,* 703 F.Supp. 113, 117 (D.D.C. 1989) (preliminary and permanent injunction against closed FACA meetings under traditional tests for equitable relief); *AAPS v. Clinton,* 813 F.Supp. 82, 93 (D.D.C. 1993) (granting preliminary and permanent injunction against further meetings until panel becomes FACA-compliant), *rev'd on other grounds,* 997 F.2d 898 (D.C. Cir. 1993); *Gates v. Schlesinger,* 366 F.Supp. 797, 799-800 (D.D.C. 1973) (preliminary injunction requiring open meetings in compliance with FACA); *Cummock v. Gore,* 180 F.3d 282, 293 (D.C. Cir. 1999) (forcing government to allow FACA panel member access to any improperly withheld documents and the opportunity to amend her dissent based on those documents); *California Forestry Ass'n v. U.S. Forest Service,* 102 F.3d 609, 614 (D.C. Cir. 1996) (injunction against use of FACA-noncompliant report "might be appropriate in some cases… if the unavailability of an injunctive remedy would effectively render FACA a nullity"); *cf. NRDC v. Pena,* 147 F.3d 1012, 1025-26 (D.C. Cir. 1998) (use injunction may be denied if plaintiff sits on its rights and seeks equitable relief after agency issues report).

Here, AAPS seeks to prevent ongoing *ultra vires* conduct. As such, this Court should award the requested injunctive and declaratory relief, notwithstanding any other relief to which AAPS may be entitled in the future, when HHS seeks to use its FACA-noncompliant workpro-

duct in subsequent proceedings. *Am. Life Ins. Co. v. Stewart,* 300 U.S. 203, 215 (1937) ("the settled rule is that equitable jurisdiction existing at the filing of a bill is not destroyed because an adequate legal remedy may have become available thereafter"); *Shaughnessy v. Pedreiro,* 349 U.S. 48, 51-52 (1955) (APA provides judicial review of agency's final order, even if plaintiff has *subsequent* judicial remedies).

**A.  Count II: Unlawful Contractual Panels**. As explained in the briefing of the Rule 12(c) motion, Count II essentially asks whether agencies can use contracts to circumvent FACA's requirements. HHS says "yes," and AAPS says "no." Defs. Mot. at 21-27; Pl.'s Opp'n at 38-39. The relevant facts are not in dispute: HHS contracted to convene consensus panels, Statement of Facts ¶4, which if convened directly by HHS would be subject to FACA.

In *Food Chem. News v. Young,* 900 F.2d 328, 331 (D.C. Cir. 1990), this Circuit held that FACA did not apply where a federal "contractor proposed the use of an expert panel." AAPS has no quarrel with *Young.* In *Byrd v. EPA,* 174 F.3d 239, 247 (D.C. Cir. 1999), this Circuit held that – although the "result in this case might have been different if EPA had exercised [certain contractual] authority" – an agency "establishes" a consensus panel "only if the agency forms the committee," 174 F.3d at 246 (*citing Young,* 900 F.2d at 332), and "only if it is actually formed by the agency," 174 F.3d at 245 (*citing Pub. Citizen v. DOJ,* 491 U.S. at 452, 456-57). In sum, the *Byrd* majority adopted a narrow reading of FACA §3(c)(2)'s "establish" test, which the majority thought consistent with *Pub. Citizen v. DOJ. Id.*

AAPS respectfully submits that the *Byrd* majority misread *Pub. Citizen v. DOJ.* First, page 452 of that decision simply says "Appellants agree that the ABA Committee was not 'established' by the President or the Justice Department." *See* 491 U.S. at 452. Similarly, pages 456-57 concern the "utilize" test under a Kennedy-era executive order that served as a precursor

to FACA. *See* 491 U.S. at 456-57. Far from the *Byrd* majority's narrow reading, moreover, the Supreme Court suggested an expansive view of "established" in its parsing of the Conference Committee's addition of "or utilize" to FACA §3(2):

> Indeed, it appears that the House bill's initial restricted focus on advisory committees established by the Federal Government, in an expanded sense of the word "established," was retained rather than enlarged by the Conference Committee. In the section dealing with FACA's range of application, the Conference Report stated: "The Act does not apply to persons or organizations which have contractual relationships with Federal agencies *nor to advisory committees not directly established by or for such agencies."* Id., at 10 (emphasis added). The phrase "or utilized" therefore appears to have been added simply to clarify that FACA applies to advisory committees established by the Federal Government in a generous sense of that term, encompassing groups formed indirectly by quasi-public organizations such as the National Academy of Sciences "for" public agencies as well as "by" such agencies themselves.

*Pub. Citizen v. DOJ,* 491 U.S. at 462 (emphasis in original). The Court found its interpretation of the Conference Committee's "or utilize" addition to "comport[] well with the initial House and Senate bills' limited extension to advisory groups 'established,' on a broad understanding of that word, by the Federal Government, whether those groups were established by the Executive Branch… or whether they were the offspring of some organization created or permeated by the Federal Government." *Pub. Citizen v. DOJ,* 491 U.S. at 463. And even *Byrd* recognizes that a contractor-established consensus panel may fall under FACA, given sufficient agency control. *Byrd,* 174 F.3d at 247.

