**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

_____
ASSOCIATION OF AMERICAN          )
  PHYSICIANS AND SURGEONS, INC.    )
                                     )
  Plaintiff,                                  )
                                     )
      v.                                       )    Civil Action No.  1:06cv00319(ESH)
                                     )
U.S. DEPARTMENT OF HEALTH AND     )
  HUMAN SERVICES, et al.             )
                                     )
  Defendants.                               )
_____)

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

      Apparently conceding the insufficiency of their claims under the only available avenue of

judicial review, the Administrative Procedure Act ("APA"), plaintiff devotes the bulk of its

opposition brief to its attempts to create another sort of claim.  Plaintiff's efforts do nothing to

dispel the conclusion that this action should be dismissed either for lack of jurisdiction or failure

to state a claim.

      Without reaching the merits of its claims, this Court should rule for defendants, the U.S.

Department of Health and Human Services ("HHS") and its Secretary, Hon. Michael O. Leavitt

("the Secretary"), on jurisdictional grounds.  Plaintiff lacks standing to bring its claims because it

has not alleged sufficient injury in fact, but merely speculates that future actions which the

American Health Information Community ("the AHIC") might recommend potentially could

undermine plaintiff's interests.  That alleged injury, however, is far too speculative to confer

standing.  Plaintiff claims informational injury, but it has not sufficiently alleged any such injury;

plaintiff's claims of programatic and economic injury are also far to speculative to establish standing. By the same token, plaintiff's suggestions that this Court may have non-statutory jurisdiction that would save plaintiff's statutory claims from their fatal flaws are without merit. The Secretary and agency have acted pursuant to delegated authority, not <u>ultra vires</u>, and plaintiff cannot escape the APA.

In Count I of its Complaint, plaintiff argues that the AHIC, as presently constituted, is not "fairly balanced." Plaintiff cannot establish that this claim is either justiciable in or redressable by this Court. The composition of the AHIC is committed to the discretion of the Secretary and HHS and thus is not subject to judicial review under the APA. <u>See</u> 5 U.S.C. § 701(a)(2).

In Counts II and III, plaintiff seeks to apply FACA to halt the work of federal contractors as well as workgroups subordinate to the AHIC, but under the restrictive reading applied to the statute by the Supreme Court and this Circuit, FACA does not apply to those entities.

Count IV of plaintiff's Complaint challenges the Secretary's formal determination that establishment of the AHIC was in the public interest, but the Secretary has done precisely what the statute requires of him given the broad deference provided by FACA as to his determination.

Finally, the allegations underlying Counts V and VI of plaintiff's Complaint are belied by facts evident from the pleadings and materials referenced therein and susceptible to judicial notice. Count V argues HHS has not identifed members of the AHIC who are expert on the privacy and security of individually identifiable health information, but HHS has identified those members. Count VI argues that another FACA group, the National Committee on Vital and Health Statistics, operates under an expired charter, but its charter was properly renewed. Plaintiff attempts to resurrect these claims either under the AHIC charter itself, or on behalf of Congress, but the APA provides no right to such relief.

The Court should enter judgment for defendants because plaintiff lacks standing to bring its claims, some of which are not justiciable in any event, and none of which have merit. For the same reasons, it should deny plaintiff's motion for partial summary judgment on Counts II and III.

## ARGUMENT

### I.    Plaintiff Lacks Standing to Raise Its Claims in This Court.

As defendants have explained, the essential requirements of Article III standing – injury-in-fact, causation, and redressability – apply to cases alleging violations of FACA. See Def. Mem. 7-8, citing, e.g., Byrd v. EPA, 174 F.3d 239, 243 (D.C. Cir. 1999); Metcalf v. Nat'l Petroleum Council, 553 F.2d 176, 186-87 (D.C. Cir. 1977). Indeed, the requirements are so indispensable that they must be met in FACA cases even if their application "renders a FACA violation irremediable." NRDC v. Pena, 147 F.3d 1012, 1020 (D.C. Cir. 1998).

Plaintiff, however, has made only vague, speculative and hypothetical allegations of injury, unconnected to any specific action by the defendants and insufficient to establish standing. See, e.g., Compl. ¶¶ 23-25. In its opposition, plaintiff does not contest defendants' argument that its mere interest in subject matters the AHIC is considering fails to establish standing. Rather, it relies on claims of informational and procedural injury, and an argument that its (unspecified) advocacy will be harmed by the (unknown and unspecified) recommendations of the AHIC. These claims are also far too conjectural to support standing.

Speculation and conjecture about "possible future injury do not satisfy the requirements of Article III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). Rather, the alleged injury "must be certainly impending," id. (internal quotation marks and citations omitted), both "real and immediate." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Courts previously have

held that the type of tenuous chain of events that allegedly will harm plaintiff here is insufficient to meet this standard. See, e.g., Metcalf v. National Petroleum Council, 553 F.2d 176, 187 (D.C. Cir. 1977) (FACA plaintiffs lacked standing to challenge fair balance of National Petroleum Council based on "claims that biased Council advice causes risks related to petroleum storage and the increased possibility of conflict between nations"); Sanchez v. Pena, 17 F. Supp. 2d 1235, 1237 (D.N.M. 1998) (holding alleged injury from failure to appoint advisory committee member to raise particular issues insufficient to confer standing for FACA challenge because "the occurrence of the asserted harm [was] speculative and conjectural in the purest sense"). Such allegations are "purely 'speculative – the ultimate label for injuries too implausible to support standing.'" See Tozzi v. HHS, 271 F.3d 301, 307 (D.C. Cir. 2001) (quoting Advanced Mgmt. Tech., Inc. v. FAA, 211 F.3d 633, 637 (D.C. Cir. 2000) . As plaintiff has not alleged that defendants are about to use an AHIC recommendation to take any final agency action injurious to plaintiff, any alleged injury lacks the requisite imminence. Because plaintiffs lack actual injury, they lack standing to bring a FACA claim against the federal defendants.

