UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF AMERICAN PHYSCIANS &amp;     )
SURGEONS, INC.,                           )
                                          )
      Plaintiff,                          )
                                          )          Civil Action No. 06-0319-ESH
      v.                                  )
                                          )
DEP'T OF HEALTH &amp; HUMAN SERVICES, *et al.,* )
                                          )
      Defendants.                         )

### PLAINTIFF'S REPLY IN SUPPORT OF
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Lawrence J. Joseph, D.C. Bar No. 464777

2121 K Street, NW, Suite 800
Washington, DC 20037
Telephone: (202) 669-5135
Telecopier: (202) 318-2254

*Counsel for Association of American
Physicians and Surgeons, Inc.*

Dated: August 18, 2006

## TABLE OF CONTENTS

Table of Contents...................................................................................................................... i
Table of Authorities ................................................................................................................ ii
Introduction..............................................................................................................................1
Argument ..................................................................................................................................1
I.     Undisputed Material Facts ..............................................................................................1
       A.     Employment Status of Non-Federal AHIC Members................................................1
              1.     Ongoing Employment Outside AHIC.............................................................2
              2.     Non-Fulltime, Non-Permanent Nature of AHIC Position ............................2
       B.     HHS Convened the AHIC Subcommittees .............................................................3
II.    Omission of Order Required by Local Rule ....................................................................3
III.   Subject-Matter Jurisdiction.............................................................................................4
       A.     Standing ...................................................................................................................4
              1.     Informational Standing .................................................................................4
              2.     Procedural Standing ......................................................................................5
              3.     Program Standing..........................................................................................7
              4.     Economic Standing .......................................................................................7
       B.     Jurisdiction and Judicial Review ............................................................................8
              1.     APA...............................................................................................................9
                     a.     Agency Action on Formal Record ......................................................9
                     b.     Final Agency Action ...........................................................................9
                     c.     Committed to Agency Discretion ......................................................10
              2.     Declaratory Relief ......................................................................................12
              3.     Mandamus ...................................................................................................13
              4.     Officers Suits ..............................................................................................14
       C.     Sovereign Immunity..............................................................................................14
              1.     APA Waiver of Sovereign Immunity .........................................................14
              2.     Officers Not Sovereign ..............................................................................15
              3.     This Court's Equity Jurisdiction ................................................................15
              4.     Declaratory Relief ......................................................................................15
              5.     Mandamus ...................................................................................................16
IV.    Dispositive Relief on Counts II and III.........................................................................16
       A.     Count II: Unlawful Contractual Panels..................................................................16
              1.     *Byrd* Not Preclusive against AAPS ...........................................................17
              2.     FACA Applies to Contracted-For Consensus Panels .................................17
              3.     *Ultra Vires* Claim......................................................................................17
       B.     Count III: Unlawful Subcommittees ......................................................................19
              1.     AHIC Subcommittees Subject to FACA ....................................................19
                     a.     HHS Convened the Subcommittees...................................................20
                     b.     FACA Members' Status as "Officers" under FACA ....................20
              2.     Status of Subcommittees under GSA Regulations......................................23
              3.     *Ultra Vires* Claim......................................................................................24
Conclusion ..............................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*AAPS v. Clinton,* 997 F.2d 898 (D.C. Cir. 1993) ................................................................18, 23, 25

\* *Aid Ass'n for Lutherans v. U.S. Postal Serv.,* 321 F.3d 1166 (D.C. Cir. 2003) .........................13

*Am. Farm Bureau v. EPA,* 121 F.Supp.2d 84 (D.D.C. 2000) .......................................................5, 6

*Am. Fed'n of Gov't Employees v. FLRA,* 750 F.2d 143 (D.C. Cir. 1984) ....................................10

*Amgen, Inc. v. Smith,* 357 F.3d 103 (D.C. Cir. 2004) ....................................................................14

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ....................................................................1

*Andrus v. Charlestone Stone Prod. Co.,* 436 U.S. 604 (1978) .......................................................8

*Animal Legal Def. Fund v. Shalala,* 104 F.3d 424 (D.C. Cir. 1997) .............................................20

*Animal Legal Def. Fund, Inc. v. Espy,* 23 F.3d 496 (D.C. Cir. 1994) ............................................5

\* *Apter v. Richardson,* 510 F.2d 351 (7th Cir. 1975) ...............................................................12, 19

*Ass'n of Nat'l Advertisers v. FTC,* 617 F.2d 611 (D.C. Cir. 1979) .................................................8

*Baker by Thomas v. Gen. Motors Corp.,* 522 U.S. 222 (1998) .....................................................17

*Bennett v. Spear,* 520 U.S. 154 (1997) ....................................................................................... 9-10

*Better Gov't Ass'n v. Dep't of State,* 780 F.2d 86 (D.C. Cir. 1986) ..............................................10

*Bowen v. Massachusetts,* 487 U.S. 879 (1988) ..............................................................................8

*Byrd v. EPA,* 174 F.3d 239 (D.C. Cir. 1999) ........................................................................... 16-17

*Califano v. Sanders,* 430 U.S. 99 (1977) ..................................................................................8, 11

*Chamber of Commerce v. Reich,* 74 F.3d 1322 (D.C. Cir. 1996)............................................14, 15

*Chrysler Corp. v. Brown,* 441 U.S. 281 (1979) ..............................................................................8

*Cummock v. Gore,* 180 F.3d 282 (D.C. Cir. 1999) ....................................................................7, 21

*Dickinson v. Zurko,* 527 U.S. 150 (1999) ....................................................................................16

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59 (1978) ..................................8

*Envtl. Def. Fund v. Ruckelshaus,* 439 F.2d 584 (D.C. Cir. 1971) .................................................10

*Ex parte Hennen,* 38 U.S. (13 Pet.) 230 (1839) ...................................................................22

* *FEC v. Akins,* 524 U.S. 11 (1998) ..............................................................................5, 7

*Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658 (D.C. Cir. 1996) .............................. 6-7

*Foman v. Davis,* 371 U.S. 178 (1962) ..................................................................................3

*Fornaro v. James,* 416 F.3d 63 (D.C. Cir. 2005) ............................................................16

*GAF Corp. v. U.S.,* 818 F.2d 901 (D.C. Cir. 1987) ...........................................................4

*Grumman Ohio Corp. v. Dole,* 776 F.2d 338 (D.C. Cir. 1985) ......................................13

* *Hoeppel v. U.S.,* 85 F.2d 237 (D.C. Cir. 1936) ...........................................................22

*Hurley v. Reed,* 288 F.2d 844 (D.C. Cir. 1961) ........................................................12, 13

*In re Berman,* 80 F.2d 361 (D.C. Cir. 1935) ...................................................................21

*In re Cheney,* 406 F.3d 723 (D.C. Cir. 2005) (*en banc*) ................................................24

*INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987) ...............................................................23

*Int'l Union v. OSHA,* 938 F.2d 1310 (D.C. Cir. 1991) ...................................................11

*James Madison, Ltd. v. Ludwig,* 82 F.3d 1085 (D.C. Cir. 1996) ......................................3

*Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682 (1949) ........................15

*Metcalf v. Nat'l Petroleum Council,* 553 F.2d 176 (D.C. Cir. 1977) ...............................9

*Morton v. Mancari,* 417 U.S. 535 (1974) ..........................................................................9

*Nat'l Airlines, Inc. v. C.A.B.,* 392 F.2d 504 (D.C. Cir. 1968) ........................................10

*Nat'l Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector
      Survey on Cost Control,* 711 F.2d 1071 (D.C. Cir. 1983) ..................................24

*NRDC v. Hodel,* 865 F.2d 288 (D.C. Cir. 1988) ...............................................................6

*Ohio v. Dep't of Interior,* 880 F.2d 432 (D.C. Cir. 1989) ..............................................11

*Peoples v. U.S. Dept. of Agric.,* 427 F.2d 561 (D.C. Cir. 1970) ....................................15

*Pickus v. U.S. Bd. of Parole,* 507 F.2d 1107 (D.C. Cir. 1974) .......................................11

* *Pub. Citizen v. U.S. Dep't of Justice,* 491 U.S. 440 (1989) ...............................5, 17, 20

*Robbins v. Reagan,* 780 F.2d 37 (D.C. Cir. 1985) ................................................8, 11

*Royster-Clark Agribusiness, Inc. v. Johnson,* 391 F.Supp.2d 21 (D.D.C. 2005) ..........18

*Rueth v. EPA,* 13 F.3d 227 (7th Cir. 1993) ...................................................................13