Citing FACA's Conference Report, HHS argues that FACA "does not apply to persons or organizations which have contractual relationships with Federal agencies or to advisory committees not directly established by or for such agencies." Defs.' Mot. at 24 (*quoting* H.R. Conf. Rep. No. 1403, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S.C.C.A.N. 3508, 3509). But the Conference Report does not clearly support HHS's position. First, the quoted language concerned Sec-

tion 4 (applicability), not Section 3 (definitions *inter alia* of "advisory committee"), so the language that FACA does not apply to "organizations which have contractual relationships with Federal agencies" may simply exclude federal contractors from FACA compliance when the contractor itself determines the need for a consensus panel. *See Young,* 900 F.2d at 331 (FACA not applicable in case where "contractor proposed the use of an expert panel"). Second, what the Conference Report's language gives HHS with its first clause, it takes away with the second: FACA "does not apply… to advisory committees not directly established by *or for* [federal] agencies." As the Supreme Court recognized, however, this language is entirely consistent with an expansive view under which FACA does not apply to federal contractors in their own right, but does apply whenever a federal agency, either by itself or through an intermediary acting *for it,* establishes a consensus panel. *Pub. Citizen v. DOJ,* 491 U.S. at 462-63.

*Byrd* holds that contracted-for advisory committees (*i.e.,* using a contract to establish a panel to which FACA otherwise would apply) may *fall outside* FACA's literal terms. But accepting that does not compel the conclusion that convening such contract panels *falls within* a federal agency's authority. Indeed, even if exempt from APA review under *Byrd,* HHS's actions and inaction nonetheless are *ultra vires* (and thus reviewable) because FACA occupies the field of agency-convened consensus panels (*i.e.,* successful circumvention is nonetheless *ultra vires*). *See* Pl.'s Opp'n at 25, 39 (citing cases). Agencies cannot expand their authority by contracting for *ultra vires* acts. *Id.* (citing cases). Because the contract here expressly contracts for consensus panels, purportedly outside FACA, HHS exceeded its authority, even if it did not violate FACA *per se.*

**B.** **Count III: Unlawful Subcommittees**. Count III alleges that that the spawning of four AHIC subcommittees comprised of both AHIC members and private-sector AHIC nonmembers

violates FACA's chartering requirements. Compl. ¶90. At the outset, HHS's subcommittee interpretation is untenable because it allows wholesale subversion of FACA: an agency seeking to avoid accountability could establish a single "Secretary's Commission on All Things" ("SCAT"), then spin off FACA-exempt subcommittees full of the Secretary's SCAT-nonmember cronies.

By its terms, FACA applies to advisory committees, including "any subcommittee or other subgroup[,]… which is… established or utilized by one or more agencies… in the interest of obtaining advice or recommendations for… one or more… officers of the Federal Government." FACA §3(2). Thus, FACA applies (1) when HHS convenes a subcommittee, (2) in the interest of advising federal officers. The AHIC subcommittees meet FACA §3(2)'s two-part test.

First, as HHS itself admits, "*DHHS has convened four… subcommittees,* comprised of both AHIC members and AHIC non-members." Answer ¶57 (emphasis added). HHS's admission is entirely appropriate for quasi-public entities like AHIC because FACA's "established or utilized" test includes "the offspring of some organization created or permeated by the Federal Government." *Pub. Citizen v. DOJ,* 491 U.S. at 462-63; *accord Animal Legal Def. Fund v. Shalala,* 104 F.3d 424, 429-30 (D.C. Cir. 1997). Because AHIC clearly qualifies as an organization both created by and permeated by the federal government, the AHIC subcommittees meet the first part of FACA §3(2)'s two-part test.

Second, every AHIC member is a federal "officer" within the meaning of FACA §3(2). HHS qualifiedly admits only that all of the *federal AHIC members* are federal officers, Answer ¶56, and denies AAPS's allegation that the non-federal AHIC members are "special-purpose (*i.e.,* non-permanent) federal officers." *Compare* Compl. ¶56 *with* Answer ¶56. Insofar as the AHIC subcommittees will provide advice and recommendations to AHIC, Answer ¶¶58-61, and

HHS admits that AHIC includes *some* federal officers, Answer ¶56, that alone would suffice to establish the second part of FACA §3(2)'s two-part test. At the opening AHIC meeting, however, the non-federal AHIC members were sworn in to a federal "office" and acknowledged their status as "employees" of the United States or an agency thereof. Statement of Facts ¶2. Thus, *all* AHIC members are federal officers, and the AHIC subcommittees meet the second part of FACA §3(2)'s two-part test.[3]

With both parts of FACA §3(2)'s two-part test satisfied, the AHIC subcommittees are *by definition* "advisory committees" under FACA. While one could imagine that FACA's chartering requirement does not apply if a subset of the 17 AHIC members was broken off as a subcommittee, the subset analysis does not apply to the AHIC subcommittees, which include both AHIC members *and AHIC nonmembers.* Answer ¶57. Accordingly, the AHIC subcommittees actually constitute wholly new FACA advisory committees, for which HHS flagrantly has violated FACA's chartering requirements.

## CONCLUSION

WHEREFORE, AAPS respectfully asks this Court to grant summary judgment on Counts II and III of the Complaint and to award the relief requested for those Counts.

---

[3] As representative of private industry, trade associations, and one state agency, AHIC's non-federal members are not "full-time[] or permanent part-time" federal officers. *See* FACA §3(2)(i). Statement of Facts ¶¶1, 3.

Dated: July 14, 2006                    Respectfully submitted,


                                         /signed/ Lawrence J. Joseph
                                        Lawrence J. Joseph, D.C. Bar No. 464777

                                        2121 K Street, NW, Suite 800
                                        Washington, DC 20037
                                        Telephone: (202) 669-5135
                                        Telecopier: (202) 318-2254

                                        *Counsel for Association of American
                                        Physicians and Surgeons, Inc.*