A.    **Plaintiff Lacks Informational Standing.**

As this Court has held, "[i]nformational standing arises 'only in very specific statutory contexts' where a statutory provision has 'explicitly created a right to information.'" American Farm Bureau v. U.S. E.P.A., 121 F. Supp. 2d 84, 97 (D.D.C. 2000) (Huvelle, J.) (quoting Animal Legal Defense Fund, Inc. v. Espy, 23 F.3d 496, 502 (D.C. Cir. 1994)). In such cases, "[t]he requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive." Zivotofsky ex rel. Ari Z. v. Secretary of State, 444 F.3d 614, 617-18 (D.C. Cir. 2006). Plaintiff's allegations do not suggest the violation of any such entitlement here. Although FACA does explicitly create a right to *certain* information, see, e.g., Public Citizen v.

Department of Justice, 491 U.S. 440 (1989) (finding informational standing under FACA where plaintiffs had *requested* and *been refused* access to the record and minutes of the committee in question), plaintiff has not alleged that it has requested and been refused any such information. See Def. Mem. 11.  The only information plaintiff has alleged it was denied is charters for AHIC workgroups and committees of HHS contractors.  See Pl. S.J. Mem. 2-3.  As defendants have explained, see Def. Mem. 21-5, and discuss again infra, the AHIC workgroups and contractor committees *are not covered by FACA*, so plaintiff fails to state a claim upon which relief can be granted.  Moreover, and contrary to plaintiff's bald assertion, FACA does not create any right in the public to access the charters of committees that are subject to FACA; rather, it mandates such charters be provided to Congress.  See 5 U.S.C. App. 2 § 9(c).  Thus, Congress did not confer any judicially enforceable right on plaintiff to access a FACA charter, even if the charters plaintiff alleges it requested were required to exist at all. To the contrary, the requirement that FACA charters be submitted to the appropriate Congressional committees is best viewed as "a management tool employed by Congress for its own purposes."  Natural Resources Defense Council, Inc. v. Hodel, 865 F.2d 288, 319 (D.C. Cir. 1988) ("NRDC v. Hodel").  If Congress determines that the Executive Branch has failed to supply required information, it can exercise its authority over appropriations or resort to other enforcement tools to ensure compliance.  "It scarcely bears more than passing mention that the most representative branch is not powerless to vindicate its interests or ensure Executive fidelity to Legislative directives."  Id.  There is simply no evidence demonstrating that Congress intended for the courts to enforce the charter submission requirement.

Since plaintiff has no statutory right to the information in question, it cannot premise standing on denial of the information.  Am. Farm Bureau, 121 F. Supp. 2d at 99; see also Salt

Institute v. Leavitt, 440 F.3d 156, 159 (4th Cir. 2006) ("appellants have not alleged an invasion of

a legal right and, thus, have failed to establish an injury in fact sufficient to satisfy Article III.").

> **B.    Plaintiff Cannot Establish Procedural Injury Because It Cannot Establish Injury.**

Plaintiff also asserts a procedural injury in its opposition. Pl. Opp. 14-15. Where a

plaintiff's alleged injury relies on violation of a procedural requirement, however, it must

nevertheless demonstrate an *injury* to a *particularized and concrete interest*; a general interest in

having statutory procedures followed does not suffice. Lujan, 504 U.S. at 572-74; Florida

Audubon, 94 F.3d at 664-65 ("The mere violation of a procedural requirement thus does not

permit any and all persons to sue to enforce the requirement."). Moreover, when the plaintiff is

not itself the object of the government action or inaction it challenges, standing is not precluded,

but it is ordinarily "substantially more difficult' to establish." Lujan, 504 U.S. at 562.

As explained supra, plaintiff has alleged no cognizable informational injury. As

explained infra, its allegations of other types of harm amount to unsupported speculation of

potential injury not now redressable in this Court.[1]

---

[1]    Justice Scalia, who authored Defenders of Wildlife (on which plaintiff relies), emphatically stated later that same term that "for purposes of the Article III redressability requirement [the Court is not] ever entitled to assume, no matter how objectively reasonable the assumption may be, that the President (or, for that matter, any official of the Executive or Legislative Branches), in performing a function that is not wholly ministerial, will follow the advice of a subordinate official." Franklin v. Massachusetts, 505 U.S. 788, 824-25 (1992) (Scalia, J., concurring in part and concurring in the judgment). Defenders of Wildlife cannot properly be read to contradict Justice Scalia's clearly expressed understanding of Article III in Franklin. And, in this case, there is no reason to assume that the Secretary will take any particular action in reliance on any recommendation submitted by the AHIC. Accordingly, plaintiff cannot establish injury-in-fact or redressability of any injury, and lacks standing. Cf. City of Detroit v. Franklin, 4 F.3d 1367, 1372-74 (6th Cir. 1993) (holding that City of Detroit and its Mayor lacked standing to challenge 1990 census based upon alleged dilution of city residents' voting power because any such dilution was caused by the independent redistricting decisions of the Michigan

(continued...)

**C.    Plaintiff Has Not Alleged More Than Speculative Program Injury.**

Plaintiff argues it has suffered, or will suffer, "program injury," based on its speculation that defendants will disseminate "misleading information." Pl. Opp. 17. But plaintiff has not alleged that this has happened; its allegations that such information will be created and disseminated are, again, pure speculation.

When an organization sues on its own behalf, it must establish a "'concrete and demonstrable injury to the organization's activities--with [a] consequent drain on the organization's resources--constitut[ing]... more than simply a setback to the organization's abstract social interests.'" National Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)). The "organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." Id. at 1433 (internal quotation marks omitted).