*Sea-Land Serv., Inc. v. Alaska R.R.,* 659 F.2d 243 (D.C. Cir. 1982) ............................14

*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667 (1950)...........................12, 13

*Steffel v. Thompson,* 415 U.S. 452 (1974) ...................................................................12

*Taxpayers of Michigan Against Casinos v. Norton,* 433 F.3d 852 (D.C. Cir. 2006)....................11

*Tierney v. Schweiker,* 718 F.2d 449 (D.C. Cir. 1983) ........................................12, 13

*Transohio Sav. Bank v. Director, Office of Thrift Supervision,*
    967 F.2d 598 (D.C. Cir. 1992) ...........................................................................15

*U.S. v. Caceres,* 440 U.S. 741 (1979) ..........................................................................11

*U.S. v. Decoster,* 624 F.2d 196 (D.C. Cir. 1979) ...........................................................3

*U.S. v. Germaine,* 99 U.S. 508 (1878) .........................................................................22

*U.S. v. Hartwell,* 73 U.S. 385 (1867) ...........................................................................22

*U.S. v. Mitchell,* 463 U.S. 206 (1983) ...........................................................................8

*U.S. v. Mouat,* 124 U.S. 303 (1888).............................................................................22

*Washington Legal Found. v. U.S. Sentencing Comm'n,*
    89 F.3d 897 (D.C. Cir. 1996) .............................................................................18

*Zivotofsky v. Sec'y of State,* 444 F.3d 614 (D.C. Cir. 2006) ..........................................5

## STATUTES

* U.S. CONST. art. II, §2, cl.2.......................................................................21, 22, 25

U.S. CONST. amend. IV ...................................................................................................11

* Dictionary Act, 1 U.S.C. §1 ..............................................................................21, 23

Administrative Procedure Act, 5 U.S.C. §551-706 ...........................9, 11, 13, 14, 15, 16

5 U.S.C. §559.................................................................................................................16

5 U.S.C. §701(a)(1)........................................................................................................13

5 U.S.C. §701(a)(2) ................................................................................................11, 13

5 U.S.C. §702 ...................................................................................................................15

5 U.S.C. §704 .....................................................................................................................9

28 U.S.C. §1331 ............................................................................................................8, 13

28 U.S.C. §1361 .........................................................................................13, 14, 15, 16

Declaratory Judgment Act, 28 U.S.C. §§2201-2202 ..............................................12, 13

* 28 U.S.C. §2201 ............................................................................................................12

42 U.S.C. §217a ...................................................................................................18, 19, 21

42 U.S.C. §241(a)(7)-(8) ..................................................................................................18

42 U.S.C. §299b-3(c) ..................................................................................................18, 19

Federal Advisory Committee Act, 5 U.S.C. App. 2, §§1-16 ("FACA") ............................ *passim*

FACA §2(b)(5), 5 U.S.C. App. 2, §2(b)(5) .........................................................................7

FACA §3(2), 5 U.S.C. App. 2, §3(2) .......................................................7, 16, 19, 20, 25

FACA §3(2)(i), 5 U.S.C. App. 2, §3(2)(i) ....................................................................24, 25

FACA §9, 5 U.S.C. App. 2, §9 ....................................................................4, 5, 10, 19

* FACA §9(a)(2), 5 U.S.C. App. 2, §9(a)(2) .............................................................6, 9, 17

FACA §9(c), 5 U.S.C. App. 2, §9(c) ................................................................................18

FACA §10(b), 5 U.S.C. App. 2, §10(b) ...........................................................................10

FACA §14(a)(1), 5 U.S.C. App. 2, §14(a)(1) .....................................................................3

Pub. L. 94-574, 90 Stat. 2721 (1976) ................................................................................8

Pub. L. 96-486, §2(a), 94 Stat. 2369 (1980) .....................................................................8

Pub. L. No. 108-199, Div. E, Title II, 118 Stat 3, 250 (2004) ........................................19

Pub. L. No. 108-447, Div. F, Title II, 118 Stat 2809, 3136 (2004) ................................19

## RULES AND REGULATIONS

FED. R. CIV. P. 15(a) .........................................................................................................3

FED. R. CIV. P. 55(e) ...............................................................................................4

FED. R. CIV. P. 56(e) .......................................................................................1, 2, 3

FED. R. CIV. P. 57 .............................................................................................12

L. Civ. R. 7(b) .....................................................................................................3

L. Civ. R. 7(c) .....................................................................................................3

21 C.F.R. §14.15(a) ............................................................................................17

41 C.F.R. §102-3.25 ...........................................................................................23

41 C.F.R. §102-3.35(a) .......................................................................................23

41 C.F.R. §102-3.35(b) ..................................................................................20, 23

41 C.F.R. §102-3.70(c) .......................................................................................23

41 C.F.R. §102-3.75 ...........................................................................................23

48 C.F.R. §52.227-17(d) .....................................................................................10

66 Fed. Reg. 37,728 (2001) ...............................................................................23

70 Fed. Reg. 40,703 (2005) ..........................................................................3, 19

## LEGISLATIVE HISTORY

ADMINISTRATIVE PROCEDURE ACT: LEGISLATIVE HISTORY, S. DOC. NO. 248, 79th
    Cong., 2d Sess. (1946) ..............................................................................16

H. REP. NO. 84-2894 (1956) .............................................................................23

H.R. REP. NO. 91-1731 (1970), *reprinted in* FED. ADVISORY COMM. ACT (PUB. L.
    92-463), SOURCE BOOK: LEGISLATIVE HISTORY, TEXTS, AND OTHER
    DOCUMENTS (Cong. Res. Serv. 1978)..................................................5, 11, 24

S.3529, 92nd Cong., 2d Sess., §9 (Apr. 25, 1972), *reprinted in* FED. ADVISORY
    COMM. ACT (PUB. L. 92-463), SOURCE BOOK: LEGISLATIVE HISTORY,
    TEXTS, AND OTHER DOCUMENTS (Cong. Res. Serv. 1978)..............................5

* S. REP. 92-1098 (1972), *reprinted in* FED. ADVISORY COMM. ACT (PUB. L. 92-
    463), SOURCE BOOK: LEGISLATIVE HISTORY, TEXTS, AND OTHER
    DOCUMENTS (Cong. Res. Serv. 1978)..............................................5, 6, 7

H.R. Rep. No. 92-1017 (1972), *reprinted in* FED. ADVISORY COMM. ACT (PUB. L. 92-463), SOURCE BOOK: LEGISLATIVE HISTORY, TEXTS, AND OTHER DOCUMENTS (Cong. Res. Serv. 1978)....................................................................5

H.R. CONF. REP. NO. 92-1403 (1972), *reprinted in* FED. ADVISORY COMM. ACT (PUB. L. 92-463), SOURCE BOOK: LEGISLATIVE HISTORY, TEXTS, AND OTHER DOCUMENTS (Cong. Res. Serv. 1978).......................................................5

H.R. REP. NO. 94-1656, *reprinted in* 1976 U.S.C.C.A.N. 6121 ...............................................14, 15

H.R. REP. NO. 96-1461, *reprinted in* 1980 U.S.C.C.A.N. 5063 ....................................................8

## **OTHER AUTHORITIES**

EDWIN BORCHARD, DECLARATORY JUDGMENTS (1941) ...................................................16

Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Non-statutory" Judicial Review of Federal Administrative Action, 81 HARV. L. REV. 308 (1967) ............................................................................15

WILLIAM J. HUGHES, FEDERAL PRACTICE §25387 (1940 & Supp. 1945)......................................16

U.S. General Accounting Office, Principles of Federal Appropriations Law, vol. I (3rd ed. 2004) ..................................................................................19

Memorandum from J. Jackson Walter, Director, Office of Gov't Ethics, to Heads of Departments and Agencies of the Executive Branch (July 9, 1982)....................... 22-23

33 CHARLES ALAN WRIGHT & CHARLES H. KOCH, JR., FED. PRAC. & PROC. Judicial Review §8299.......................................................................................8

10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. Civ.3d §2766............................................................................13

FED. R. CIV. P. 57 advisory committee note ........................................................12

Notice from Mr. Joe Burgess, Office of the Clerk, U.S. District Court for the District of Columbia (Apr. 26, 2004) .....................................................................4

## INTRODUCTION

In its motion for summary judgment on Counts II and III ("Pl.'s Mot. Summ. J."), plaintiff Association of American Physicians & Surgeons, Inc. ("AAPS") asked this Court to hold that agency action and inaction by defendants U.S. Department of Health & Human Services and its Secretary, Michael O. Leavitt, in his official capacity and his individual capacity under color of law (collectively, hereinafter "HHS"), violate the Federal Advisory Committee Act ("FACA") and exceed HHS's authority. HHS filed an opposition ("Defs.' Opp'n") in consolidation with its reply to AAPS's opposition ("Pl.'s Opp'n") to HHS's motion to dismiss ("Defs.' Mot. to Dismiss"). As set forth below and in AAPS's motion, this Court should find that HHS violated FACA and exceeded its delegated authority in convening the "Contractual Panels," Compl. ¶¶3(a), 67, and the American Health Information Community ("AHIC") subcommittees.