But this plaintiff asserts, in essence, that the federal government could make its advocacy activities simpler by reaching different conclusions. See Compl. ¶¶ 28-9. As an initial matter, this harm is entirely speculative: plaintiff does not allege any conclusions the AHIC will reach or has reached, let alone how the Secretary will act or what policies he will propose or, therefore, how final agency action will harm plaintiff. In any event, if the alleged harm is sufficient to establish standing, it is unclear what allegations would be insufficient. See National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996) (rejecting organization's "speculative conclusion" that additional expenditures to counteract government

---

[1](...continued)

legislature, even though those decisions were made using federal census data), cert. denied, 510 U.S. 1176 (1994); Young v. Klutznick, 652 F.2d 617, 624 (6th Cir. 1981) (similar ruling with respect to challenge to 1980 census), cert. denied, 455 U.S. 939 (1982).

legislation were "a necessary link in achieving the organization's ultimate purpose"). Although the Secretary's eventual policy choices may require plaintiff to expend resources to advocate different policy choices, a drain on an organization's resources to advocate its policy preferences does not constitute an injury in fact. See National Treasury, 101 F.3d at 1429 ("conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing."); National Taxpayers, 68 F.3d at 1433-34. Otherwise, every advocacy group would be able to claim standing to challenge any policy or regulation it opposed. See National Taxpayers, 68 F.3d at 1434; Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1277 (D.C. Cir. 1994).

**D.      Plaintiff Has Not Alleged More Than Speculative Economic Injury.**

Plaintiff claims its members will be economically harmed by adoption of requirements that they purchase and train to use computer systems. See Compl. ¶ 32. But this is a policy disagreement, not a FACA violation. Indeed, plaintiff has not alleged that the AHIC has recommended any such requirement, let alone that the Secretary would accept such a recommendation. Conjectures about "possible future injury do not satisfy the requirements of Article III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). Rather, the alleged injury "must be certainly impending," id. (internal quotation marks and citations omitted), both "real and immediate." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Courts, including the D.C. Circuit, have held that the type of tenuous chain of events that allegedly will harm plaintiff here is insufficient to meet this standard. See, e.g., Metcalf v. National Petroleum Council, 553 F.2d 176, 187 (D.C. Cir. 1977) (FACA plaintiffs lacked standing to challenge fair balance of National Petroleum Council based on "claims that biased Council advice causes risks related to petroleum storage and the increased possibility of conflict between nations"); Sanchez v. Pena, 17 F. Supp.

2d 1235, 1237 (D.N.M. 1998) (holding alleged injury from failure to appoint advisory committee member to raise particular issues insufficient to confer standing for FACA challenge because "the occurrence of the asserted harm [was] speculative and conjectural in the purest sense"). Such allegations are "purely 'speculative – the ultimate label for injuries too implausible to support standing." See Tozzi v. HHS, 271 F.3d 301, 307 (D.C. Cir. 2001) (quoting Advanced Mgmt. Tech., Inc. v. FAA, 211 F.3d 633, 637 (D.C. Cir. 2000) . As plaintiff has not alleged that defendants are about to use an AHIC recommendation to take any final agency action injurious to plaintiff, any alleged injury lacks the requisite imminence.

Plaintiff's arguments in opposition belie the guesswork underlying their supposed harm. For example, AAPS argues it "filed this action against HHS to avert what HHS has stated it intends to do to AAPS's members." Pl. Opp. 19. In support, plaintiff quotes the Secretary stating that "I want to make it clear to you that [I] intend, as [S]ecretary, to act." Id. (bracketing by plaintiff). Conspicuously absent is a statement of *how* the Secretary intends to act, and how such action will harm plaintiff: that is left to plaintiff's inference, which is, again, merely speculation. As defendants have explained (Def. Mem. 10-11), that is no different than the standing allegations the D.C. Circuit rejected in Metcalf v. National Petroleum Council, 553 F.2d 176, 187 (D.C. Cir. 1977), where FACA plaintiffs lacked standing to challenge fair balance of National Petroleum Council based on "claims that biased Council advice causes risks related to petroleum storage and the increased possibility of conflict between nations." Cf. Sanchez v. Pena, 17 F. Supp. 2d 1235, 1237 (D.N.M. 1998) (alleged injury from failure to appoint FACA committee member to raise certain issues insufficient to confer standing because "the occurrence of the asserted harm [was] speculative and conjectural in the purest sense"). Cf. also AAPS, et al. v. HHS, 224 F. Supp. 2d 1115, 1123 (S.D. Tx. 2002), aff'd 67 Fed. Appx. 253 (5th Cir. 2003)

(finding plaintiffs, including plaintiff here, had no standing where "[a] number of unlikely events must occur in order for plaintiffs to sustain an injury. . . . Because these [actions] have not yet occurred and plaintiffs have suffered no actual injury . . . plaintiffs lack standing to pursue [their] claim, and the claim is not ripe for review.").

Plaintiff also argues it will be injured because "HHS *can* use AHIC approval" (if such approval is forthcoming) to ease "subsequent procedural steps," and that defendants "*could seek to impose Health IT through federal procurement.*" Pl. Opp. 20 (emphasis added). Such harm is plainly not redressable in this Court since the Secretary could take the steps plaintiff describes regardless of what the AHIC recommends. In addition, like plaintiff's other claims of injury these are pure speculation. See Winpisinger v. Watson, 628 F.2d 133, 139 (D.C. Cir. 1980) (no standing where the Court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with" the challenged conduct).

Because plaintiff has not alleged that a final recommendation of the AHIC will cause it *imminent* harm, there can be no showing that an injunction halting the AHIC would redress any harm to plaintiff. See Steel Co., 523 U.S. at 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). "In cases where a plaintiff seeks injunctive or declaratory relief only, moreover, standing will not lie if adjudication . . . rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 561 (3d Cir. 2002) (internal quotation marks and citations omitted). In such cases, where

> [t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to

-10-

predict,. . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to. . . permit redressability of injury.

Lujan, 504 U.S. at 562 (internal citations omitted). Absent such a showing by plaintiff, an assessment of redressability would be pure speculation insufficient to establish standing. See University Medical Center v. Shalala, 173 F.3d 438, 441-42 (D.C. Cir. 1999); cf. Linda R.S. v. Richard D., 410 U.S. 614, 618 (1973) (discussing speculative nature of redressability).