## ARGUMENT

### I.  UNDISPUTED MATERIAL FACTS

In response to a properly supported motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A dispute about a material fact is "genuine" if the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).

**A.  Employment Status of Non-Federal AHIC Members**. In Paragraph 3 of its Statement of Undisputed Material Facts ("Statement of Facts"), AAPS asserted (1) that the private- and state-sector "AHIC members maintain the employment relationships identified in paragraph 1" of the Statement of Facts, and (2) that those "members… are neither full-time nor permanent

part-time officers or employees of the U.S. government or any agency thereof." HHS provided

an entirely non-responsive response, which AAPS quotes in full:

> This paragraph contains conclusions of law, not statements of material fact, and so no response is required. Defendants do not dispute that the non-governmental members of the AHIC are not Special Government Employees; defendants do dispute any allegation or legal conclusion that they are officers or employees of the federal government as that term is used in the Federal Advisory Committee Act, 5 U.S.C. App. 2 et seq.

Defs.' Resp. to Pl.'s Statement of Material Facts, at 2 (¶3). Although AAPS understands HHS to

dispute the legal conclusion that AAPS draws, Pl.'s Mot. Summ. J. at 10-11, HHS's response in

no way disputes AAPS's two factual statements (namely, that these AHIC members retain their

pre-AHIC employment and that they are neither fulltime nor permanent part-time federal employees). The following two sections address the two *facts,* to which there remains no genuine

dispute, even while the parties dispute the *legal import* of those facts.

     **1.    Ongoing Employment Outside AHIC**. HHS nowhere disputes the fact that the

"non-federal" (i.e., private- and state-sector) AHIC members have maintained the private- and

state-sector employment with which those AHIC members identified themselves in opening the

first AHIC meeting, as identified in paragraph 1 of AAPS's Statement of Facts (*i.e.,* Dr. Barrett

remains the Chairman of Intel, Mr. Reinemund the Chairman of PepsiCo, etc.). *See also* Second

Suppl. Declaration of Lawrence J. Joseph, ¶¶4-12 (websites for employers of each such member

continue to list them in their position) (Ex. 1). In any event, by failing to proffer any contrary

evidence, HHS failed to raise a genuine dispute and thus concedes the fact. FED. R. CIV. P. 56(e).

     **2.    Non-Fulltime, Non-Permanent Nature of AHIC Position**. HHS nowhere disputes the fact that the non-federal AHIC members are neither fulltime federal employees nor

permanent part-time federal employees. That they are not *fulltime* federal employees follows

from their significant private- and state-sector jobs, Defs.' Resp. to Pl.'s Statement of Material Facts, at 1-2 (¶1), which they continue to hold. Section I.A.1, *supra.* That they are not *permanent* part-time employees follows from the temporary nature of AHIC itself. FACA §14(a)(1); 70 Fed. Reg. 40,703 (2005). By failing to proffer any contrary evidence, HHS failed to raise a genuine dispute and thus concedes the fact. FED. R. CIV. P. 56(e); *cf. U.S. v. Decoster,* 624 F.2d 196, 227-28 (D.C. Cir. 1979) ("burden [of proof]… shifted where the material necessary to prove or dis-prove an element 'lies particularly within the knowledge' of the defendant") (citations omitted).

   B. **HHS Convened the AHIC Subcommittees**. In its Answer, HHS states that "*DHHS has convened four… subcommittees,* comprised of both AHIC members and AHIC non-members." Answer ¶57 (emphasis added). AAPS cited the Answer as an undisputed fact; in a veiled attempt to amend its pleading, HHS now claims "that the AHIC (which is an advisory committee to the U.S. Department of Health and Human Services) has convened four such workgroups, comprised of both AHIC members and non-members, to advise the AHIC." Defs.' Resp. to Pl.'s Statement of Material Facts, at 4 (¶7). Because more than 20 days have passed since HHS filed its Answer on May 4, 2006, however, HHS may amend its Answer only with the Court's leave or AAPS's written consent. FED. R. CIV. P. 15(a). For the reasons set forth in Section IV.B.1.a, *infra,* AAPS would oppose such a motion as futile (*i.e.,* for FACA purposes, HHS convened the AHIC subcommittees, regardless of whether it did so directly as HHS or indirectly through AHIC). *Foman v. Davis,* 371 U.S. 178, 182 (1962) (recognizing futility as basis to deny leave to amend); *James Madison, Ltd. v. Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996) (same).

## II.  OMISSION OF ORDER REQUIRED BY LOCAL RULE

   Because HHS's opposition did not attach a proposed order, this Court *sua sponte* could strike the relevant portions of HHS's combined reply and opposition. L. Civ. R. 7(c) (opposition

must include proposed order); Notice from Mr. Joe Burgess, Office of the Clerk, U.S. District Court for the District of Columbia (Apr. 26, 2004) ("Failure to provide the proposed order will result in the document being stricken from the docket for failure to comply with the Local Rules") (Ex. 2). If the Court strikes HHS's opposition and denies its motion to dismiss Counts II and III, the Court could determine that Defendants concede AAPS's summary judgment motion on Counts II and III. *See* L. Civ. R. 7(b). In pointing out HHS's procedural defect, however, AAPS does not move the Court to strike HHS's opposition or to enter a default judgment.[1]

## III. SUBJECT-MATTER JURISDICTION

**A.    Standing**. By failing to follow FACA's chartering requirements for the Contractual Panels and AHIC subcommittees in Counts II and III, HHS has caused AAPS several concrete injuries in fact under informational, procedural, and programmatic standing. Further, although HHS contends that the negative economic impact of HHS's future actions are too speculative to confer standing, HHS's FACA violations both accelerate and increase the risk of such future actions, thereby providing the required immediacy under procedural standing.[2]

**1.    Informational Standing**. HHS argues that FACA §9's chartering requirements

---

[1]    Under Rule 55(e), no "default [judgment] shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." FED. R. CIV. P. 55(e). If the court *sua sponte* strikes HHS's opposition pursuant to the Clerk's notice dated Apr. 26, 2004, the same evidence that supports summary judgment motion would establish AAPS's right to judgment under Rule 55(e).

[2]    Although HHS twice has quoted at length language from unrelated prior litigation between itself and AAPS, Defs.' Mot. to Dismiss at 11; Defs.' Opp'n at 9-10, that litigation has no bearing on the Court's jurisdiction here. *GAF Corp. v. U.S.,* 818 F.2d 901, 913 (D.C. Cir. 1987) (preclusion is limited by a "curable-defect exception [that] allows relitigation of a claim of jurisdiction, [but not] the standards by which jurisdiction is ascertained"). AAPS does not contend here that speculative allegations of injury can establish standing. Instead, AAPS contends that its jurisdictional allegations here are not speculative.

confer rights only to Congress, Defs.' Opp'n at 5, but FACA's legislative history indicates otherwise: "[a] *copy of this charter* is to be furnished to the Library of Congress… and *shall be on file for inspection by the public.*" S. REP. 92-1098 (1972), *reprinted in* FED. ADVISORY COMM. ACT (PUB. L. 92-463), SOURCE BOOK: LEGISLATIVE HISTORY, TEXTS, AND OTHER DOCUMENTS, at 164 (Cong. Res. Serv. 1978) (emphasis added) (hereinafter, "FACA HIST."); *see also* H.R. CONF. REP. NO. 92-1403 (1972), *reprinted in* FACA HIST., at 325 (Conference Committee adopted §9's chartering provisions from Senate bill); *compare* S.3529, 92nd Cong., 2d Sess., §9 (Apr. 25, 1972), *reprinted in* FACA HIST., at 184 (requiring charters to be noticed in *Federal Register* and filed with Library of Congress) *with* FACA §9 (same). *cf.* H.R. Rep. No. 92-1017 (1972), *reprinted in* FACA HIST., at 286 ("[t]he Library [of Congress] is directed to establish a depository for such reports and papers where they may be inspected and used by the public").