## II.    Only APA Review, if Any, is Available for Plaintiff's Claims.

As defendants explained, see Def. Mem. 13, and plaintiff does not dispute, FACA contains no provision for judicial review.  Accordingly, as defendants also explained, any right to review derives from the APA.  See Def. Mem. 13-14.  Plaintiff argues this Court may also review a FACA claim under the Mandamus Act and its equity jurisdiction, or the Declaratory Judgment Act, or because it alleges the Secretary's actions are ultra vires.  Plaintiff's arguments are misguided; only APA review is available.

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent source of federal subject matter jurisdiction.  That Act states: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. This language creates a remedy where the court already has jurisdiction; it does not waive sovereign immunity or establish jurisdiction for a claim.[2]  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950); Rueth v. EPA, 13 F.3d 227, 231 (7th Cir. 1993).  Hence, plaintiff must turn elsewhere to find jurisdiction in this Court.

---

[2]    Moreover, FACA does not bestow enforceable rights on plaintiff; the APA does.

The Mandamus Act, however, also does not provide jurisdiction here. It provides: "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. It is well settled that this statute does not, by itself, waive the government's sovereign immunity. See Public Citizen v. Kantor, 864 F. Supp. 208, 213 (D.D.C.1994) ("The generally accepted rule is that § 1361 does not constitute a waiver of sovereign immunity by the United States"); Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3-4 (1st Cir. 1989); Doe v. Civiletti, 635 F.2d 88, 89 (2d Cir. 1980); Smith v. Grimm, 534 F.2d 1346, 1352 n.9 (9th Cir. 1976); Essex v. Vinal, 499 F.2d 226, 231-32 (8th Cir. 1974); McQueary v. Laird, 449 F.2d 608, 611 (10th Cir. 1971). Moreover, the mandamus statute provides relief "only if the defendant owes [the plaintiff] a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984); see also 28 U.S.C. § 1361 (duty explicitly must be to *the plaintiff*).

Plaintiff, however, appears to argue that this Court can grant a writ of mandamus, without regard to sovereign immunity, because it alleges the Secretary acted ultra vires, under the Larson-Dugan exception. See Chamber of Commerce v. Reich, 74 F.3d 1322, 1329 (D.C. Cir. 1996) (holding that a waiver of sovereign immunity from suit need not be identified "if the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority") (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 690-91 (1949)); see also Pl. Opp. 29 (citing Larson-Dugan exception). The Larson-Dugan exception does not apply where, as here, Plaintiffs actually seek to restrain the government from acting, or compel it to act, even though the complaint is nominally addressed to a government official. Dugan v. Rank, 372 U.S. 609, 620 (1963) ("if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act,'" the suit is against the United States and a waiver of sovereign

immunity is required) (quoting Larson, 337 U.S. at 704); <u>see also</u> <u>Larson</u>, 337 U.S. at 687 ("the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign").

In this case, the relief plaintiff requests would operate against the United States in its sovereign capacity; Plaintiffs ask the Court to enjoin defendants, including HHS, from various acts. <u>See</u> Compl. ¶ 101(b) (praryer for relief). In these circumstances, plaintiff seeks relief that is clearly addressed against the sovereign and a waiver of sovereign immunity is required. <u>Dugan</u>, 372 U.S. at 620; <u>Larson</u>, 337 U.S. at 687.

This case also does not fall within the <u>Larson-Dugan</u> exception to the sovereign immunity doctrine because it does not challenge "action by officers beyond their statutory powers." <u>Dugan</u>, 372 U.S. at 621. So long as the federal officer is "exercising the powers delegated to him by the sovereign," a waiver of sovereign immunity is required. <u>Id.</u> at 622. It is not sufficient to allege that a federal officer acted illegally; rather, the suit must allege that the officer acted beyond his statutory powers or <u>ultra vires</u>. <u>Id.</u>; <u>United Tribe of Shawnee Indians v. United States</u>, 253 F.3d 543, 548-49 (10th Cir. 2001). Here, the Secretary has acted within his statutory authority. <u>See</u> Def. Mem. 27 n.13 & accompanying text. Accordingly, he is not acting <u>ultra vires</u>, and a waiver of sovereign immunity is required.

Although plaintiff repeatedly asserts that the Secretary has taken action that is <u>ultra vires</u>, plaintiff does not point to any specific action that the Secretary has taken that is beyond his authority; instead, plaintiff states legal conclusions.[3] It is well-settled that allegations of legal

---

[3]    The specific actions plaintiff argues are <u>ultra vires</u>, even if accepted as true as a matter of law and fact (which defendants dispute), constitute allegations that defendants have made errors of law or fact, not allegations of actions in excess of the Secretary's authority. <u>See</u> Compl. ¶¶ 30

(continued...)

error in the exercise of lawful authority do not rise to the level of <u>ultra vires</u> conduct required to invoke the <u>Larson</u>-<u>Dugan</u> exception; as this Court has put it, "[b]ald assertions, however, do not convert an allegedly erroneous exercise of statutory authority into an ultra vires act." <u>Royster-Clark Agribusiness, Inc. v. Johnson</u>, 391 F. Supp. 2d 21, 24 n.1 (D.D.C. 2005) (Huvelle, J.)  As the Supreme Court has explained, a government official acts <u>ultra vires</u> "only when he acts 'without any authority whatever.'" <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 102 n.11 (1984) (discussing <u>Larson</u>). Under this standard, Plaintiffs' allegations must amount to a lack of delegated power; a "claim of error in the exercise of that power is therefore not sufficient." <u>Id.</u>[4]  Allegations that an authorized action was "arbitrary, capricious, or procedurally deficient" are also insufficient. <u>Amgen, Inc. v. Smith</u>, 357 F.3d 103, 114 (D.C. Cir. 2004).