Under FACA §9, then, HHS's breach of informational rights supports standing under an "explicitly created… right to information" under a "statute[] specifically provid[ing] for and… intended to promote 'disclosure and public access' to the workings of government and a policy of 'government in the sunshine.'" *Am. Farm Bureau v. EPA,* 121 F.Supp.2d 84, 97-98 (D.D.C. 2000) (*quoting Animal Legal Def. Fund, Inc. v. Espy,* 23 F.3d 496, 502 (D.C. Cir. 1994) *and Pub. Citizen v. U.S. Dep't of Justice,* 491 U.S. 440, 449-51 (1989)) (Huvelle, J.); *see also Zivotofsky v. Sec'y of State,* 444 F.3d 614, 617-18 (D.C. Cir. 2006) (FACA provides informational standing); *FEC v. Akins,* 524 U.S. 11, 21 (1998) ("plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute").

   **2.   Procedural Standing**. FACA confers procedural standing for the same reasons that it confers informational standing: "[t]here is a need for a procedure that provides for executive branch accountability to the public and the Congress." H.R. REP. NO. 91-1731 (1970), *reprinted*

*in* FACA HIST., at 225. In particular, FACA "Section 9 is the first of three sections dealing with the establishment, operation, and procedural requirements of advisory committees." S. REP. NO. 92-1098 (1972), *reprinted in* FACA HIST., at 162. Congress intended FACA §9(a)(2)'s requirement that agencies notice FACA charters in the *Federal Register* to benefit the public: "by providing the requirement of 'timely notice published in the Federal Register,' the public and the Congress would have the opportunity to challenge the establishment of such committees they felt were not necessary or were not relevant." *Id., reprinted in* FACA HIST., at 163; Section III.A.1, *supra* (Conference Committee adopted §9 from Senate bill). Thus, unlike the statute in *Am. Farm Bureau,* Congress unquestionably intended FACA's procedures to benefit the public.[3]

As HHS states it, procedural standing requires AAPS to "demonstrate an *injury to a particularized and concrete interest.*" Defs.' Opp'n at 6 (emphasis in original), a test met by AAPS's asserting a concrete denial of its FACA-conferred procedural rights. *See* Pl.'s Opp'n at 14-15; Pl.'s Mot. Summ. J. at 2-4. More importantly, because AAPS members have concrete economic interests at stake, HHS's procedural violations allow AAPS to rely on the procedural violations to supply immediacy and redressability, *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664 (D.C. Cir. 1996), which HHS claims is lacking. Defs.' Opp'n at 3-4, 7-11; Defs.' Mot to Dismiss at 9-12. HHS's procedural violation unquestionably cause concrete injuries, both to AAPS's ability to monitor HHS's raft of consensus panels and to AAPS members' ability to participate on those panels. Moreover, because the federal Health Information Technology ("Health

---

[3]    Because FACA protects both the public and Congress, HHS's citation to *NRDC v. Hodel* is misplaced, Defs.' Opp'n at 5, because *Hodel* concerned reviewability (not standing) where Congress directed an agency to prepare a specific report, solely for Congress. 865 F.2d 288, 319 (D.C. Cir. 1988). By contrast, as demonstrated in the text and in Section III.A.1, *supra,* Congress intended FACA to provide the affected public with informational and procedural rights.

IT") initiative by design seeks to accelerate and catalyze adoption of Health IT, Suppl. Joseph Decl. ¶¶16-17, there is no question that HHS's actions cause AAPS members "some reasonably increased risk of injury to its particularized interest" in the form of higher equipment and training costs. *Florida Audubon,* 94 F.3d at 664.[4]

     **3.** **Program Standing**. By violating FACA's charter requirements for the Contractual Panels and AHIC subcommittees, HHS caused two program injuries within FACA's zone of interests for Counts II and III.[5] First, by creating panels with overlapping missions, HHS has made AAPS's task of monitoring HHS's consensus panels more expensive and time consuming. Orient Decl. ¶¶19-20. While that injury may not satisfy Article III under many (or even most) contexts, it does here because FACA's chartering requirement was expressly intended to enable the public to challenge unnecessary new committees, which FACA defines to include subcommittees. Section III.A.2, *supra* (*quoting* S. REP. NO. 92-1098); FACA §§2(b)(5), 3(2). Second, HHS deprived AAPS and its members of the opportunity to seek to participate on such new panels. Pl.'s Opp'n at 15 n.3; Orient Decl. ¶¶17-18; *Cummock v. Gore,* 180 F.3d 282, 291-92 (D.C. Cir. 1999). By providing a new opportunity for HHS to appoint committee members, Compl. ¶101(B)(ii), (iii), (viii), the requested relief would redress AAPS's injuries. *Akins,* 524 U.S. at 26.

     **4.** **Economic Standing**. Even if the economic burdens of HHS's Health IT initiatives do not now support standing by themselves, they nonetheless coalesce with HHS's procedural

---

[4]    HHS argues that Justice Scalia's concurrence in a later case somehow modifies a majority decision that he wrote in a *prior* case. Defs.' Opp'n at 6 n.1. However unsound that may be as a general theory of reading precedents, the Court's decision in a *subsequent* case rejects HHS's specific legal theory, over Justice Scalia's dissent. *Utah v. Evans,* 536 U.S. 452, 464 (2002).

[5]    AAPS suffers additional program injuries for other AHIC counts. Pl.'s Opp'n at 15-19.

violations to confer standing on AAPS to protect its members' economic interests. *See* Section III.A.2, *supra;* Pl.'s Opp'n at 14-15; Orient Decl. ¶¶14-16, 21-22.

   **B.**  **Jurisdiction and Judicial Review**. Although FACA does not provide a statutory action for judicial review, AAPS can enforce FACA and the limits of HHS's delegated authority through various nonstatutory bases for injunctive and declaratory relief. *See* 33 CHARLES ALAN WRIGHT & CHARLES H. KOCH, JR., FED. PRAC. & PROC. Judicial Review §8299 ("[a]dministrative lawyers use the injunction/declaratory judgment form when there is no statutory form of proceeding"). The federal-question statute, 28 U.S.C. §1331, provides subject-matter jurisdiction for nonstatutory review of federal agency action. *Califano v. Sanders,* 430 U.S. 99, 105 (1977) (1976 amendments to §1331 removed the amount-in-controversy threshold for "any [federal-question] action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity") (*quoting* Pub. L. 94-574, 90 Stat. 2721 (1976)); *Andrus v. Charlestone Stone Prod. Co.,* 436 U.S. 604, 608 n.6 (1978); *Chrysler Corp. v. Brown,* 441 U.S. 281, 317 n.46 (1979) (§1331 provides subject-matter jurisdiction to review agency action); *Ass'n of Nat'l Advertisers v. FTC,* 617 F.2d 611, 619 (D.C. Cir. 1979) ("[g]eneral federal question jurisdiction... gives the district courts the power to review agency action absent a preclusion of review statute"); *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 70-71 (1978) (judicial review of federal agency action typically "arises under" the Constitution or a federal statute). In 1980, Congress further amended §1331 to its current form, Pub. L. 96-486, §2(a), 94 Stat. 2369 (1980), but the amendment did not repeal §1331's 1976 amendment, relied on by *Sanders* and its progeny. H.R. REP. NO. 96-1461, at 3-4, *reprinted in* 1980 U.S.C.C.A.N. 5063, 5065; *Bowen v. Massachusetts,* 487 U.S. 879, 891 n.16 (1988); *U.S. v. Mitchell,* 463 U.S. 206, 227 & n.32 (1983); *Robbins v. Reagan,* 780 F.2d 37, 42-43 (D.C. Cir.

1985); *cf. Morton v. Mancari,* 417 U.S. 535, 550 (1974) (repeal by implication is disfavored).

    **1.    APA**. Unless expressly or impliedly precluded, judicial review lies under the Administrative Procedure Act ("APA"). HHS's combined reply and opposition offers three potential APA bases for denying AAPS's motion for summary judgment on Counts II and III.