Plaintiff has not disputed that the Secretary enjoys statutory authority to convene FACA committees, as defendants have explained.  <u>See</u> Def. Mem. 4 (noting the Secretary acted pursuant to his authority under 42 U.S.C. § 217a in chartering the AHIC); 42 U.S.C. § 217a (broadly authorizing HHS advisory committees); <u>see also</u> E.O. 13335, 70 Fed. Reg. 40703 (July 14, 2005)).  Nor has plaintiff disputed that the Secretary is broadly authorized to contract with

---

[3](...continued)
("Defendants have no authority to circumvent FACA by contract (i.e., a contract that successfully creates a consensus panel outside of FACA is nonetheless ultra vires)."); 70 ("Because AHIC represents an unbalanced advisory committee over which Defendants HHS and Leavitt have undue influence (thereby precluding AHIC's independent judgment), AHIC is <u>ultra vires</u> Defendants' authority. Similarly, because FACA occupies the field of Executive-Branch agencies' consensus-panel deliberations, the Contractual Panels are ultra vires Defendants' authority. Finally, the AHIC subcommittees convened without FACA compliance are ultra vires Defendants' authority.").

[4]    Likewise, the related <u>Leedom</u> doctrine is limited to allegations that an official has "an attempted exercise of power that had been specifically withheld." <u>Chamber of Commerce v. Reich</u>, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (quoting <u>Leedom v. Kyne</u>, 358 U.S. 184, 188-189) (1958).

private entities.  See Def. Mem. 27, citing 42 U.S.C. § 241(a)(7)-(8) and id. §299b-3(c) (HHS

"shall work with appropriate public and private sector entities to facilitate public access to

information regarding the quality of and consumer satisfaction with health care.").[5]  Thus, the

essence of plaintiff's claims is that the Secretary made errors of law or fact *while exercising his*

*authority*.  These allegations therefore do not identify any action in *excess* of the Secretary's

statutory authority to convene advisory committees under FACA or to engage in contracts with

non-governmental entities.  See Pennhurst State School, 465 U.S. at 102 n.11; Amgen, 357 F.3d

at 114; United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 548-49 (10th Cir. 2001).

## III.    Plaintiff's Fair Balance Claim Is Not Justiciable.

Plaintiff has mischaracterized the state of the law on the justiciability of fair-balance

claims.  Pl. Opp. 33-4, 35-6 (suggesting that the weight of authority favors justiciability, and that

it is the law of this Circuit).  The caselaw reveals a different legal landscape.  The seminal case

on this issue is the per curiam decision of the D.C. Circuit in Public Citizen v. National Advisory

Committee on Microbiological Criteria for Foods, 886 F.2d 419 (D.C. Cir. 1989).  A divided

panel of the court affirmed the district court's dismissal of an action brought by a public interest

organization alleging that an advisory committee on microbiological criteria for foods was in

violation of FACA's fair-balance requirement.  Only one panel member expressly held that the

fair-balance claim was justiciable.  See Microbiological Criteria, 886 F.2d at 431-38 (Edwards,

J., concurring in part and dissenting in part).  And, contrary to plaintiff's suggestion, Judge

Edwards was the *only* judge to so hold; Federal Circuit Judge Friedman (sitting by designation)

---

[5]    Accord Consolidated Appropriations Act, 2005, Pub. L. 108-447 at Division F, Title II,
118 Stat 2809, 3136 (December 8, 2004) (broadly authorizing appropriations); Consolidated
Appropriations Act, 2004, Pub. L. 108-199 at Division E, Title II, 118 Stat 3, 249 (January 23,
2004) (same).

was silent on the issue.  See id. at 419-26 (Friedman, J., concurring).  Judge Silberman held that

such a claim was *not* justiciable.  Id. at 426-31 (Silberman, J., concurring).  Since

Microbiological Criteria, the Court of Appeals has plainly stated that the justiciability of fair-

balance claims is not a settled question in this circuit.  See Association of Am. Physicians &

Surgeons, Inc. v. Clinton, 997 F.2d 898, 903 n.2 (D.C. Cir. 1993) ("FACA's 'balance viewpoint'

requirement may not be justiciable, however, because it does not provide a standard that is

susceptible of *judicial* application."); cf. Claybrook v. Slater, 111 F.3d 904, 906 n.4 (D.C. Cir.

1997) (citing Judge Silberman's opinion with approval).  More telling, *every* judge of this Court

to consider the question has concluded that fair balance claims are not justiciable.  Public Citizen

v. HHS, 795 F. Supp. 1212, 1213 (D.D.C. 1992) (concluding after careful analysis of D.C.

caselaw that fair-balance claims are not justiciable; also noting the Court of Appeals' decisions

"have resulted in a legal quagmire with no coherent guidelines for district courts to follow");

Fertilizer Inst., 938 F. Supp. at 54 (concluding that "[i]t appears to be an open question in this

circuit whether FACA's 'fairly balanced' provision is justiciable" then holding it is not

justiciable).[6]

  For the reasons explained in Judge Silberman's concurring opinion in *Microbiological*

*Criteria* and the authorities adopting his rationale, this Court should hold plaintiff's claim

nonjusticiable.  See, e.g., Center for Law & Educ. v. Department of Educ., 209 F. Supp. 2d 102,

---

  [6]    Nevertheless, two subsequent courts of appeals purporting to follow the lead of the D.C.
Circuit in Microbiological Criteria have held the fair-balance question justiciable.  See Cargill,
Inc. v. United States, 173 F.3d 323, 335 (5th Cir. 1999) (concluding that "two judges *disagreed*
with Judge Silberman and found the statutory provisions to be justiciable"); Colorado
Environmental Coalition v. Wenker, 353 F.3d 1221, 1233 (10th Cir. 2004) (purporting to "adopt
the reasoning of the Fifth and D.C. Circuits" and concluding that a fair-balance claim under 43
C.F.R. §§ 1784.2-1(a), 1784.6-1(d) is justiciable).

112-13 (D.D.C. 2002); <u>Sanchez</u>, 17 F. Supp. 2d at 1238; <u>Doe v. Shalala</u>, 862 F. Supp. 1421,

1430-31 (D. Md. 1994). As Judge Silberman explained,

> The relevant points of view on issues to be considered by an advisory committee
> are virtually infinite and, therefore, the judgment as to what constitutes an
> appropriate or "fair" balance of those views must be a political one. . . . I can
> conceive of no principled basis for a federal court to determine which among the
> myriad points of view deserve representation on particular advisory committees.