    **a.    Determination on Formal Record**. For agencies, FACA §9(a)(2) prohibits forming an advisory committee until the agency head "determine[s] as a matter of formal record… with timely notice published in the Federal Register" that the new committee is "in the public interest in connection with the performance of duties imposed on that agency by law." Although HHS deems this an unreviewable paperwork exercise, Defs.' Opp'n at 21-23,[6] the legislative history of makes clear that Congress intended FACA §9(a)(2) to provide "the public… the opportunity to challenge the establishment of such committees they felt were not necessary." Section III.A.2, *supra.* Three distinct reasons suggest that chartering action and inaction are reviewable: (1) the legislative history ties charters to the public's challenging the creation of a committee; (2) the statutory use of "formal *record*" (as opposed, *e.g.,* to "formal determination") suggests judicial review; and (3) HHS's reading renders the statutory text superfluous.

    **b.    Final Agency Action**. HHS contends that, because the consensus panels will not themselves promulgate any regulations, HHS's convening those panels is not "final agency action" under 5 U.S.C. §704. Defs.' Opp'n at 24-25 (*citing inter alia Bennett v. Spear,* 520 U.S. 154, 178 (1997)). Under *Bennett,* finality has two prongs: (1) a consummated decisionmaking process, and (2) the agency action is "one by which rights or obligations have been determined,

---

[6]    HHS cites *dicta* from *Metcalf v. Nat'l Petroleum Council* for the proposition that an agency's determination is unreviewable, *id.* but even *Metcalf* looked both to the agency's charter and to unspecified "Supplementary Materials." 553 F.2d 176, 178 n.21 (D.C. Cir. 1977).

or from which legal consequences will flow." 520 U.S. at 177-78 (interior quotations omitted). As to the first *Bennett* prong, HHS does not dispute that it has consummated an interpretation that purportedly authorizes its contracting for consensus panels or spinning off subcommittees outside FACA, notwithstanding that FACA would apply if HHS convened them directly. Even if this Court cannot remedy HHS's current violations, it nonetheless can review HHS's interpretation as "final." *Am. Fed'n of Gov't Employees v. FLRA,* 750 F.2d 143, 144-45 (D.C. Cir. 1984) ("interpretation and guidance" that authoritatively rejects a statutory entitlement was ripe for immediate review because it constituted a concrete injury); *Better Gov't Ass'n v. Dep't of State,* 780 F.2d 86, 94-95 (D.C. Cir. 1986) (recognizing "an impairment of rights, not a mere threat of future impairment," in guideline's alleged negation of statutory entitlement); Orient Decl. ¶18.

As to the second *Bennett* prong, HHS's policy to convene such panels without the required charter defeats the rights that FACA §9 confers on the public, *see* Sections III.A.1-III.A.2, *supra,* as well as the opportunity that the required *Federal Register* notice provides the public to seek to participate on such panels. *Nat'l Airlines, Inc. v. C.A.B.,* 392 F.2d 504, 511 (D.C. Cir. 1968) ("effective deprivation of petitioners' rights" constitutes final action); *Envtl. Def. Fund v. Ruckelshaus,* 439 F.2d 584, 589 n.8 (D.C. Cir. 1971) ("[t]he test of finality for purposes of review is... whether [the action or inaction]… denies a right with consequences sufficient to warrant review"). Finally, with regard to the Contractual Panels, the closed-information policy under 48 C.F.R. §52.227-17(d) alters the legal regime of FACA §10(b)'s open-information policy. Pl.'s Mot. Summ. J. at 3. All of these "legal consequences" satisfy the second *Bennett* prong.

    **c.    Committed to Agency Discretion**. AAPS argued that regulations and guidelines can provide judicially manageable standards for otherwise unreviewable discretionary acts, Pl.'s Opp'n at 32-33, 36, 42; Pl.'s Mot. Summ. J. at 4, which HHS misconstrues as an attempt to

create a "judicially enforceable… right" under such agency documents. Defs.' Opp'n at 18 n.7. "The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely nonreviewable… unless the statutory scheme, *taken together with other relevant materials,* provides absolutely no guidance as to how that discretion is to be exercised." *Robbins,* 780 F.2d at 45 (emphasis added). "Moreover, the agency itself can often provide a basis for judicial review through the promulgation of regulations or *announcement of policies.*" *Id.* (emphasis added). FACA's legislative history makes the same point: "*[t]he mechanism to provide a balanced representation base should be achieved through law and guidelines.*" H.R. REP. NO. 91-1731 (1970), *reprinted in* FACA HIST., at 232 (emphasis in original). The House Report concludes that "[s]uch steps are necessary because in many critical areas administrators are receiving their advice from sources which have special and limiting viewpoints." *Id.*[7]

In any event, the fact that an agency's specific action is committed to its discretion under §701(a)(2) does not preclude judicial review of the agency's substantive underlying rules and standards or for its procedural compliance. *Pickus v. U.S. Bd. of Parole,* 507 F.2d 1107, 1110 (D.C. Cir. 1974), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 104-07

---

[7]    HHS's citation to a decision under the Fourth Amendment's exclusionary rule seems particularly misplaced. Defs.' Opp'n at 18 n.7 (*quoting U.S. v. Caceres,* 440 U.S. 741, 754 n.18 (1979)). The *Caceres* court made clear that agencies' noncompliance with administrative provisions may or may not be reviewable in APA-style actions, but that "this is not an APA case" and declined to extend the concept to the exclusionary rule. *Caceres,* 440 U.S. at 751 n.14, 754-55 & n.19. If this Court looks beyond decisions under §701(a)(2), the "intelligible principles" cases under the delegation doctrine seem more apt than criminal law. *Ohio v. Dep't of Interior,* 880 F.2d 432, 446 (D.C. Cir. 1989) (relying on "implicit assumption" from statutory text to "reflect a preference for restoration cost" and thus to cabin the agency's discretion); *Taxpayers of Michigan Against Casinos v. Norton,* 433 F.3d 852, 866-67 (D.C. Cir. 2006) (courts may rely on statutory context, purpose, and relevant history to cabin delegation to agency); *Int'l Union v. OSHA,* 938 F.2d 1310, 1313 (D.C. Cir. 1991) (agency interpretation may provide intelligible principles).

(1977); *Apter v. Richardson,* 510 F.2d 351, 355 (7th Cir. 1975) ("[w]here it is alleged that the agency has… violated an express statutory or procedural directive, otherwise non-reviewable agency action should be examined to the extent necessary to determine the merits of the allegation" that HHS's predecessor denied a discretionary grant application on a discriminatory basis).

     **2. Declaratory Relief**. The prerequisites for injunctive relief do not apply to requests for declaratory relief because, under both the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 ("DJA"), and Rule 57, "the fact that another remedy would be equally effective affords no ground for declining declaratory relief." FED. R. CIV. P. 57 advisory committee note; 28 U.S.C. §2201 (same); *Hurley v. Reed,* 288 F.2d 844, 848 (D.C. Cir. 1961) ("fact that another remedy would be equally effective affords no ground for declining declaratory relief" in action against federal officer); *Tierney v. Schweiker,* 718 F.2d 449, 457 (D.C. Cir. 1983) (same). Similarly, the plaintiff need not demonstrate irreparable injury. *Tierney,* 718 F.2d at 457 (showing of "irreparable injury… is not necessary for the issuance of a declaratory judgment") (*citing Steffel v. Thompson,* 415 U.S. 452, 471-72 (1974)).

     To argue that this Court lacks jurisdiction to grant declaratory relief, HHS cites two plainly inapposite cases. Defs.' Opp'n at 11. In the first, the Supreme Court held declaratory relief unavailable in federal court when the only basis for federal subject-matter jurisdiction was a federal-law defense to a state-law contract claim, *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 674 (1950) ("Since the matter in controversy [for] a declaratory judgment is not one that 'arises under the… laws… of the United States' and… jurisdiction cannot be sustained on… diversity of citizenship, the proceedings… should have been dismissed"), an issue entirely absent when the litigation arises directly under a federal statute. *See Skelly Oil,* 339 U.S. at 671 ("the question [is] whether a suit like this 'arises under the… laws… of the United States,' [under

§1331] so as to enable District Courts to give declaratory relief under the [DJA]"). Accordingly, "[n]o question is, or could properly be, raised as to the jurisdiction of the courts of the District of Columbia over declaratory judgments in general." *Hurley,* 288 F.2d at 848 (*citing Skelly Oil,* 339 U.S. at 671); *accord Tierney,* 718 F.2d at 453-54 (§1331 provides subject-matter jurisdiction for declaratory relief against federal officers); *Grumman Ohio Corp. v. Dole,* 776 F.2d 338, 343 (D.C. Cir. 1985) (although neither APA nor DJA *independently* provides subject-matter jurisdiction, §1331 provides subject-matter jurisdiction for such actions if they arise under federal law); 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. Civ.3d §2766 ("[i]f the normal requirements of federal jurisdiction are present…, the court has jurisdiction" for declaratory relief).