<u>Microbiological Criteria</u>, 886 F.2d at 426 (Silberman, J., concurring); <u>see also</u> <u>Public Citizen</u>,

795 F. Supp. at 1216 (observing that FACA's fair-balance requirement is "open to interpretations

so broad that . . . it would threaten to impinge unduly upon prerogatives preserved by the

separation of powers doctrine"). "For the Court to become entangled in determining which

viewpoints must be represented is for the Court to arbitrarily substitute its judgment for that of

the agency." <u>Doe</u>, 862 F. Supp. at 1430. This Court should refrain from second-guessing

defendants' judgment.

Moreover, it is well established that the fair-balance requirement does not "entitle *every*

interested party or group affected to representation." <u>Microbiological Criteria</u>, 886 F.2d at 423.

Thus, for this Court to determine whether certain representatives with certain viewpoints must be

represented would be "quite artificial and arbitrary." <u>Microbiological Criteria</u>, 886 F.2d at 426

(noting that "given the possible range of points of view on virtually any subject, an effort to

reduce points of views to a few categories . . . is quite artificial and arbitrary. And once one

recognizes that, it follows that judicial review of the application of [the fair-balance requirement]

is not available"). This Court has no basis for determining that plaintiff's viewpoints on public

health deserve representation on the AHIC. <u>Cf.</u> <u>Public Citizen v. National Advisory Comm.</u>, 708

F. Supp. 359, 364 (D.D.C. 1988), <u>aff'd.</u>, 886 F.2d 419 (D.C. Cir. 1989) (rejecting assertion that

all members of a FACA committee who were employed by the food industry or who ever worked

as a consultant to the industry were anti-regulatory).  If plaintiff's position were adopted,

unanswerable questions would be presented: how many non-industry, public health

representatives are enough to achieve fair balance; what qualifications must someone have to be

an appropriate representative of public health; what happens if there is a diversity of viewpoints

among public health advocates?  This Court should adopt the rationale of the numerous courts

that have refrained from such an inquiry and dismiss Plaintiffs' claim as nonjusticiable.[7]

## IV.    Neither the Private Contractor-Established Panels Nor the Workgroups Subordinate to the AHIC Parent Committee are Subject to FACA.

An advisory committee is defined by FACA as any committee "or other similar group, or

any subcommittee or other subgroup thereof . . . established or utilized by one or more agencies

. . . in the interest of obtaining advice or recommendations for . . . one or more agencies or

officers of the Federal Government."  FACA § 3(2).  In <u>Public Citizen</u>, the Supreme Court held

that an "unqualified[]" reading of "utilized" would violate the intention of Congress by

"extend[ing] the requirements of FACA to any group of two or more persons, or at least any

formal organization, from which the President or an Executive agency seeks advice."  491 U.S. at

452.  Accordingly, the Court held that FACA does not apply to "every formal and informal

---

[7]    Nor, contrary to plaintiff's suggestion, do General Services Administration ("GSA") regulations or an internal agency manual provide justiciable standards.  The GSA regulations merely state that an agency's FACA plan should "ensure that, in the selection of members for the advisory committee, the agency will *consider* a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee." 41 C.F.R. § 102-3.60(b)(3) (emphasis added).  Thus, the GSA regulations provide a general outline of what to consider, not a justiciable standard of what to do.  And the HHS FACA guide cannot aide plaintiff's claim because it is an internal document, intended solely to govern the Agency's internal administration and does not confer any judicially enforceable benefits or rights.  "[A]gencies are not required, at the risk of invalidation of their action, to follow all of their rules, even those properly classified as 'internal." <u>United States v. Caceres</u>, 440 U.S. 741, 754 n.18 (1979).  <u>See also</u> <u>Shalala v. Guernsey Memorial Hosp.</u>, 115 S.Ct. 1232, 1239 (1995) (noting that interpretative rules do not have the force and effect of law).

consultation between the President or an Executive agency and a group rendering advice." Id. at

453. This interpretation is a "restrictive" one. NRDC v. EPA, 806 F. Supp. 275, 277 (D.D.C.

1992).

A.    The Contractual Panels Are Not Subject to FACA.

Plaintiff has admitted the "contractual panels" were established by non-governmental

contractors. Compl. ¶¶ 44, 63-64, 67. Under the law of this Circuit, FACA does not apply. See

Byrd, 174 F.3d at 245-58; Food Chemical News v. Young, 900 F.2d 328, 332-33 (D.D.C. 1990)

(plaintiff could not show that the panel was a "Government-formed advisory committee" subject

to FACA because a contractor firm, not the government, selected the panel's membership).

Plaintiff admits that, as well, when it "respectfully submits" that the Court of Appeals was wrong

in Byrd. Plaintiff's argument can have no currency in this Court; Byrd is controlling, and FACA

does not apply. Nor, as explained supra and in defendants' opening memorandum (Def. Mem.

27), did the Secretary act outside his broad authority to contract with private entities. Plaintiff's

claim against the contractual panels is, accordingly, meritless; the Court should enter judgment

for defendants, and deny plaintiff's motion for partial summary judgment.

B.    The AHIC Subordinate Workgroups Are Not Subject to FACA.

Plaintiff also admits that the AHIC's subordinate working groups report not to the

government, but to the AHIC. Compl. ¶¶ 58-61. "There is no allegation . . . that any supposed

subgroup made an official decision" for the AHIC. See In re Cheney, 406 F.3d 723, 730 (D.C.

Cir. 2005). Thus, "[t]he task forces at issue do not provide advice directly to the President or any

agency, but rather are utilized by and provide advice to only the [FACA] Committee, which then

provides advice to the" government. National Anti-Hunger Coalition v. Executive Committee of

President's Private Sector Survey on Cost Control, 557 F. Supp. 524, 529 (D.D.C. 1983), aff'd

-19-

711 F.2d 1071 (D.C. Cir. 1983).  Plaintiff argues that the workgroups, because they provide

advice to the AHIC, are providing advice to a group composed solely of federal officers since

plaintiff alleges that all the non-governmental members of the AHIC are nonetheless "'officers'

for FACA purposes."  Pl. Opp. 40.  That allegation fails as a matter of law.  <u>Accord</u> 41 C.F.R.