In the second case cited by HHS, the Seventh Circuit found jurisdiction lacking because the underlying statute precluded pre-enforcement review. *Rueth v. EPA,* 13 F.3d 227, 230-31 (7th Cir. 1993) (*citing inter alia* 5 U.S.C. §701(a)(1)). HHS does not contend that FACA *precludes* review under §701(a)(1), and Section III.B.1, *supra,* addresses HHS's argument about commitment to its discretion under §701(a)(2) for APA purposes. Given that the *Rueth* plaintiff waived his ability to seek declaratory relief against officers acting *ultra vires, Rueth,* 13 F.3d at 231 n.4, HHS cannot credibly contend that *Rueth* has any relevance to AAPS's non-APA arguments. *Aid Ass'n for Lutherans v. U.S. Postal Serv.,* 321 F.3d 1166, 1173 (D.C. Cir. 2003) ("APA's stricture barring judicial review 'to the extent that statutes preclude judicial review,' 5 U.S.C. §701(a)(1), 'does not repeal the review of *ultra vires* actions' [and] courts are normally available to reestablish the limits on [an officer's] authority").

    **3. Mandamus**. Although it argues that §1361 requires that the defendant owe the plaintiff a duty, Defs.' Opp'n at 12, HHS does not dispute that that requirement is coextensive

with the standing inquiry, Pl.'s Opp'n at 27-28 (citing cases), or that §1361's enactment did not restrict this Court's unique and more-generous mandamus jurisdiction. Pl.'s Opp'n at 29.

    **4.    Officers Suits**. HHS does not dispute the "well settled" availability of suits to enjoin the *ultra vires* conduct of federal officers, Pl.'s Mot. Summ. J. at 5; Pl.'s Opp'n at 23-30, but argues only that such suits do not apply because HHS did not act *ultra vires.* Defs.' Opp'n at 19, 21. On the merits, Sections IV.A.3 and IV.B.3, *infra,* demonstrate *ultra vires* conduct and clear statutory violations that trigger judicial review. *Amgen, Inc. v. Smith,* 357 F.3d 103, 111 (D.C. Cir. 2004) ("[t]he presumption is particularly strong that Congress intends judicial review of agency action taken in excess of delegated authority"). Moreover, this Court's historic and unique equity jurisdiction provides another, distinct basis for judicial review, undiminished by federal legislation expanding other forms of judicial review. *See* H.R. REP. NO. 94-1656, at 15-16, reprinted in 1976 USCCAN 6121, 6136.

    **C.   Sovereign Immunity**. The United States waived sovereign immunity from equitable and declaratory relief, Pl.'s Mot. Summ. J. at 5; Section III.C.1, *infra,* and defendant Leavitt has no sovereign immunity to assert against such relief. Pl.'s Mot. Summ. J. at 4-5; Sections III.C.2-III.C.4, *infra.* In Sections IV.A.3 and IV.B.3, *infra,* AAPS establishes that defendant Leavitt has acted *ultra vires* and in violation of his clear statutory duties for Counts II and III, respectively.

    **1.    APA Waiver of Sovereign Immunity**. If AAPS is correct that the APA applies, *see* Section III.B.1, *supra,* the APA unmistakably waives sovereign immunity "in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *Sea-Land Serv., Inc. v. Alaska R.R.,* 659 F.2d 243, 244 (D.C. Cir. 1982) (citations omitted). Moreover, the APA's 1976 "waiver of sovereign immunity applies to any suit *whether under the APA or not.*" *Chamber of Commerce v. Reich,* 74 F.3d 1322, 1328 (D.C. Cir. 1996) (emphasis added);

*see also Transohio Sav. Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 607 (D.C. Cir. 1992) ("[u]nder settled law, for claims permitted under the APA's waiver of sovereign immunity, jurisdiction is proper… under the federal-question statute, the declaratory-judgment statute, or the mandamus statute") (citations omitted).

        **2.    Officers Not Sovereign**. For federal officers acting *ultra vires,* it is well settled that sovereign immunity does not shield the officer from injunctive or declaratory relief. Pl.'s Mot. Summ. J. at 5 (citing cases); *see also Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689-90 (1949) (officer's "actions… *ultra vires* his authority… may be made the object of specific relief... without impleading the sovereign"); *Reich,* 74 F.3d at 1329 ("if the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity does not bar a suit").

        **3.    This Court's Equity Jurisdiction**. Presumably because it has nothing to say, HHS says nothing about this Court's historical and unique equity jurisdiction. Pl.'s Mot. Summ. J. at 4-5; Pls.' Opp'n at 26-27. Prior to congressional action to facilitate judicial review in 1962 (28 U.S.C. §1361) and 1976 (amendments to 5 U.S.C. §702), this Court's equity jurisdiction provided the most reliable (and sometimes only) form of judicial review of government action. H.R. REP. NO. 94-1656, at 15-16, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6136. In the event that this Court should find the 1962 and 1976 statutes unavailing here, neither the Mandamus Act nor the APA displaced or otherwise limited this Court's historic equity jurisdiction. *Peoples v. U.S. Dept. of Agric.,* 427 F.2d 561, 565 (D.C. Cir. 1970); Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 HARV. L. REV. 308, 325 (1967).

        **4.    Declaratory Relief**. The availability of declaratory relief against federal officers

predates the APA, WILLIAM J. HUGHES, FEDERAL PRACTICE §25387 (1940 & Supp. 1945); EDWIN BORCHARD, DECLARATORY JUDGMENTS, 787-88, 909-10 (1941), and the APA did not displace such relief, either as enacted in 1946 or as amended in 1976. *See* ADMINISTRATIVE PROCEDURE ACT: LEGISLATIVE HISTORY, S. DOC. NO. 248, 79th Cong., 2d Sess., at 37, 212, 276 (1946); 5 U.S.C. §559; *cf. Dickinson v. Zurko,* 527 U.S. 150, 154-55 (1999).

      **5.  Mandamus**. HHS cites extra-Circuit appellate decisions for the proposition that 28 U.S.C. §1361 is not a waiver of sovereign immunity. Defs.' Opp'n at 12. "No separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity." *Fornaro v. James,* 416 F.3d 63, 69 (D.C. Cir. 2005).

## IV. DISPOSITIVE RELIEF ON COUNTS II AND III

      For the reasons set forth in the following two sections, this Court should grant AAPS's summary judgment motion for both the Contractual Panels (Count II) and the AHIC subcommittees (Count III) because, in each case, HHS is engaged in clear and ongoing violations of FACA and acting in excess of its authority.[8]

      **A.  <u>Count II: Unlawful Contractual Panels</u>**. Count II alleges that HHS violated FACA's chartering requirements and exceeded its authority by contracting to have third parties convene consensus panels to which FACA would apply if HHS convened them directly. Compl. ¶88. AAPS is entitled to summary judgment on Count II, notwithstanding *Byrd v. EPA,* 174 F.3d 239 (D.C. Cir. 1999), because *Byrd* did not consider whether federal agencies or officers have the authority to convene consensus panels outside – literally *ultra vires* – their FACA authority

---

[8]    Although AAPS seeks summary judgment on HHS's having *established* the Contractual Panels, AAPS could potentially later prove that HHS *utilized* them. *See* Pl.'s Opp'n at 38 (*citing Byrd,* 174 F.3d at 247, for proposition that FACA §3(2) can apply to contracted-for panels).

(Section IV.A.3, *infra*). Moreover, because *Byrd* has no preclusive effect on AAPS, Section IV.A.1, *infra,* and failed to consider several issues raised by AAPS, this Court should hold that FACA itself prohibits agencies' circumventing FACA by contract (Section IV.A.2, *infra*).[9]

     **1.** ***Byrd* Not Preclusive against AAPS**. The plaintiff in *Byrd* was a "consulting toxicologist and risk assessor," *Byrd,* 174 F.3d at 242, not a medical doctor. Moreover, even if Dr. Byrd was both a medical doctor and an AAPS member, AAPS would have other injured members (*e.g.,* Dr. Orient) who were not parties to the *Byrd* litigation. Preclusion does not apply to nonparties such as AAPS, Dr. Orient, or any other medical doctor who belongs to AAPS. *Baker by Thomas v. Gen. Motors Corp.,* 522 U.S. 222, 237-38 & n.11 (1998) ("In no event… can issue preclusion be invoked against one who did not participate in the prior adjudication").