§ 102-3.25 ("Subcommittee means a group, generally not subject to [FACA], that reports to an

advisory committee and not directly to a Federal officer or agency, whether or not its members

are drawn in whole or in part from the parent advisory committee.").

A definition of "officer" is contained in 1 U.S.C. § 1, which applies to "any Act of

Congress, unless the context indicates otherwise[,]" and defines an "officer" as "any person

authorized by law to perform the duties of the office[.]"[8]   The non-governmental AHIC members

are not "officers": no law authorizes a non-civil service "office" of AHIC member, nor does any

statute authorize anyone to perform the relevant duties.  Rather, the office and the duties were

created by the Secretary.  <u>See</u> <u>AAPS v. Clinton</u>, 997 F.2d at 914 (discussing 1 U.S.C. § 1). [9]

---

[8]    Plaintiff might argue that the Title 5 U.S.C. definition of "officer" applies to FACA since
it appears in the appendix to that Title, although the D.C. Circuit has explicitly declined to so
hold.  <u>AAPS v. Clinton</u>, 997 F.2d at 913-4.  In any event, title 5 defines "officer" for its purposes
at § 2104.  That provision contains "the requirement that . . . officers . . . be 'appointed in the
civil service.'"  <u>AAPS, Inc. v. Clinton</u>, 997 F.2d 898, 917-18 (D.C. Cir. 1993) (Buckley, J.,
concurring).  Plaintiff has not alleged, and certainly has not proven, that the non-governmental
AHIC members (who plaintiff admits all maintain other jobs, <u>see</u> Pl. Statement of Facts ¶ 3) are
"appointed in the civil service" within the pertinent meaning of the Civil Service Reform Act of
1978, Pub. L. 95-452, 92 Stat. 1111 (codified throughout 5 U.S.C.), nor that the other
requirements apply.  <u>See</u>, <u>e.g.</u>, 5 U.S.C. § 2104(a)(3) (an "officer" under Title 5 is "subject to the
supervision of," <u>inter</u> <u>alia</u>, an agency head; there is no allegation or proof that the Secretary
"supervises" the non-governmental AHIC members, who control their own AHIC votes).

[9]    Plaintiff formalistically places a great deal of weight on its allegation (which defendants
denied) that the non-government AHIC members are "special-purpose . . . federal officers,"
(Compl. ¶ 56, <u>contra</u> Answer ¶ 56), because they took an oath to well and faithfully execute their
duties.  Pl. Opp. 40.  To accept plaintiff's reading that such individuals are "officers" within the
(continued...)

Accordingly, while the non-governmental AHIC members may have entered into an "office" when they joined the AHIC, they are not "officers" within the meaning of the pertinent statutory definitions and, therefore, FACA.   Plaintiff's other efforts to bolster its claim rest on its spurious argument that FACA – which the Supreme Court has read *restrictively*, see Public Citizen, 491 U.S. at 452 – "occupies the field" of advice to the executive.  Pl. Opp. 39.  As defendants have explained, this argument is meritless.  Def. Mem. 26-7.  The subordinate workgroups are not subject to FACA.  See In re Cheney, 406 F.3d at 730; AAPS v. Clinton, 997 F.2d 898, 912-913 (D.C. Cir. 1993); Def. Mem. 21-7.

The Court should, accordingly, enter judgment for defendants as to Counts II and III of plaintiff's Complaint, and deny plaintiff's motion for partial summary judgment on those claims.

**V.    The Secretary Satisfied FACA Section 9 In Chartering the AHIC**.

Plaintiff claims the Secretary's determinations with regard to the AHIC, made in accordance with section 9 of FACA, 5 U.S.C. App. 2 § 9, are "too conclusory."  Compl. ¶ 93; see also Pl. Opp. 42-3.  As defendants have explained (Def. Mem. 28-30), the Secretary did precisely what FACA requires; moreover, to look behind his determination is to invade authority that Congress committed to the Executive.

FACA requires the Secretary to "determine[] as a matter of formal record" that creation of a FACA committee is "in the public interest in connection with the performance of duties imposed on that agency by law."  5 U.S.C. App. 2 § 9(a)(2).  Defendants made such a formal

---

[9](...continued)
meaning of FACA would, therefore, require not only ignoring the pertinent definition of the term but also applying FACA's requirements much more broadly than the Supreme Court and D.C. Circuit have been willing to do in their particularly *restrictive* readings.  See, e.g., AAPS v. Clinton, 997 F.2d at 921, quoting Public Citizen, 491 U.S. at 452.

determination. See Compl. ¶ 46 (quoting the Secretary's Formal Determination of July 5, 2005);

Answer ¶ 46. That is all FACA requires. See Metcalf, 553 F.2d 176, 178 (FACA committee

properly created where "the Secretary . . . made the required determination that the Council was

necessary for the proper functioning" of the agency, i.e., "in the public interest"); 5 U.S.C. App.

2 § 9(a)(2) (requiring a determination that a FACA committee is "in the public interest in

connection with the performance" of the agency's duties, but not requiring identification of those

duties).

As defendants have explained, there is no judicially manageable standard to judge

whether the Secretary made the *correct* formal determination. See Def. Mem. 28-30, citing, inter

alia, Claybrook v. Slater, 111 F.3d 904, 908-09 (D.C. Cir. 1997) (under FACA, decision of

agency representative to adjourn a meeting whenever "he determines it to be in the public

interest" was committed to agency discretion by law). As in Claybrook, the FACA language at

issue here is not meaningfully distinguishable from that construed by the Supreme Court in

Webster, 486 U.S. at 599-600. See Claybrook, 111 F.3d at 908-09, citing id. See also CC

Distributors, Inc. v. United States, 883 F.2d 146 (D.C. Cir. 1989) (holding similar statutory

language also provided no meaningful way to review decisions left to an agency's discretion);

Varicon Intern. v. Office of Personnel Management, 934 F.Supp. 440, 444 (D.D.C. 1996) (statute

allowing the Director of OPM to award a contract on a non-competitive basis if he "determines

that it is necessary in the public interest . . . provides no objective criteria by which the court can

asses whether the awarding of sole source contract is in the public's interest; instead it leaves this

decision to the Director's discretion."). Contrary to plaintiff's suggestion, see Pl. Opp. 42, these

cases are not distinguishable because they deal with national security (only Webster directly

implicates a national security determination), or because they dealt with statutes committing discretion to the Executive (FACA commits ample discretion to the Executive).