     **2. FACA Applies to Contracted-For Consensus Panels**. Although *Byrd* adopts a narrow view of FACA's "establish" test, the Supreme Court found that "FACA applies to advisory committees *established* by the Federal Government in a *generous sense* of that term." *Pub. Citizen v. DOJ,* 491 U.S. at 462 (emphasis added). Accordingly, this Court should find that FACA applies when an agency expressly contracts for a third party to convene a consensus panel to which FACA would apply if the agency convened it directly. Pl.'s Mot. Summ. J. at 7-9; *cf.* 21 C.F.R. §14.15(a) (FACA applies to "contracts with independent scientific or technical organizations to obtain advice and recommendations on particular matters").

     **3.** ***Ultra Vires* Claim**. FACA §9(a)(2) *prohibits* agencies' establishing an advisory committee without first making the required determination and noticing it in the *Federal Regis-*

---

[9]     Even if the Court already had held itself bound by *Byrd,* AAPS nonetheless would need to raise its good-faith challenge to *Byrd* to preserve the issue for appeal.

*ter.* FACA §9(c) *prohibits* advisory committees' meeting or taking any other action without first filing its charter. HHS mischaracterizes AAPS to allege mere "legal error in the exercise of lawful authority," Defs.' Opp'n at 13-14, but violating a clear statutory prohibition is *ultra vires:* the "officer is not doing the business which the sovereign has empowered him to do *or he is doing it in a way which the sovereign has forbidden.*" *Washington Legal Found. v. U.S. Sentencing Comm'n,* 89 F.3d 897, 901 (D.C. Cir. 1996) (emphasis added); Pl.'s Opp'n at 29; Pl.'s Mot. Summ. J. at 5; Section III.C.2, *supra.* Thus, unlike the agency in the case cited by HHS, the Contractual Panels and AHIC subcommittees exceed HHS's statutory authority. *Royster-Clark Agribusiness, Inc. v. Johnson,* 391 F.Supp.2d 21, 24 (D.D.C. 2005) (Clean Air Act expressly authorizes agency to issue notices of violation, notwithstanding that plaintiff has affirmative defenses).

Citing its purportedly broad authority to contract with private entities, HHS brushes aside AAPS's argument that the Contractual Panels are *ultra vires,* Defs.' Opp'n at 21, deeming the argument "spurious," *id.,* perhaps because HHS mischaracterizes the argument to contend that FACA "'occupies the field' of advice to the executive." *Id.* What AAPS argues, however, is that "FACA occupies the field of agency-convened consensus panels." Pl.'s Mot. Summ. J. at 9. This Circuit recognizes the same distinction. *AAPS v. Clinton,* 997 F.2d 898, 913 (D.C. Cir. 1993) ("group is a FACA advisory committee when it is asked to render advice or recommendations, *as a group,* and not as a collection of individuals") (emphasis in original).

In particular, HHS cites five statutes that purportedly establish its authority for the Contractual Panels: (1) 42 U.S.C. §241(a)(7)-(8); (2) 42 U.S.C. §299b-3(c); (3) 42 U.S.C. §217a; and (4-5) two consolidated appropriations acts. Defs.' Opp'n at 19 (*citing* Defs.' Mot. to Dismiss at 27). Section 241 authorizes HHS to enter into contracts and to accept recommendations from advisory councils, 42 U.S.C. §241(a)(7)-(8), but §241's discretion does not authorize HHS to vio-

late other provisions of law. *Apter,* 510 F.2d at 355 ("[w]here it is alleged that the agency has…

violated an express statutory or procedural directive, otherwise non-reviewable agency action

should be examined to the extent necessary to determine the merits of the allegation"). By its

terms, §299b-3 applies only to "facilitate[ing] public access to *information regarding the quality*

of and *consumer satisfaction* with health care," 42 U.S.C. §299b-3(c), not to creating new rec-

ommendations about federal information policy. Section 217a authorizes HHS to appoint advi-

sory committees, 42 U.S.C. §217a, but it does not supersede FACA's chartering requirements.

70 Fed. Reg. 40,703 (2005) (AHIC subject to FACA). The two appropriations acts merely au-

thorize funds "[f]or necessary expenses, not otherwise provided, for general departmental man-

agement," Pub. L. No. 108-447, Div. F, Title II, 118 Stat 2809, 3136 (2004); Pub. L. No. 108-

199, Div. E, Title II, 118 Stat 3, 250 (2004) (same), which does not authorize HHS to violate any

otherwise applicable statute in executing the appropriation. *See* U.S. General Accounting Office,

Principles of Federal Appropriations Law, vol. I, at 4-27 to 4-29 (3rd ed. 2004). In short, HHS

has cited nothing that authorizes its clear violations of FACA §9.

**B.**  **Count III: Unlawful Subcommittees**. Count III alleges that HHS violated FACA's

chartering requirements and exceeded its authority by convening four AHIC subcommittees that

include AHIC nonmembers. Compl. ¶90. AAPS is entitled to summary judgment on Count III

because the AHIC subcommittees clearly qualify as "any… subgroup[,]… which is… estab-

lished… by one or more agencies… in the interest of obtaining advice or recommendations for…

one or more… officers of the Federal Government." FACA §3(2).

**1.**  **AHIC Subcommittees Subject to FACA**. As AAPS argued and HHS did not dis-

pute, FACA §3(2) creates a two-part test: (1) did the agency convene the subcommittee, and if so

(2) did the agency do so in the interest of advising federal officers? The next two sections show

19

that the AHIC subcommittees meet both parts of that test.

     **a.** **HHS Convened the Subcommittees**. The AHIC subcommittees meet the first part of FACA's two-part test if HHS convened them. FACA §3(2). HHS's Answer admits that HHS did so, Answer ¶56, and its response to AAPS's Statement of Facts does not seek to amend its Answer. *See* Section I.B, *supra.* Instead, without changing its Answer, HHS alleges a new "fact" (namely, that *AHIC* created the AHIC subcommittees). *Id.* But its new fact provides HHS no help because FACA §3(2)'s "established" test includes "the offspring of some organization created or permeated by the Federal Government." Pl.'s Mot. Summ. J. at 10 (*quoting Pub. Citizen v. DOJ,* 491 U.S. at 462-63 *and citing Animal Legal Def. Fund v. Shalala,* 104 F.3d 424, 429-30 (D.C. Cir. 1997)). Because the government clearly created and permeates AHIC, HHS convened the AHIC subcommittees, whether directly under its Answer or indirectly through AHIC. *Id.; cf.* 41 C.F.R. §102-3.35(b) ("creation and operation of subcommittees must be approved by the agency establishing the parent advisory committee").

     **b.** **FACA Members' Status as "Officers" under FACA**. The AHIC subcommittees meet the second part of FACA's two-part test if the subcommittees will provide advice or recommendations to one or more federal officers. FACA §3(2). At the outset, because AHIC undoubtedly includes one or more federal officers,[10] AAPS need not prove that *each* AHIC member qualifies as a "federal officer" to prevail on the AHIC subcommittees' providing "advice or recommendations for… *one or more… officers* of the Federal Government." *Id.* (emphasis added). Nonetheless, for completeness, AAPS establishes below that the private- and state-sector AHIC members qualify as federal officers.

---

[10]    As a presidential appointee, defendant Leavitt is unquestionably a federal officer.

(1)  **Dictionary Act Definition of Officer**. HHS grossly mischaracterizes the Dictionary Act's definition of "officer" as "any person authorized by law to perform the duties of the office[.]" Defs.' Opp'n at 20 (*quoting* 1 U.S.C. §1). What HHS leaves out, however, is that the Dictionary Act defines officer to "*include*" HHS's quoted text. *See* 1 U.S.C. §1 (emphasis added). Thus, the definition *expands* the term "officer" to include inferiors authorized to perform the duties of an office. *See, e.g., In re Berman,* 80 F.2d 361, 364 (D.C. Cir. 1935) (a "fair construction" guided by 1 U.S.C. §1 "leads… to the conclusion that it was not the Attorney General personally who was to pass upon the transfer of each Federal prisoner, but that… in addition to the Attorney General, 'any person authorized by law to perform the duties of such office' include[ing] the Director of the Bureau of Prisons"). Other than its negative implication that someone *not authorized* to perform an office's duties cannot be an officer, the Dictionary Act in no way *limits* the scope of either "office" or "officer."