Plaintiff also claims that the GSA FACA regulations impose judicially manageable standards on the Secretary's public interest determination, but this is doubly false. The first regulation cited by plaintiff, 41 C.F.R. § 102-3.30(a), merely provides a *non-exclusive* list of reasons advisory committees may be needed. See also Def. Mem. 28 (citing id.). The other regulation, 41 C.F.R. § 102-3.30(a), does not apply to the agency head's FACA § 9 public interest determination but, rather, to internal discussions the agency head has with the GSA secretariat. Nor, as discussed supra, can plaintiff state a claim under the agency's internal, interpretive FACA policy guidance. See Caceres, 440 U.S. at 754 n.18 (1979) (agencies are not required to follow all their internal rules at the risk of judicial invalidation of action); see also Guernsey Mem. Hosp., 115 S.Ct. at 1239 (interpretative rules do not have the force and effect of law).

The determination of whether a FACA committee will be in the public interest in connection with an agency's duties, like the question of such a committee's balance, is committed, by law, to the Secretary's discretion. See Webster, 486 U.S. at 599-600; Heckler, 470 U.S. at 830; Drake v. F.A.A., 291 F.3d 59, 71-2 (D.C. Cir. 2002). Count IV of plaintiff's Complaint, accordingly, fails to state a claim upon which relief may be granted.

## VI. Counts V and VI of Plaintiff's Complaint Are Meritless.

Even if the Court determines plaintiff has standing to raise Counts V and VI of its Complaint, defendants have established that those counts are without merit by referencing materials that are referenced in the pleadings. See Def. Mem. 31 (Count V), 32 (Count VI). Plaintiff argues that these materials, which consist of HHS publications publicly available on the

internet, are not properly considered referenced by the pleadings under Fed. R. Civ. P. 10(c)  Pl. Opp. 4-5. The Court should avoid that question, however, by taking judicial notice under Fed. R. Evid. 201 of these government publications available on the internet.  See Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from website of the FDIC);  In re Wellbutrin SR/Zyban Antitrust Litig., 281 F. Supp. 2d 751, 745 n.2 (E.D. Pa. 2003) (taking judicial  notice of FDA report posted on the FDA website).  Cf. Helen of Troy, L.P. v. Zotos Corp., --- F.R.D. ----, No. EP-05-CA-279PRM, 2006 WL 901647, *5 (W.D. Tex. April 3, 2006) (taking judicial notice of a fact stated on an internet encyclopedia, Wikipedia.com, concerning the acidity of urea); Price v. College Park Honda, Civ. No. 05-0624(PLF), 2006 WL 1102818, *7 n.3 (D.D.C. March 31, 2006) (taking judicial notice of contents of a private party's website).

Because those facts are properly before the Court, and they illustrate that Counts V and VI of plaintiff's complaint have no factual foundation, the Court should enter judgment for defendants.  Plaintiff's contrary arguments are meritless.

Plaintiff argues the designated privacy and security experts may not be experts, but relief cannot be granted on such a claim; plaintiff has no right to enforce the membership provisions of the AHIC charter under the APA.  As an initial matter, the AHIC charter is intended solely to govern the agency's internal administration and Congressional oversight; it does not confer any judicially enforceable benefits or rights.   Again, "agencies are not required, at the risk of invalidation of their action, to follow all of their rules, even those properly classified as 'internal." Caceres, 440 U.S. at 754 n.18.  Moreover, defendants' appointments under the charter are not "final agency action" and, hence, not subject to judicial review under the APA, 5 U.S.C. § 704. The appointments are not an action "by which rights are determined, or from which legal

consequences will flow" regarding plaintiff.[10]  Bennett v. Spear, 520 U.S. 154, 178 (1997);

Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Commission, 324 F.3d 726,

731 (D.C. Cir. 2003); Guerrero v. Clinton, 157 F.3d 1190, 1194 (9th Cir. 1998).  In particular,

appointment to the AHIC is not an action "that will directly affect the parties."  Franklin v.

Massachusetts, 505 U.S. 788, 797 (1992).  "[N]o legal consequences flow from [any AHIC

recommendations, let alone appointment] and it has no determinative or coercive effect on the

action of someone else that in turn" will injure plaintiff.  Geurrero, 157 F.3d at 1194-95.

       As to plaintiff's claim that the National Committee on Vital and Health Statistics

("NCVHS") charter is expired, the Secretary has established that it is meritless: the charter was

timely renewed.  See Def. Mem. 32.  Plaintiff now argues it still has a claim (although one it has

never pled) because the Secretary has not established the renewed charter was transmitted to

Congress.  As discussed supra, plaintiff has no judicially enforceable right in that submission; it

is a matter between Congress and the Executive.  NRDC v. Hodel, 865 F.2d at 319.  Plaintiff also

argues it could obtain "*some* relief against the renewed . . . charter," Pl. Opp. 44 (emphasis in

original), although plaintiff has not raised any claim other than expiration.  The Court should

grant judgment for defendants on plaintiff's claim that the NCVHS is operating under an expired

charter, because it is not.

---

       [10]   Plaintiff has not alleged that it sought, and was denied, any of the seats on the AHIC, let
alone the ones in question.

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendants' Rule 12(c) motion, and enter judgment on the pleadings in their favor, and deny plaintiff's motion for partial summary judgment.

Dated:  August 4, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

     /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov

Attorneys for Defendants