(2)  **FACA Authorization of AHIC Officers**. Under its incorrect interpretation of the Dictionary Act (*see* Section IV.B.1.b(1), *supra*), HHS argues incorrectly that "no law authorizes a[n]… 'office' of AHIC member, nor does any statute authorize anyone to perform the relevant duties." Defs.' Opp'n at 20. This Circuit has held that FACA authorizes committee members to perform the duties of their office, *Cummock v. Gore,* 180 F.3d at 290-91, and FACA and 42 U.S.C. §217a authorize HHS to create advisory committees and appoint their members as "inferior officers" within the meaning of the Appointments Clause:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the *Congress may by Law vest the Appointment of such inferior Officers,* as they think proper, in the President alone, in the Courts of Law, or *in the Heads of Departments.*

U.S. CONST. art. II, §2, cl.2 (emphasis added).

Given the undisputed fact that AHIC members were appointed and sworn into a federal "office," Defs.' Resp. to Pl.'s Statement of Material Facts, at 2 (¶2),[11] and that "it is well settled that a person in the service of the United States, who has been appointed in any of the modes prescribed in article 2, Sec. 2, cl. 2 of the Constitution, is an officer of the United States," *Hoeppel v. U.S.,* 85 F.2d 237, 241 (D.C. Cir. 1936) (*citing U.S. v. Mouat,* 124 U.S. 303, 307 (1888)),[12] it follows that AHIC members are federal officers. *See also Mouat,* 124 U.S. at 307 ("[w]hat is necessary to constitute a person an officer of the United States" is "appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment") (*citing U.S. v. Germaine,* 99 U.S. 508 (1878)); *Ex parte Hennen,* 38 U.S. (13 Pet.) 230, 258-59 (1839) (clerk of district court is an officer of the United States); *U.S. v. Hartwell,* 73 U.S. 385, 393 (1867) (agency tax clerk is an officer of the United States); *cf.* Memorandum from J. Jackson Walter, Director, Office of Gov't Ethics, to Heads of Departments and Agencies of the Executive Branch, at 9 n.1 (July 9, 1982) ("[t]here is no substantive difference between an appointee providing advisory service individually and one doing so as a member of a committee. Advisory groups are formed by… agencies to carry out collegially the same functions as experts

---

[11]    To avoid the obvious implication that one who holds a federal *office* is a federal *officer,* HHS's brief recasts the undisputed facts to state that the AHIC members took an "oath to well and faithfully execute their duties." Defs.' Opp'n at 20 n.9. They actually swore "well and faithfully execute the duties of the *office* I am about to enter." Defs.' Resp. to Pl.'s Statement of Material Facts, at 2 (¶2). (emphasis added). Other than decrying that distinction as "formalistic," Defs.' Opp'n at 20 n.9, HHS offers nothing to rebut it.

[12]    *Hoeppel* held that a West Point cadet was an "officer of the United States" within the meaning of the Appointments Clause, as distinct from an officer of the U.S. Army within the meaning of the Articles of War. *Id.*

perform working singly") (*citing* H. REP. NO. 84-2894, 5 (1956)) (Ex. 3).[13]

    **2.    Status of Subcommittees under GSA Regulations**. Citing only the definition of "subcommittee" from the General Services Administration ("GSA") regulations, HHS claims that AAPS's argument that AHIC members are officers "fails as a matter of law." Defs.' Opp'n at 20. This Circuit already has rejected the government's notion that the GSA regulations establish *anything* "as a matter of law." *AAPS v. Clinton,* 997 F.2d at 913. In doing so, the court noted that "we do not defer to an agency's construction of a statute interpreted by more than one agency," but acknowledged that the "regulation expresses a concept similar to one that we find embedded in the statute." *Id.* In doing so, the Circuit invites review of the regulations, even though they do not control. *Cf.* Section III.B.1, *supra* (non-controlling guidelines and policies relevant to judicial review). Under such a review, it is noteworthy that GSA considers FACA not to apply to subcommittees *unless* (as here) they report directly to federal officers or agencies. 41 C.F.R. §§102-3.25, 102-3.35(a); *see also* 41 C.F.R. §102-3.70(c) ("[s]ubcommittees that report directly to a Federal officer must comply with this subpart and include in a charter the information required by §102–3.75"); 41 C.F.R. §102-3.35(b) (quoted *supra*); 66 Fed. Reg. 37,728, 37,729 (2001) ("GSA also believes that subcommittees whose advice or recommendations are provided directly to a Federal officer… are subject to the Act"). Significantly, nothing in FACA

---

[13]    HHS suggests that AAPS might argue that the definition of "officer" in Title 5 of the United States Code applies to FACA. Defs.' Opp'n at 20 n.8. This Circuit already has foreclosed that, noting that "FACA is not part of Title 5" and that the Conference Committee deleted the Senate's express incorporation of Title 5's definition of "officer" into FACA. *AAPS v. Clinton,* 997 F.2d at 904; *cf. INS v. Cardoza-Fonseca,* 480 U.S. 421, 442-43 (1987) ("[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language"). Thus, although the parties dispute 1 U.S.C. §1's *meaning,* they do not dispute its *applicability.*

requires that advisory committees include fulltime or permanent-part-time federal officers as members or that non-federal members assume a federal office. *See* H.R. REP. NO. 91-1731 (1970), *reprinted in* FACA HIST., at 236 ("*advisory committees dealing with public issues should be as independent as possible... from the source of their appointment*") (emphasis in original).

   **3.    *Ultra Vires* Claim**. For the reasons set forth in Section IV.A.3, *supra,* HHS simply misstates its authority to circumvent FACA by creating FACA committees outside FACA's chartering process. *See* FACA §9(a)(2), (c). With particular regard to FACA's subcommittee requirements, HHS relies on three "subcommittee" decisions to justify its failure to charter the AHIC subcommittees. Defs.' Opp'n at 19-20, 21. None of these decisions helps HHS here.

   In the first decision, the President convened a FACA-exempt committee comprised solely of fulltime federal employees, FACA §3(2)(i), and the committee allegedly created information-gathering subgroups in which non-federal stakeholders allegedly participated. *In re Cheney,* 406 F.3d 723, 730-31 (D.C. Cir. 2005) (*en banc*). Because the subgroups did not deliberate or make recommendations, FACA did not apply to the subgroups. *Id.* By contrast, AHIC's subgroups contain AHIC nonmembers and both deliberate and make recommendations. Defs.' Resp. to Pl.'s Statement of Material Facts, at 4-5 (¶¶8-11); Suppl. Joseph Decl. ¶¶19-22 & Ex. C-F.

   In the second decision, the President convened a 150-member FACA committee, a 30-member FACA subcommittee, and 36 non-FACA task forces. *Nat'l Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control,* 711 F.2d 1071, 1072, 1074-75 (D.C. Cir. 1983). On the record before it, the court held that FACA did not apply to the task forces because they prepared reports for one of the FACA committees, which would deliberate before it passed any recommendations to the President or federal agencies. 711 F.2d at 1075. Because *Nat'l Anti-Hunger* did not include any allegation that the FACA committees and

subcommittees included federal officers within the meaning of the Appointments Clause, that decision is inapposite here. *See* FACA §3(2); Section IV.B.1.b, *supra.*

The third case involved a FACA-exempt committee comprised entirely of federal officers, FACA §3(2)(i), which had a working group that included 300 fulltime federal employees and 40 Special-Government Employees ("SGEs") who worked less than 130 days in a 365-day period. *AAPS v. Clinton,* 997 F.2d at 914-15. Although the government argued that the SGEs qualified the working group for FACA §3(2)(i)'s exemption, the Court remanded because it lacked a sufficient record to determine the status of the SGEs under FACA §3(2). *Id.* By recognizing that the SGEs *could* qualify as fulltime employees for FACA §3(2)(i)'s exemption, the Circuit implicitly also recognized that AHIC members appointed under the Appointments Clause could qualify as federal officers under FACA §3(2). *See* Section IV.B.1.b, *supra.*

## <u>CONCLUSION</u>

WHEREFORE, for the reasons stated above and in its motion for summary judgment, AAPS respectfully asks this Court to enter summary judgment for AAPS on Counts II and III.

Dated: August 18, 2006                    Respectfully submitted,


                                           /signed/ Lawrence J. Joseph
                                          Lawrence J. Joseph, D.C. Bar No. 464777

                                          2121 K Street, NW, Suite 800
                                          Washington, DC 20037
                                          Telephone: (202) 669-5135
                                          Telecopier: (202) 318-2254

                                          *Counsel for Association of American*
                                          *Physicians and Surgeons, Inc.*